IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 5:15-cv-156

RALEIGH WAKE CITIZENS ASSOCIATION, INC, JANNET B. BARNES, BEVERLEY S. CLARK, WILLIAM B. CLIFFORD, BRIAN FITZSIMMONS, GREG FLYNN, DUSTIN MATTHEW INGALLS, AMY T. LEE, ERWIN PORTMAN, SUSAN PORTMAN, JANE C. ROGERS, BARBARA D.VANDENBERGH, JOHN G.VANDENBERGH, AMY WOMBLE, and PERRY WOODS,

*Plaintiffs,*

*vs.*

CHAD BAREFOOT, in his official capacity as Senator and Primary Sponsor of Senate Bill 181, PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, TIM MOORE, in his official capacity as Speaker of the North Carolina House of Representatives; and THE WAKE COUNTY BOARD OF ELECTIONS,

*Defendants.*

**COMPLAINT**

EQUITABLE RELIEF SOUGHT

Plaintiffs, complaining of Defendants, allege and say:

1. Plaintiffs bring this action to secure their right to an equal vote and their right to not be subjected to racial classifications in redistricting; those rights being violated by the action of the North Carolina General Assembly in passing Session Law 2015-4, a local bill which changed the method of electing the Wake County Board of County Commissioners beginning with the 2016 elections. Plaintiffs are voters and an association of voters who live in election

districts that under Session Law 2015-4 are overpopulated to a significant degree, depriving them of the ability to cast a vote that carries the same weight as voters who live in underpopulated districts. The reasons for the population variations among these districts are not legitimate, neutral reasons. Instead, the General Assembly imposed a new system of seven single-member districts and two super districts for several illegitimate purposes, including in order to create a partisan advantage for Republican voters, and to give unequal greater weight to the votes of suburban and rural Wake County voters compared to that of urban Wake County voters.

2. Several Plaintiffs also live in District 4 in the seven-member district system established by Session Law 2015-4. District 4 is a racial gerrymandered district that violates the Equal Protection Clause of the Fourteenth Amendment.

3. This is an action pursuant to 42 U.S.C. § 1983 to secure equitable relief for the unlawful deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States and the Constitution and laws of the State of North Carolina. Plaintiffs assert that the districting scheme created by the North Carolina General Assembly to govern elections for the Wake County Board of Commissioners violates the one-person, one-vote guarantee of the equal protection clause because the 7.11% and 9.8% deviations respectively in the seven-district map and the two-district map are not explained by legitimate, neutral reasons. Plaintiffs also assert that race predominated in the drawing of District 4 in the seven-district map, which has a black voting age population of 53.54%; that there is no compelling governmental interest justifying that district, and that even if there were, the district is not narrowly tailored to meet that interest.

4. Plaintiffs request this Honorable Court to grant relief in the form of a declaratory judgment and a preliminary, mandatory injunction requiring the Defendants to conduct lawful

elections for the Wake County Board of County Commissioners using an election method and districting system which complies with the requirements of the Fourteenth Amendment to the United States Constitution and Article I, §19 of the North Carolina Constitution.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1357; and 42 U.S.C. §§ 1983 and 1988.

6. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. This Court has supplemental jurisdiction over Plaintiffs' state constitutional claim under 28 U.S.C. § 1367.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

**PLAINTIFFS**

9. Plaintiff RALEIGH WAKE CITIZENS ASSOCIATION, INC. (RWCA) is non-partisan, non-profit advocacy organization based in Raleigh, North Carolina. The goal of the organization is to empower racial minorities in Raleigh and Wake County. Founded in 1932, and incorporated in the State of North Carolina as a non-profit corporation in 1985, the Raleigh Wake Citizens Association, Inc. is Raleigh's oldest African-American political organization, and one of the oldest and most influential in North Carolina. Since its beginning, the RWCA's purpose has been to protect, encourage, educate, and help the citizens of Raleigh and Wake County in their civic, economic, social, educational and political advancement. Members are active on issues of particular relevance to the Wake County Commission including eliminating homelessness, promoting economic development, eliminating health disparities and advocating for high quality education for all children. The interests of the RWCA are impaired by the use of

a method of election that unfairly dilutes the voting strength of urban voters, that relies on population imbalances resulting from the desire to favor one political party over another, and that allows race to predominate in the drawing of an election district.

10. Many of the individual members of RWCA are registered voters who live in one or more of the overpopulated numbered districts, and in the overpopulated super-District A. In addition, many of the individual members of RWCA are registered voters who live in the racially gerrymandered District 4. Many of the individual members of RWCA are voters who live in one of the precincts that is split among more than one of the districts established by Session Law 2015-4.

11. The confusing and non-compact nature of the electoral scheme in S.L. 2015-4 will make it harder for RWCA to educate Wake County voters about their county commission representatives. It will be more difficult for RWCA to determine who lives in which district and who represents which voters. The civic engagement efforts of RWCA will be made more difficult by the highly irregular election districts and the fact that some voters' votes carry more weight than others.

12. RWCA's goal of empowering previously disenfranchised African-American voters to participate in the political process will be frustrated by the General Assembly's unchecked use of racial stereotypes to construct District 4. The use of race in drawing that district was based on the counter-factual assumption that a black candidate for Wake County Commission cannot win election in a majority-white district. This assumption is insulting, disrespectful and discriminatory to RWCA's members. The assumption is also historically incorrect, given the past election of black representatives to the Wake County Board of Commissioners, including the current Chairman of the Board of Comissioners.

13. Plaintiff JANNET B. BARNES is a registered voter in Wake County who lives at 1609 Cotton Drive, Knightdale, NC 27545. Under the system established by Session Law 2015-4, she will live and vote in the overpopulated and racially gerrymandered numbered District 4 and the overpopulated super-District A.

14. Plaintiff BEVERLEY S. CLARK is a registered voter in Wake County who lives at 719 Graham Street, Raleigh, NC 27605. Under the system established by Session Law 2015-4, she will live and vote in the overpopulated numbered District 3 and the overpopulated super-District A.

15. Plaintiff WILLIAM B. CLIFFORD is a registered voter in Wake County who lives at 1113 Lands End Court, Raleigh, NC 27606. Under the system established by Session Law 2015-4, he will live and vote in the overpopulated numbered District 3 and the overpopulated super-District A.

16. Plaintiff BRIAN FITZSIMMONS is a registered voter in Wake County who lives at 2941 Landing Falls Lane, Raleigh, NC 27616. Under the system established by Session Law 2015-4, he will live and vote in the overpopulated numbered District 3.

17. Plaintiff GREG FLYNN is a registered voter in Wake County who lives at 2826 Barmettler Street, Raleigh, NC 27607. Under the system established by Session Law 2015-4, he will live and vote in the overpopulated numbered District 3 and the overpopulated super-District A.

18. Plaintiff DUSTIN MATTHEW INGALLS is a registered voter in Wake County who lives at 101 Topsail Common Drive, Apt. 106, Knightdale, NC 27545. Under the system established by Session Law 2015-4, he will live and vote in the overpopulated and racially gerrymandered numbered District 4 and the overpopulated super-District A.

19. Plaintiff AMY T. LEE is a registered voter in Wake County who lives at 1215 Ivy Lane, Raleigh, NC 27609. Under the system established by Session Law 2015-4, she will live and vote in the overpopulated numbered District 3.

20. Plaintiffs ERWIN PORTMAN and SUSAN PORTMAN are registered voters in Wake County who live at 101 Fern Bluff Way, Cary, NC 27518. Under the system established by Session Law 2015-4, they will live and vote in the overpopulated numbered District 6.

21. Plaintiff JANE C. ROGERS is a registered voter in Wake County who lives at 3016 Woodgreen Drive, Raleigh, NC 27607. Under the system established by Session Law 2015-4, she will live and vote in the overpopulated super-District A.

22. Plaintiffs BARBARA D. VANDENBERGH and JOHN G. VANDENBERGH are registered voters in Wake County who live at 3424 Huckabay Circle, Raleigh, NC 27612. Under the system established by Session Law 2015-4, they will live and vote in the overpopulated super-District A.

23. Plaintiff AMY WOMBLE is a registered voter in Wake County who lives at 2700 N. Mayview Road, Raleigh, NC 27607. Under the system established by Session Law 2015-4, she will live and vote in the overpopulated numbered District 3 and the overpopulated super-District A.

24. Plaintiff PERRY WOODS is a registered voter in Wake County who lives at 3237 Glenridge Dr., Raleigh, NC 27604. Under the system established by Session Law 2015-4, he will live and vote in the overpopulated and racially gerrymandered numbered District 4 and the overpopulated super-District A.

25. The individual Plaintiffs are personally aggrieved in that they live in districts that are unjustifiably overpopulated. Thus, their votes will carry less weight than their Wake County

counterparts who live in underpopulated districts in elections for the Wake County Board of County Commissioners.

26. As indicated specifically above, several of the individual Plaintiffs live in the racially gerrymandered District 4, where race was the predominant factor in the drawing of the district. They are individually harmed by the use of race by the government to classify voters. The assumption underlying District 4's construction is that candidates of choice of black voters can only win election in a majority-black district, which historically has not been true for the Wake County Board of County Commissioners. Segregating voters by race in County Commission districts is insulting, and degrading to those voters. The use of race in drawing District 4 discriminates against the Plaintiffs who live in District 4 on the basis of their race.

## DEFENDANTS

27. Defendant CHAD BAREFOOT is sued in his official capacity as Senator and primary sponsor of Senate Bill 181, the bill that ultimately was ratified as Session Law 2015-4 and is being challenged here. As Primary Sponsor of the legislation, Senator Barefoot was primarily responsible for the introduction of this local legislation, the design of the election system, the decision to take the authority away from the Wake County Board of County Commissioners to determine for themselves their method of election, and the use of race in designing numbered District 4. As a legislator whose district includes part of Wake County, and the primary sponsor of the legislation, Senator Barefoot is responsible for the state action being challenged here.

28. Defendant PHILIP E. BERGER is sued in his official capacity as President Pro Tempore of the North Carolina Senate. As leader of the Senate, Defendant Berger is responsible

for the official state action being challenged here and for the enforcement of Session Law 2015-4.

29. Defendant TIM MOORE is sued in his official capacity as Speaker of the North Carolina House of Representatives. As leader of the House of Representatives, he is responsible for the official state action being challenged here and for the enforcement of Session Law 2015-4.

30. Defendant WAKE COUNTY BOARD OF ELECTIONS is Elections is a distinct legal entity, with offices in Wake County, created by state statute and empowered by state law with the responsibility of administering elections for the Wake County Board of County Commissioners.

**ADDITIONAL FACTUAL ALLEGATIONS**

31. The present method of electing the Wake County Board of Commissioners was established in 1959 when the General Assembly passed legislation enlarging the Board to seven members, elected at-large from seven residence districts.

32. Although not required to by law, in June of 2011 the Board of County Commissioners adopted a new set of residence districts by resolution, to take account of population shifts within the county. Each residence district established by that resolution is comprised of whole precincts.

33. In 2014, four members of the seven-member board were up for election.

34. In the 2014 elections, voters elected four Democrats to fill the four seats up for election.

35. On March 4, 2015, just a few weeks after the new Board of County Commissioners was sworn in, Defendant Barefoot sponsored and caused to be introduced Senate Bill 181.

36. Senate Bill 181, as amended, was passed with unusual speed and was ratified on April 2, 2015 as Session Law 2015-4.

37. Session Law 2015-4 increases the size of the Wake County Board of Commissioners; adopts a system of seven-single member districts to be used in 2018, and two super-districts to be used in 2016; shortens the terms of commissioners elected at-large from residency districts in 2016; strips from the County Commission the authority they otherwise have under state law to alter their method of election, and purports to prohibit any further change in the method of election by Session Law, until after the return of the 2020 Census.

38. The legislative process surrounding the passage of Session Law 2015-4 was marked by a departure from regular customs and practices in that the bill was proposed without consultation or notice to the Board of County Commissioners, without consultation or notice to the full Wake County legislative delegation, and was placed on a committee calendar with no effective notice to the public. The bill was introduced at the 11a.m. Senate Session on March 4, 2015 and was heard for the first time at a Senate Redistricting Committee meeting less than four hours later.

39. On March 9, 2015, the Wake County Board of Commissioners passed a resolution opposing any legislative changes to the structure and method of electing the Board of Commissioners.

40. The Wake County Board of Commissioners resolution was presented to the General Assembly prior to its adoption of Session Law 2015-4.

41. The current method of electing county commissioners in residential districts voted county wide, has yielded geographically and demographically diverse representation on the Wake County Board of Commissioners.

42. The existing residence districts for the Board of Commissioners have received no formal public opposition from the community.

43. The districts enacted in Session Law 2015-4 were not vetted by local residents, the business community or municipal leaders as appropriate for county commission elections prior to passage of the law.

44. It is the goal of Wake County government and the Wake County Board of Commissioners to represent all the people of Wake County and the communities in which they live.

45. County government has a responsibility to provide services to all parts of the county, and Session Law 2015-4 creates regional districts that purport to divide the urban and rural areas of the county.

46. Session Law 2015-4 removes from Wake County the statutory authority to establish their own method of electing county commissioners and structuring their board of commissioners.

47. Session Law 2015-4 prohibits Wake County from modifying its commission districts until after the 2020 census, even though it is one of the fastest growing counties in the state, projected to add almost 100,000 residents by 2020, and even though it is possible that population growth may be unevenly distributed throughout the county.

48. The overall population deviation in the plan created by Session Law 2015-4 is 9.8% for the two-district plan and 7.11% for the seven-district plan.

49. In the super-district plan with two districts, District A is overpopulated by 4.90% and District B is underpopulated by 4.90%.

50. In the super-district plan, the overpopulated District A has 44,177 more people than the underpopulated District B.

51. In the seven-district plan, districts 3, 4 and 6 are overpopulated relative to the other four districts.

52. In the seven-district plan, the difference between the largest district, District 3, and the smallest district, District 7, is 9,162 people.

53. The seven-district plan splits 10 precincts.

54. The two super-district plan splits 21precincts.

55. All of the 10 precincts split in the seven-district plan were split to create District 4 as a majority-black district.

56. All of the 10 precincts split in the seven-district plan are also split in the two super-districts.

57. It is possible to draw seven single-member districts and two super-districts in Wake County keeping the overall deviation in the seven single-member district plan at .33% and keeping the overall deviation in the two super-district plan at .02% without splitting any precincts.

58. Representative Rosa Gill of Wake County introduced an amendment to SB 181 that would establish a seven-district plan and a two-district plan with the overall deviations of .33% and .02% respectively, that did not divide any precincts, and that did not create a majority-black district.

59. Representative Gill's amendment was defeated in committee and on the floor of the House.

60. Proponents of SB 181 stated that it was necessary to provide representation to all towns in Wake County. This explanation for the measure is a pretext because the districts drawn do not actually provide for that representation. Representative Gill's amendment would better achieve the purported purpose of the legislation, but it was defeated.

61. The purpose of enacting Session Law 2015-4, the reason for the districts created by the law, and the reason for the population deviations in the districts, was unfairly to give greater weight to the voting strength of rural and suburban voters in Wake County in elections for the Board of Commissioners, and to disadvantage urban voters.

62. The purpose of enacting Session Law 2015-4, the reason for the districts created by the law, and the reason for the population deviations in the districts, was also to give disproportionate and unfair weight to the voting strength of voters who support Republican candidates compared to the voting strength of voters who support Democratic candidates, and to disadvantage Democratic voters.

63. No Democratic members of the General Assembly voted in support of Session Law 2015-4.

64. The motivations for enacting Session Law 2015-4 were the election results of the November 2014 elections for Wake County Board of Commissioners and the desire of the General Assembly to change the partisan composition of the Board of Commissioners and favor rural voters over urban voters.

65. Sponsors of SB 181 also advanced the purported justification that County Commission districts in Wake County should be the same as School Board districts. This is a

mere pretext because Senator Barefoot, who also sponsored legislation changing the method of election for the Wake County School Board in 2013, did not seek to change the Wake County Board of Commissioner districts at that time.

66. There is no neutral, legitimate explanation for the population deviations in the seven-district and two-district plans established by Session Law 2015-4.

67. No African-American member of the General Assembly voted in support of Session Law 2015-4.

68. African-Americans repeatedly have been elected at-large to the Wake County Board of Commissioners in numerous elections over many election cycles.

69. Currently two African-Americans serve on the Board of County Commissioners in Wake County, elected at-large.

70. Both of the African-Americans currently serving on the Wake County Board of Commissioners are candidates of choice of African-American voters.

71. White candidates of choice of African-American voters have been successfully elected to the Wake County Board of Commissioners in numerous recent elections.

72. White bloc voting in the area of District 4 is not sufficient usually to defeat the candidate of choice of African-American voters in that area.

73. Prior to the passage of Session Law 2015-4, the General Assembly did not assess whether racially polarized voting in Wake County is legally significant in that it operates usually to defeat the candidate of choice of black voters.

74. District 4 in the seven-district plan is not geographically compact.

75. Plaintiffs will suffer immediate harm from having to participate on an unequal footing in an election system that deprives them of equal representation on the Board of Commissioners.

76. Plaintiffs will suffer immediate and irreparable harm from having to use racially gerrymandered election districts.

77. The violation of Plaintiffs' equal protection rights to vote and participate in the political process on equal grounds with all other voters, as guaranteed by the state and federal constitutions, is irreparable harm.

78. Plaintiffs have no adequate remedy at law for the violation of the constitutional right other than the judicial relief sought here.

**FIRST CLAIM FOR RELIEF**

(Denial of Equal Protection under the 14th Amendment to the U.S. Constitution)

79. Plaintiffs incorporate by reference and rely herein upon all of the paragraphs of this Complaint.

80. The equal protection clause of the Fourteenth Amendment guarantees the principle of one-person, one-vote—that is, the equal weighting of every person's vote.

81. The one-person, one-vote requirement applies to the method of electing representatives to the Wake County Board of Commissioners.

82. By creating an election system that unjustifiably weights the vote of some voters in the county much more heavily than the vote of other voters in the county, S.L. 2015-4 completely and fundamentally violates the one-person, one-vote requirement established by the Fourteenth Amendment.

83. The General Assembly has the responsibility to either permit the Wake County Board of Commissioners to correct this fundamental imbalance, or, to enact further local legislation creating a method of election that does not violate the one-person, one-vote requirement.

84. Plaintiffs will be harmed by having their votes denied, or diluted, as a result of the terms and provisions of Session Law 2015-4.

85. Candidates, election officials and voters will be harmed by proceeding with elections under a system that is unconstitutional.

## SECOND CLAIM FOR RELIEF

(Denial of Equal Protection under Article I, §19 of the North Carolina Constitution)

86. Plaintiffs incorporate by reference and rely herein upon all of the paragraphs of this Complaint.

87. The equal protection clause of the Article I, §19 of the North Carolina Constitution guarantees the principle of one-person, one-vote and demands that the vote of each citizen be valued equally.

88. The one-person, one-vote requirement applies to the method of electing representatives to the Wake County Board of Commissioners.

89. By creating an election system that unjustifiably weights the vote of some voters in the county much more heavily than the vote of other voters in the county, S.L. 2015-4 completely and fundamentally violates the demands of the state constitution that each voter be treated equally.

90. The General Assembly has the responsibility to either permit the Wake County Board of Commissioners to correct this fundamental imbalance, or, to enact further local

legislation creating a method of election that does not violate the one-person, one-vote requirement.

91. Plaintiffs will be harmed by having their votes denied, or diluted, as a result of the terms and provisions of Session Law 2015-4.

92. Candidates, election officials and voters will be harmed by proceeding with elections under a system that is unconstitutional.

**THIRD CLAIM FOR RELIEF**

93. Plaintiffs incorporate by reference and rely herein upon all of the paragraphs of this Complaint.

94. Race was the predominate factor determining the boundaries, shape and composition of District 4 in the seven-district plan established by Session Law 2015-4.

95. The use of race as the predominant factor with respect to District 4 is not narrowly tailored to serve a compelling state interest.

96. District 4 as established by Session Law 2015-4 to be used as an election district for the Wake County Board of Commissioners violates the rights of Plaintiffs to be free from racial classifications in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that the Court:

1. Declare that the method of election established for the Wake County Board of Education by Session Law 2015-4 violates the equal protection clauses of the

Fourteenth Amendment to the United States Constitution and Article 1, §19 of the North Carolina Constitution; and

2. Declare that District 4 in the seven-district plan constitutes a racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment; and
3. Declare that the rights and privileges of Plaintiffs will be irreparably harmed without the intervention of this Court to secure those rights for the exercise thereof in a timely and meaningful manner; and
4. Enter a preliminary injunction, and a permanent injunction enjoining the Defendants, their agents, officers and employees, from enforcing or giving any effect to the provisions of Session Law 2015-4 that relate to the method of election of members of the Wake County Board of Commissioners; and
5. Enter a preliminary injunction, and a permanent injunction enjoining the Defendants, their agents, officers and employees, from enforcing or giving any effect to the boundaries of District 4 for the Board of County Commissioners as drawn in Session Law 2015-4; and
6. Declare that the unless the North Carolina General Assembly acts to promulgate a lawful method of election for the Wake County Board of Commissioners, constitutional state laws require that the Wake County Board of Commissioners itself adopt a redistricting plan that does comply with the one-person, one-vote requirement of the state and federal constitutions; and
7. Make all further orders as are just, necessary and proper to preserve Plaintiffs' rights to participate equally in elections to the Board of Commissioners; and

8. Award Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

9. Grant such other relief as the Court deems just and proper.

Dated this 9th day of April, 2015.

/s/ Anita S. Earls
Anita S. Earls (State Bar # 15597)
Southern Coalition for Social Justice
1415 Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-794-4198
Facsimile: 919-323-3942
E-mail: anita@southerncoalition.org

*Counsel for Plaintiffs*