IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 5:15-cv-156 |
| THE WAKE COUNTY BOARD OF ELECTIONS, | ) ) ) ) | |
| Defendant. | ) ) | |
| CALLA WRIGHT, *et al.*, | ) ) | |
| Plaintiffs, | ) ) ) | 5:13-cv-607 |
| v. | ) ) | |
| THE WAKE COUNTY BOARD OF ELECTIONS, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO QUASH SUBPOENAS
SERVED ON STATE LEGISLATORS**

NOW COME Senator John Chadwick Barefoot, Senator Robert A. Rucho, Representative David Ray Lewis, and Representative Paul Stam, (collectively "the legislative movants"), by and through undersigned counsel, and hereby submit this memorandum in support of their motion to quash.[1]

---

[1] The legislative movants also filed contemporaneous objections to the subpoenas with their motion to quash.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs have issued subpoenas in two pending cases. In the first case, thirteen individual citizens of Wake County, North Carolina and two associations of citizens initiated an action by filing a Complaint styled as *Calla Wright, et al. v. The Wake County Board of Elections*, on 22 August 2013. [13-cv-607 D.E. 1] Plaintiffs' complaint purports to assert claims under 42 U.S.C. § 1983 for defendants' alleged violation of plaintiffs' equal protection rights under both the United States and North Carolina Constitutions resulting from the North Carolina General Assembly's enactment of S.L. 2013-110 (originally filed as Senate Bill 326), a local bill implementing a new redistricting plan for electing members of the Wake County School Board. [13-cv-607 D.E. 1, ¶ 2] Plaintiffs' complaint seeks relief in the form of a declaratory judgment and a preliminary, mandatory injunction requiring defendants to conduct lawful elections for the Wake County Board of Education using an election method and districting system which complies with the requirement of the Fourteenth Amendment to the United States Constitution and Article 1, § 19 of the North Carolina Constitution. [13-cv-607 D.E. 1, ¶ 2] Ultimately, the defendants moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim; the State of North Carolina also moved to dismiss on grounds of Eleventh Amendment immunity. [13-cv-607 D.E. 27, 29]. On 17 March 2014, the district court entered an order dismissing plaintiffs' claims. [13-cv-607 D.E. 38]. The district court reasoned that the allegations in the complaint failed to show a prima facie constitutional violation. [13-cv-607 D.E. 38, p. 6]. On 27 May 2015, by a 2-1 decision, a panel of Fourth Circuit Court of Appeals reversed the portion of the District Court's order dismissing the complaint under Rule 12(b)(6), but affirmed the dismissal of the State of North Carolina as a defendant, as well as the decision of the district court that amendment substituting the President *Pro Tempore* of the North Carolina Senate and

the Speaker of the North Carolina House of Representatives as defendants would be futile. *Wright v. North Carolina*, 787 F.3d 256 (2015).

Similarly, a second action was brought by plaintiffs, Raleigh Wake Citizens Association and others in a complaint styled, *The Raleigh Wake Citizens Association, Inc. v. The Wake County Board of Elections* and filed as an Amended Complaint on 6 June 2015[2]. [15-cv-156 D.E. 22] As in *Wright*, plaintiffs' complaint purports to assert claims under 42 U.S.C. § 1983 for alleged violations of plaintiffs' equal protection rights under both the United States and North Carolina Constitutions resulting from the North Carolina General Assembly's enactment of S.L. 2015-4/Senate Bill 181, a local bill implementing a new redistricting plan for electing members of the Wake County Commissioners. [15-cv-156 D.E. 22] Plaintiffs' complaint seeks relief in the form of a declaratory judgment and a preliminary, mandatory injunction requiring the Defendants to conduct lawful elections for the Wake County Board of County Commissioners using an election method and districting system which complies with the requirements of the Fourteenth Amendment to the United States Constitution and Article 1, § 19 of the North Carolina Constitution. [15-cv-156 D.E. 22]

## STATEMENT OF THE RELEVANT FACTS

On 15 October 2015, plaintiffs gave notice to the legislative movants pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure of their intent to serve subpoenas on various persons and organizations, including the legislative movants. On 20 October 2015, counsel for legislative movants informed counsel for plaintiffs that he was authorized to accept service of all subpoenas to the legislative movants. On 21 October 2015, plaintiffs served the subpoenas on the legislative movants, through counsel in the North Carolina Attorney General's Office. On 30

---

[2] Plaintiffs' original complaint named Legislators Chad Barefoot; Philip E. Berger; and Tim Moore as defendants along with the Wake County Board of Elections. The State Legislators, who had not been served with process, were omitted from the Amended Complaint leaving only the Wake County Board of Elections.

3

October 2015, counsel for the legislative movants was informed by plaintiffs' counsel that a corrected subpoena had been issued for Senator Barefoot to accurately reflect his name. All of the subpoenas served on the legislative movants with the exception of Senator Barefoot are returnable 4 November 2015. Senator Barefoot's corrected subpoena is returnable on 13 November 2015.

Each of the subpoenas served on the legislative movants purports to require the production of documents and includes an attachment listing "Documents to be Produced." The documents sought in these requests for production are as follows:

1. All documents and communications received, edited, or created by you that reflect or discuss the rationale or purpose for enacting or supporting any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

2. All documents concerning communications between you and any constituent or non-employee third party regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history or political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method, and/or any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

3. All documents reflecting any communications between you and the Office of the Governor of North Carolina regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method, and/or any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

4. All documents reflecting any communications between you and any North Carolina state or county agency, including but not limited to the State Board of Elections and Wake County Board of Elections, regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

5. All documents reflecting any communications between you and any lobbyist, political organization, or public interest group or individual regarding

minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election.

6. All documents and communications referring or relating to any estimate, research, report, study, or analysis received, edited, or created by you related to minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

7. All documents and communications related to any polls or surveys conducted by you or brought to your attention related to minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history or political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

## ARGUMENT

Each of the legislative movants is a member of the North Carolina General Assembly. Moreover, all of the documents that plaintiffs seek to have produced pursuant to the subpoenas are documents that the legislative movants would have, assuming that they have them at all, in their capacities as legislators. There is no question that plaintiffs cannot seek this information from the legislative movants, who are entitled to absolute legislative immunity.

The United States Supreme Court has long recognized a broad right "of legislators to be free from arrest or civil process for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). The Supreme Court has expressly extended this protection to state legislators, *Tenney*, 341 U.S. at 372-76, with respect to actions within the "sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376. As the Fourth Circuit has emphasized:

> Legislative immunity's practical import is difficult to overstate. As members of the most representative branch, legislators bear significant responsibility for many of our toughest decisions, from the content of the

> laws that will shape our society to the size, structure, and staffing of the executive and administrative bodies carrying them out. Legislative immunity provides legislators with the breathing room necessary to make these choices in the public's interest, in a way uninhibited by judicial interference and undistorted by the fear of personal liability. It allows them to focus on their public duties by removing the costs and distractions attending lawsuits. It shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box . . . Legislative immunity thus reinforces representative democracy, fostering public decision making by public servants for the right reasons.

*EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (citation and quotations omitted).

Importantly, legislative immunity frees legislators not only from the consequences of litigation, it also frees them "from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). "Because litigation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181.

The scope of legislative immunity is broad and absolute. Unlike many privileges, it does not simply attach to the content of communications. Rather, it encompasses all aspects of the legislative process and forbids plaintiffs from seeking *any* production at all from the legislative movants. Indeed, speaking specifically in the context of a federal agency—the Equal Employment Opportunity Agency—attempting to subpoena a local governmental unit for records, the Fourth Circuit stated "[l]egislative privilege against compulsory evidentiary process exists to safeguard . . . legislative immunity and to further encourage the republican values it promotes" and held that "if the EEOC or private plaintiffs sought to compel information from legislative actors about their legislative activities, *they would not need to comply*." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 (emphasis added).

6

Simply put, the law is clear that the legislative movants are not required and cannot be required to comply with the subpoenas and requests for production of documents served on them by plaintiffs. *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. Legislative immunity provides the legislative movants with absolute protection from the discovery sought by plaintiffs. For this reason, the Court should quash the subpoenas served by plaintiffs on the legislative movants.

In addition, to the absolute immunity enjoyed by the legislative movants, the information sought by plaintiffs is protected by legislative confidentiality pursuant to Article 17 of North Carolina General Statutes Chapter 120. Legislative confidentiality covers a wide array of documents, including but not limited to: drafting requests made to a legislative employee from a legislator; information requests made to a legislative employee from a legislator; any documents provided in support of the drafting or information request; documents prepared by legislative employees upon the request of legislators; and requests made to an agency employee by a legislative employee of the Fiscal Research Division for assistance in the preparation of a fiscal note. N.C. Gen. Stat. §§ 120-130, -131, -131.1.

Moreover, even if the information sought by plaintiffs was subject to disclosure, the scope of the request is overly broad and therefore the time for compliance is unreasonably short. The information sought by the plaintiffs requires an email search of at least thirty-seven email accounts. These thirty-seven email accounts comprise over 46 gigabytes of data and over 600,000 messages. Those 600,000 messages must be reviewed for privileged and/or confidential material, in addition to the threshold question of whether the message is responsive to the plaintiffs' request. Thus, in addition to the well-established legislative immunity and the

confidentiality of legislative documents, plaintiffs' subpoenas are overly broad and provide an unreasonable time for compliance.

## CONCLUSION

For the foregoing reasons, the legislative movants respectfully pray that the Court quash the subpoenas served on them by plaintiffs.

This the 4th day of November, 2015.

>NORTH CAROLINA DEPARTMENT OF
>JUSTICE
>
>By: /s/ Alexander McC. Peters
>Alexander McC. Peters
>Senior Deputy Attorney General
>N.C. State Bar No. 13654
>apeters@ncdoj.gov
>
>/s/ Melissa L. Trippe
>Melissa L. Trippe
>Special Deputy Attorney General
>N.C. State Bar. No. 13739
>mtrippe@ncdoj.gov
>
>P.O. Box 629
>Raleigh, NC  27602
>Telephone: 919.716.6900
>Facsimile: 919.716.6763
>
>*Counsel for Senator John Chadwick Barefoot, Senator Robert A. Rucho, Representative David Ray Lewis, and Representative Paul Stam*

## CERTIFICATE OF SERVICE

      I, Alexander McC. Peters, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF OBJECTIONS AND MOTION TO QUASH SUBPOENAS SERVED ON STATE LEGISLATORS** with the Clerk of Court using the CM/EFC system which will send notification of such filing to the following:

Anita S. Earls
Southern Coalition for Social Justice
1415 Hwy. 54, Suite 101
Durham, NC 27707
*Counsel for Plaintiffs*

Charles F. Marshall
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD
Post Office Box 1800
Raleigh, NC 27602
*Counsel for Defendant*

This the 4th day of November, 2015.

                            /s/ Alexander McC. Peters
                            Alexander McC. Peters
                            Senior Deputy Attorney General