IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action

| | | |
|---|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al. | | |
| Plaintiffs, | | |
| v. | | No. 5:15-cv-156 |
| WAKE COUNTY BOARD OF ELECTIONS, | | |
| Defendant. | | |

| | | |
|---|---|---|
| CALLA WRIGHT, et al., | | |
| Plaintiffs, | | |
| v. | | No. 5:13-cv-607 |
| THE STATE OF NORTH CAROLINA, et al., | | |
| Defendants. | | |

**PLAINTIFFS' RESPONSE TO MOTION TO QUASH SUBPOENAS
SERVED ON STATE LEGISLATORS**

On October 20, 2015, Plaintiffs in these consolidated actions served subpoenas seeking information relevant to the claims in this case on four North Carolina legislators (the "State Legislators"). On November 4, 2015, those four State Legislators moved to quash the subpoenas in their entirety. Plaintiffs submit this brief in opposition to the motion to quash. The motion should be denied because legislative immunity and privilege, vastly overstated by movants, is

1

inapplicable to the requested documents, or if applicable, the privilege should yield in the instant case.

## STATEMENT OF THE CASE

These consolidated actions bring claims pursuant to the Fourteenth Amendment of the United States Constitution against redistricting plans for the Wake County Board of Education ("School Board") and Wake County Board of County Commissioners ("County Commission") enacted by the North Carolina General Assembly in 2013 (Senate Bill 325, N.C. Sess. Law 2013-110) and 2015 (Senate Bill 181, N.C. Sess. Law 2015-4), respectively. Prior to the 2013 legislative action, the nine members of the School Board were elected from single-member districts. The legislature's plan created a mixed system of election, with seven members elected from single-member districts and two members elected from two super districts that divide the county in a donut shape. Prior to the 2015 legislative action, the seven members of the County Commission were elected at large in the county using residency districts. The 2015 legislation imposed the same 7-2 system for County Commission elections.

Plaintiffs allege that the legislature's 7-2 system for School Board and County Commission elections is unconstitutional in two ways. First, both the seven-district and super district plans rely on unconstitutional population deviations, resulting in some votes carrying more weight than others. These deviations result from an arbitrary and discriminatory intent to favor rural and suburban voters over urban voters, to target incumbents who are registered Democrats, and to favor voters who prefer conservative education policies, despite the fact that voters in the county as a whole have rejected those policies. Second, District 4 in the seven-district plan is racially-gerrymandered. Race predominated in the drawing of the district, and

that district cannot survive strict scrutiny because it was not narrowly tailored to advance a compelling state interest.

On March 17, 2014, the district court dismissed Plaintiffs' case in the *Wright* action, holding that Plaintiffs had not pled an actionable claim. *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015). The Fourth Circuit Court of Appeals reversed that decision on May 27, 2015, stating that Plaintiffs had adequately stated their claim, and that even with deviations under 10%, plaintiffs could prove an equal protection violation if those deviations were tainted by arbitrariness or discrimination. *Id*. at 265-67. The Fourth Circuit did uphold the district court's refusal to allow Plaintiffs to amend the complaint to add state legislators as defendants on the grounds that state legislators were not proper defendants. *Id*. at 261-63.

## STATEMENT OF FACTS

After the Fourth Circuit in the *Wright* case on proper defendants, despite allegations of arbitrary and discriminatory intent and despite the fact that the challenged law originated not from Wake County officials, but from the General Assembly, the Wake County Board of Elections remains as the only Defendant in this case. And, as stated in their answer to the complaint, *RWCA v. Wake County Bd. of Elections*, No. 5:13-cv-00607, Dkt. No. 29 (*see, e.g.,* ¶ 3), the Wake County Board of Elections has no access to or knowledge of the information that is at the heart of this complaint—the reasons for the deviations in the challenged plans and the justifications underlying the drawing of District 4 as a majority black district.

Plaintiffs seek from certain members of the General Assembly data, communications, and analysis relating to the justifications for overpopulated districts in both S.B. 325 and S.B. 181. Broadly speaking, Plaintiffs requested: (1) documents indicating the purpose of the redistricting plans; (2) communications with third parties, such as communications with the Governor,

3

Case 5:15-cv-00156-D   Document 43   Filed 11/10/15   Page 3 of 16

election officials and lobbyists; and (3) reports, studies, or other documents containing facts the legislature considered, including public opinion polls. The subpoenas are attached to this document as Appendix A. This information is relevant because the Court must determine whether the challenged plans, and most importantly the deviations contained therein, were tainted by arbitrariness or discrimination. That is, the Court must identify and evaluate the reasons for the deviations. Understanding what information was before the legislature, particularly with respect to communications with election administrators, Wake County voters, and lobbyist or interest groups, would greatly assist the Court in making that determination.

Without access to party discovery from non-parties who solely possess information relevant to these claims, and given their need to gather evidence in support of their claims, Plaintiffs served upon State Legislators (Sen. Barefoot, Sen. Rucho, Rep. Lewis and Rep. Stam) subpoenas for documents on October 21, 2015,[1] with a response due on November 4, 2015. These requests were narrowly drawn to elicit documents relevant to this Court's consideration of the claims in this case. The requests specifically seek, among other documents, documents and communications that were received by or sent to third parties—e.g., the Governor, who publicly opposed S.B. 181[2]—or election administrators. On November 4, 2015, the State Legislators filed a motion to quash the subpoenas in their entirety, arguing that legislative immunity, privilege, and state confidentiality laws completely relieved them of the obligation of having to respond substantively.

Finally, of particularly relevance to the instant motion, the North Carolina General Assembly, including the state legislator movants, passed House Bill 373 on September 24, 2015,

---

[1] The subpoena for Sen. Barefoot was corrected on October 30 to accurately reflect his full name, although the Attorney General had already accepted the first subpoena on his behalf.
[2] Andrew Kenney, *New Law Could Make Republican Majority in Wake County*, Raleigh News & Observer , Apr. 1, 2015, http://www.newsobserver.com/news/local/counties/wake-county/article17141561.html.

4

which moved up the primary election date for county offices, state legislative offices, and other statewide elections from May 2016 to March 15, 2016, to coincide with the presidential primary date, which itself was only moved up to March from the traditional May date in 2013. N.C. Sess. Law 2015-258. The Governor signed H.B. 373 on September 30, 2015. This earlier primary date means that filing for the County Commission seats under the challenged plan opens December 1, 2015. As discussed with the Court at the October 1, 2015, hearing, that significantly earlier filing period has necessitated an expedited trial schedule, with the matter to be tried on December 16-18, 2015.

## ARGUMENT

**I.     The State Legislators Are Not Relieved of their Duty to Respond to the Subpoenas by Legislative Immunity/Privilege or State Confidentiality Laws**

*A. Legislative Immunity or Privilege Does Not Apply to the Documents Requested*

The State Legislators do not enjoy an absolute legislative immunity that would relieve them of all duty to respond to the subpoenas at dispute now. The Speech or Debate Clause of the U.S. Constitution grants broad legislative immunity to federal legislators. U.S. CONST. art. I, § 6, cl. 1. Legislative privilege is a derivative of legislative immunity. *EEOC v. Wash. Suburban Sanitary Comm'n*, 66 F. Supp. 2d 526, 531 (D. Md. 2009), *aff'd by* 631 F.3d 174 (4th Cir. 2011).

The Constitution does not offer the same legislative immunity and privilege protections to state legislators, although the Supreme Court extended immunity from civil suit to state legislators through common law in *Tenney v. Brandhove*, 341 U.S. 367, 372-76 (1951). Federal common law immunity from suit certainly does not give rise to an absolute evidentiary privilege for state legislators. *See United States v. Gillock*, 445 U.S. 360, 374 (1980) (holding there was no legislative privilege for state legislators in federal criminal prosecution based on balancing

5

interests); *Doe v. Pittsylvania County*, 842 F. Supp. 2d 906, 920 (W.D. Va. 2012) (stating there is "no absolute evidentiary privilege for state legislators for their legislative acts") (internal quotations omitted). And the concept of legislative privilege does not "prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992).

The State Legislators' blanket reliance on the concept of legislative immunity to avoid producing relevant material is contrary to the separation of powers and good government principles underlying the development of this protection. "The primary purpose of legislative immunity is not to protect the confidentiality of legislative communications, nor is it to relieve legislators of the burdens associated with document production." *Small v. Hunt*, 152 F.R.D. 509, 513 (E.D.N.C. 1994). Moreover, where the legislator is not a party to the litigation, principles of legislative immunity are even more attenuated. "The privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *In re Grand Jury Investigation into Possible Violations of Title 18, etc.*, 587 F.2d 589, 597 (3d Cir.1978). "This means that 'documents created by legislative activity can, if not protected by any other privilege, be disclosed and used in a legal dispute that does not directly involve those who wrote the document, i.e., the legislator or his aides.'" *Small v. Hunt*, 152 F.R.D. 509, 513 (E.D.N.C. 1994) (quoting *Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 297 (D.P.R. 1989)); *see also Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 n.20 (D. Md. 1992). Thus, in *Small v. Hunt,* the court required production of agendas, minutes, and other documents considered by or produced by a quasi-legislative settlement committee where the legislators on the committee were not defendants in the case.

Indeed,

> while the judicially-created doctrine of 'legislative immunity' provides individual legislators with absolute immunity from liability for their legislative acts, that immunity does not preclude all discovery in the context of this case; instead, claims of legislative immunity or privilege in the discovery context must be evaluated under a flexible approach that considers the need for the information in the context of the particular suit presented, while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process.

*League of Women Voters of North Carolina, et al. v. State of North Carolina, et al.* ("LWVNC"), No. 1:13-cv-660, Doc. 97, at 3 (M.D.N.C. Mar. 27, 2014).

"[B]ecause '[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence,' any such privilege 'must be strictly construed.'" *United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). Evidentiary privileges must be "accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50 (internal quotation marks and citation omitted). Moreover, state legislative privilege must yield "where important federal interests are at stake." *Gillock*, 445 U.S. at 373.

It is disingenuous to state that the "the law is clear that the legislative movants are not required and cannot be required to comply with the subpoenas and requests for production of documents served on them by plaintiffs." Motion to Quash 7. In fact, some of the very same State Legislators, in an action defended by the Attorney General's office in the Middle District of North Carolina, were required to comply with similar subpoenas mere months ago. The Magistrate Judge and District Court Judge rejected those arguments there, ordering the

7

production of many documents that plaintiffs in that action requested. *LWVNC*, No. 1:13-cv-660, Doc. 97, at 3-5 (Mar. 27, 2014), and Doc. 109, at 24-25 (May 15, 2014).

Then and now counsel for State Legislators relied primarily on *Tenney* and *EEOC*. When reviewing objections to the Magistrate Judge's denial in part of the motion to quash that state legislators filed in the *LWVNC* case, Judge Schroeder reviewed those cases and rejected the very interpretation of these two cases that the State Legislators offer now. With respect to *Tenney*, Judge Schroeder rejected the contention that it provided support for the state legislators' position on the privilege because in that case, "it is clear that only immunity from *suit*, rather than immunity from *discovery*, was at issue." *LWVNC*, No. 1:13-cv-660, Doc. 109, at 12.

With respect to *EEOC*, while noting the sometimes broad language used in dicta in the opinion, Judge Schroeder read that case as not being on point because the Fourth Circuit did allow the discovery sought, albeit from modified subpoenas. Consequently, the appeals court "necessarily avoided application of the privilege to any inquiry into legislative motive, finding it 'premature' to do so simply because a 'legitimate claim of privilege might ripen at some point down the road." *Id*. at 17-19 (internal citations omitted). Judge Schroeder thus rejected the *LWVNC* state legislators' reliance on *EEOC*, stating that it did not "provide controlling guidance." *Id*. at 14.

Thus, none of the State Legislators' arguments regarding the correct interpretation of *Tenney* and *EEOC*, and legislative immunity in general, prevailed in the Middle District earlier this year, and they are incorrect here, as well. Blanket immunity used to exclude relevant documents in the possession of legislators from federal litigation should not

> trump the need for direct evidence that is highly relevant to the adjudication of public rights guaranteed by federal statutory law and the Constitution, especially where no threat to legislative immunity itself is presented. Although the Court will not lightly intrude upon the state legislative privilege, it must be a qualified

8

Case 5:15-cv-00156-D   Document 43   Filed 11/10/15   Page 8 of 16

> privilege in such a scenario and yield in the face of an evidentiary need that lies at
> the core of the inquiry required by the Supreme Court in redistricting cases.

*Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14-cv-852, 2015 U.S. Dist. LEXIS 68054, at *25-*26 (E.D. Va. May 26, 2015).  The law does not permit that kind of total obfuscation, as that is certainly not in the best interest of justice.

    B.  *If Privilege Applied, It Would Be Qualified and Yield in This Case*

Any assertion of legislative privilege must turn on a balancing test which, in this case, tips in favor of disclosure.  *See, e.g., Ala. Educ. Ass'n v. Bentley*, No. CV-11-S-761-NE, 2013 WL 124306, at *13 (N.D. Ala. Jan. 3, 2013) (explaining that the "legislative privilege is not absolute" and thus courts must "balance the various competing interests" to determine if the legislative privilege applies) (internal quotations omitted); *see also Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) (explaining that "the legislative privilege for state lawmakers is, at best, one which is qualified" and "a court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege") (internal quotation marks omitted); *Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003) (affirming magistrate's analysis of legislative privilege, including that it is not absolute and determined by a balancing of interests).

But even before applying that balancing test, at least two broad categories of documents requested by Plaintiffs lie wholly outside any applicable legislative privilege, including:  (1) documents that have been disclosed to third parties, for which any legislative privilege has been waived, *Rodriguez*, 280 F. Supp. at 101 (noting that "no one could seriously claim privilege" over a "conversation between legislators and knowledgeable outsiders, such as lobbyists"); and (2) non-deliberative documents that contain objective facts or information available to legislators

9

at the time of their decision. *Comm. for a Fair and Balanced Map v. Ill. State Bd. of Elections*, No. 11-c-5065, 2011 WL 4837508, at *11 (N.D. Ill. Oct. 12, 2011) (documents revealing the "objective facts upon which lawmakers relied" in the decision-making process are beyond the scope of legislative privilege); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984-86 (D. Neb. 2011) ("documents containing factually based information used in the decision-making process or disseminated to legislators" are outside the scope of legislative privilege).

Moving to the balancing test, analyzing the very few document requests to which the privilege may even be arguably applicable, the balancing test tips in favor of production of the requested documents. Because the privilege is qualified, this Court must balance the legitimate interests on both sides against each other. *Rodriguez*, 293 F. Supp. 2d at 304 (*citing In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987)). Specifically, the Court should consider the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Rodriguez*, 293 F. Supp. 2d at 304 (internal citations omitted).

Here, the information sought is central to the claims in the case. Plaintiffs allege that the General Assembly's enactments were in part racially motivated gerrymanders and contained population deviations that were arbitrary and discriminatory. Plaintiffs are seeking from the State Legislators precisely the information that would shed light on those claims. The information is in the possession of the State Legislators. Plaintiffs could not possibly subpoena every third party in the state of North Carolina who may have communicated with the State Legislators—that is simply unworkable. There is no other source for this information. This

litigation centers on one of the most fundamental rights known to American citizens, the right to vote and the right to have one's vote counted equally. Finally, concerns over the inhibition of legislative deliberations should weigh less heavily in cases where the right to vote is at stake because the intent behind passing the challenged legislation plays a different role than, for example, a civil suit seeking legislators' documents to determine intent for the purposes of statutory construction. *See Baldus v. Members of Wis. Gov't Accountability Bd.*, No. 11–CV–562, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011). Applying the balancing test, the privilege should yield, and the Court should order production of the requested materials.

Faced with similar claims in a case alleging racial gerrymandering in redistricting, the Eastern District of Virginia recently employed a balancing test and concluded that the plaintiffs were entitled to discovery of almost exactly the same documents as those sought here, including communications between legislators and individuals outside the legislature. "Balancing the competing, substantial interests at stake, the Court finds that the totality of circumstances warrant the selective disclosure of the assertedly privileged documents in the House's possession. In this context, where Plaintiffs allege racial gerrymandering . . . and the intent of the legislature is the dispositive issue in the case, the balance of interests calls for the legislative privilege to yield." *Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054, at *39-*40. Indeed, the *Bethune-Hill* court found that in the context of an equal protection challenge to a redistricting plan, the first four factors of the balancing test weighed heavily in favor of disclosure and therefore outweighed the fifth factor. *Id.* at *30-*40. The same is true in this case, where the public interest at stake is significant, because "there is no more foundational right than meaningful representation," *id.* at *35, and the legitimacy of the redistricting process is in question.

11

*C. State Confidentiality Statutes Do Not Apply to the Requested Documents*

Beyond the claims of legislative immunity and privilege, the State Legislators claim that state laws entitle them to resist disclosure in the instant case. But those very North Carolina statutes cited by the State Legislators concerning the confidentiality of legislative communications provide an exception to the general rule of confidentiality when the interests of justice require it. North Carolina General Statute § 120-132(c), which addresses testimony by legislative employees, states: "Subject to G.S. 120-9, G.S. 120-33, and the common law of legislative privilege and legislative immunity, the presiding judge may compel disclosure of information acquired under subsection (a) of this section if in the judge's opinion, the disclosure is necessary to a proper administration of justice." For all the reasons discussed in the previous section, the documents requested are necessary to shed the light of truth on the disputed matter, and are necessary to a proper administration of justice.

*D. If the Privilege Applies, State Legislators Should Produce a Privilege Log*

State Legislators not only wish to withhold all documents responsive to the subpoenas issued by Plaintiffs, but they also appear to wish to do so without producing a privilege log. That is not permissible under the Federal Rules of Civil Procedure. In fact, Fed. R. Civ. P. 45(e)(2)(A) requires description of documents so that the opposing party can assess the withholding party's claim of privilege. The State Legislators must produce the documents that are categorically not privileged, and must produce a privilege log so that the Court can determine whether the qualified privilege applies to any of the remaining documents. This is true even for claims of legislative privilege. For example, production of a privilege log was required in:

- *Bethune-Hill,* 2015 U.S. Dist. LEXIS 68054, at *47 (ordering a privilege log for documents withheld on the basis of legislative privilege that contained sufficient detail to allow the plaintiffs to discern whether or not the documents are properly

12

Case 5:15-cv-00156-D   Document 43   Filed 11/10/15   Page 12 of 16

> withheld; noting that a notation that merely indicates a document relates to redistricting issues is insufficient)

- *LWVNC*, No. 1:13-cv-660, Doc. 97, at *7 (ordering the parties to meet and confer on the categories of documents to be included in privilege log when claiming legislative privilege)

- *Favors*, 285 F.R.D. at 223-24 (requiring supplementation of privilege log to support claims of legislative privilege)

- *Nebraska*, 788 F. Supp. 2d at 986-87 (requiring production of a privilege log for documents withheld on privilege grounds, including legislative privilege)

- *Young v. City and County of Honolulu*, Civ. No. 07-00068, 2008 WL 267365, at *2 (D. Haw. July 8, 2008) (noting that ordered production of a privilege log would include documents withheld on legislative privilege grounds)

The State Legislators here have no basis for failing to produce a privilege log, and should be ordered to produce the log immediately if they wish to proceed with claims of legislative privilege so that this Court has the information necessary to engage in the balancing test described in Section I.B. *supra* at 9-11.

## II. The Requests Are Not Overbroad and Time for Response Is Reasonable Given the Expedited Schedule

In a last ditch effort to avoid having to comply with the subpoena duces tecum, State Legislators complain that the requests are overbroad and therefore the time afforded to them to respond is inadequate. This argument fails for several reasons.

First, as a primary matter, these cases are on an expedited schedule for trial because of State Legislators' own actions. When S.B. 181 was enacted, the primaries for the 2016 county commission elections were scheduled to be in May, as they have been for many years. On September 24, 2015, the North Carolina General Assembly moved the primaries for the county commission elections, along with elections for other offices, up to March 15, 2016, to coincide with the presidential primary. N.C. Sess. Law 2015-258. This case would not have needed to be

13

on such a tight trial and discovery schedule had the primary election not been moved up. It is a manifestly unjust position to create the time crunch, and then claim the time crunch prevents one from producing relevant information necessary for this Court's consideration of this matter.

Second, while Plaintiffs do not believe that the subpoena requests are overly broad, State Legislators have not made a good faith effort to meet-and-confer with Plaintiffs to refine or prioritize the materials that must be identified and produced. Indeed, where documents requested by subpoena "involve communications with outside parties or are other documents that are considered public records under state law," "[r]equiring production of those documents is not unduly burdensome." *LWVNC*, No. 1:13-cv-660, Doc. 97, at *7. As citizens of this state, Plaintiffs are entitled to the information requested by subpoena, and the State Legislators must make an honest effort to review and produce the documents or communications requested in a timely fashion.

Finally, State Legislators' portrayal of the scope of the discovery request is simply illogical. They represent that their counsel would have to review 600,000 email messages in thirty-seven separate accounts for privileged and/or confidential material. Even Plaintiffs think it is implausible that each of the alleged 600,000 email messages that State Legislators possess is relevant to this case. Like every other entity of its size and resources, staff or counsel for the State Legislators can search these accounts for relevant information using search terms. Plaintiffs would be happy to supply State Legislators with those search terms. And then counsel for State Legislators' review for privileged or confidential materials can be limited to the products of those searches. This type of effort is now the hallmark of complex civil litigation, particularly when fundamental rights are at stake. State Legislators are not a special class of citizens—they must comply with properly issued discovery requests when they possess evidence

relevant to disputed issues of fact that is not available from any other sources, particularly where constitutional rights are at stake.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the State Legislators' motion to quash and overrule their objections to the subpoena.

Respectfully submitted this 10th day of November, 2015.

/s/ Allison J. Riggs_____
Anita S. Earls
N.C. State Bar No. 11597
Allison J. Riggs
N.C. State Bar No. 40028
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
allison@southerncoalition.org

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has on this day electronically filed the foregoing **Opposition to Motion to Quash Subpoenas** in the above-titled action with the Clerk of the Court using the CM/ECF system, which on the same date sent notification of the filing to the following:

Charles F. Marshall
Matthew B. Tynan
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
1600 Wells Fargo Capitol Center
150 Fayetteville St.
Raleigh, NC 27601
cmarshall@brookspierce.com
mtynan@brookspierce.com

*Counsel for Wake County Board of Elections*

Alexander McC. Peters
Melissa L. Trippe
NC DEPARTMENT OF JUSTICE
PO Box 629
Raleigh, NC 27602
apeters@ncdoj.gov
mtrippe@ncdoj.gov

This the 10th day of November, 2015.

/s/ Allison J. Riggs
Allison J. Riggs

*Counsel for Plaintiffs*

16

Case 5:15-cv-00156-D   Document 43   Filed 11/10/15   Page 16 of 16