IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action

| | | |
|---|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:15-CV-156-D |
| WAKE COUNTY BOARD OF ELECTIONS, | ) ) ) | |
| Defendant. | ) | |
| | | |
| CALLA WRIGHT, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:13-CV-607-D |
| STATE OF NORTH CAROLINA, | ) ) ) | |
| Defendants. | ) | |

## ORDER

On November 4, 2015, Senator John Chadwick Barefoot, Senator Robert A. Rucho, Representative Davis Ray Lewis, and Representative Paul Stam ("legislative movants") moved to quash subpoenas that the plaintiffs in this action served on them. See [D.E. 41, 42]. The legislative movants are members of the North Carolina General Assembly and are not defendants in this case. Plaintiffs' subpoenas seek various documents from the legislative movants concerning 2013 N.C. Sess. Laws 110 ("2013 law") and 2015 N.C. Sess. Laws 4 ("2015 law"). The 2013 law enacts a new redistricting plan for electing the Wake County School Board ("2013 Wake County School Board Plan"). The 2015 law enacts a new redistricting plan for electing the Wake County

Commissioners ("2015 Wake County Commissioners Plan"). Plaintiffs contend that the 2013 Wake County School Board Plan and the 2015 Wake County Commissioners Plan violate the Fourteenth Amendment of the United States Constitution and Article I, § 19 of the North Carolina Constitution by failing to comply with the one person, one vote principle. Plaintiffs also contend that District 4 in the 2015 Wake County Commissioners Plan constitutes an unlawful racial gerrymander in violation of equal protection under the United States and North Carolina Constitutions.

The legislative movants contend that the subpoenas violate their legislative immunity and that the information sought is confidential and subject to legislative privilege. See [D.E. 41] 1. The legislative movants also contend that the subpoenas are unreasonable because the compliance period is unreasonably short given the breadth of the information requested. Id. 2. Accordingly, they ask the court to quash the subpoenas. See id.; [D.E. 42].

On November 10, 2015, plaintiffs responded in opposition to the motion to quash. See [D.E. 43]. Plaintiffs contend that (1) legislative immunity or legislative privilege does not apply to the requested documents; (2) if legislative privilege applies, then the privilege is qualified and must yield in this case; (3) state confidentiality statutes do not apply to the requested documents; (4) if legislative privilege applies, then the legislative movants should produce a privilege log; and (5) the requests are not overbroad and the time for response is reasonable given the expedited trial schedule. See id. 1, 5–15.

As explained below, the court denies the motion to quash to the extent it seeks to bar the production of a privilege log and orders the legislative movants to file a privilege log by December 11, 2015. The log will enable the court to determine whether legislative privilege or state law protects the legislative movants from producing the requested documents.

2

I.

In the subpoenas, plaintiffs seek to require the production of the following documents:

1. All documents and communications received, edited, or created by you that reflect or discuss the rationale or purpose for enacting or supporting any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

2. All documents concerning communications between you and any constituent or non-employee third party regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history or political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method, and/or any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

3. All documents reflecting any communications between you and the Office of the Governor of North Carolina regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method, and/or any provision in 2015 N.C. Sess. Laws 4 and/or 2013 N.C. Sess. Laws 110.

4. All documents reflecting any communications between you and any North Carolina state or county agency, including but not limited to the State Board of Elections and Wake County Board of Elections, regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

5. All documents reflecting any communications between you and any lobbyist, political organization, or public interest group or individual regarding minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election.

6. All documents and communications referring or relating to any estimate, research, report, study, or analysis received, edited, or created by you related to minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history and political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

3

> 7. All documents and communications related to any polls or surveys conducted by you or brought to your attention related to minority voters or the relative voting strength of non-Raleigh voters in Wake County, election history or political performance of candidates or electoral districts in Wake County elections, the Wake County Commission or its election method, the Wake County School Board or its election method.

[D.E. 42] 4–5.

As members of the North Carolina General Assembly, the legislative movants possess qualified legislative immunity "to be free from arrest or civil process for what they do or say in legislative proceedings" within "the sphere of legitimate legislative activity." Tenney v. Brandhove, 341 U.S. 367, 372, 376 (1951) (holding that members of a committee of the California legislature cannot be civilly liable for their legislative statements and activities); United States v. Gillock, 445 U.S. 360, 366–74 (1980) (holding that legislative immunity or privilege does not insulate state legislators from federal criminal prosecution for their acts or create a federal evidentiary privilege barring the introduction of legislative acts of a state legislator criminally charged in federal court with unlawfully exploiting his legislative position). The United States Court of Appeals for the Fourth Circuit recognizes that "[l]egislative immunity's practical import is difficult to overstate." E.E.O.C. v. Washington Suburban Sanitary Comm'n, 631 F.3d 174, 181 (4th Cir. 2011). "Legislative immunity provides legislators with the breathing room necessary to make [our toughest decisions] in the public interest, in a way uninhibited by judicial interference and undistorted by the fear of personal liability." Id. (quotation and alterations omitted). Legislative immunity "shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." Id. "Legislative immunity thus reinforces representative democracy, fostering public decisionmaking by public servants for the right reasons." Id.

4

"Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes." Id. "Absolute immunity enables legislators to be free, not only from the consequences of litigation's results, but also from the burden of defending themselves." Id. (quotations and emphasis omitted). Moreover, "[b]ecause ligation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued." Id. "Consequently, if . . . private plaintiffs sought to compel information from legislative actors about their legislative activities, they would not need to comply." Id.

Notwithstanding the breadth of its language, the Fourth Circuit in Washington Suburban Sanitary Commission affirmed the district court's decision to compel the production of a narrow category of documents by a legislative entity. See id. at 176–79, 182–84. In that case, the EEOC originally sought documents concerning the legislative entity's decision to restructure a department and documents concerning age discrimination that allegedly took place before and after the departmental restructuring. See id. The Fourth Circuit recognized that the departmental restructuring was a legislative act implicating legislative privilege. See id. During the case, however, the EEOC narrowed its subpoena to seek documents only concerning alleged age discrimination that took place before and after the departmental restructuring. See id. The district court ordered the production of such documents not implicating legislative privilege, and the Fourth Circuit affirmed. Id. Thus, the district court and the Fourth Circuit did not have to address whether legislative privilege protected documents concerning the departmental restructuring. See id.; see also McCray v. Md. Dept. of Transp., 741 F.3d 480, 486–87 (4th Cir. 2014).

Two district courts within the Fourth Circuit have analyzed Washington Suburban Sanitary Commission in the context of document-production requests directed at state legislators in cases

involving constitutional challenges to redistricting plans. See Bethune-Hill v. Va. State Bd. of Elections, No. 3:14CV852, 2015 WL 3404869, at *8–17 (E.D. Va. May 26, 2015) (unpublished); N.C. State Conf. of the NAACP v. McCrory, No. 1:13CV658, [D.E. 109] 9–25 (M.D.N.C. May 15, 2014) (unpublished); cf. Page v. Va. State Bd. of Elections, 15 F. Supp. 3d 657, 664–68 (E.D. Va. May 8, 2014). Each court rejected the view that Washington Suburban Sanitary Commission absolutely exempts a state legislator from producing any documents in response to a subpoena arising from a constitutional challenge to a redistricting plan.

At present, the court need not plumb the depths of these cases. Rather, in order to resolve the pending motion to quash, the court needs a privilege log from the legislative movants. See Fed. R. Civ. P. 45(e)(2)(A)(ii). Accordingly, the legislative movants shall file a privilege log no later than December 11, 2015.

II.

In sum, the court DENIES the motion to quash [D.E. 41] to the extent it seeks to bar the production of a privilege log and ORDERS the legislative movants file a privilege log by December 11, 2015. Upon receipt, the court will determine whether to grant any further relief to the plaintiffs or to the legislative movants. Finally, nothing in this order prevents the legislative movants and the plaintiffs from conferring about their discovery dispute and resolving it without further need for judicial intervention. Cf. Local Civil Rule 7.1(c).

SO ORDERED. This __3__ day of December 2015.

                                                                JAMES C. DEVER III
                                                                 Chief United States District Judge