IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action

| | | |
|---|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:15-CV-156-D |
| WAKE COUNTY BOARD OF ELECTIONS, | ) ) ) | |
| Defendant. | ) ) | |
| CALLA WRIGHT, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:13-CV-607-D |
| STATE OF NORTH CAROLINA, | ) ) ) | |
| Defendant. | ) | |

**ORDER**

Plaintiffs challenged the North Carolina General Assembly's ("General Assembly") 2013 redistricting plan for electing the Wake County School Board ("2013 Wake County School Board Plan") and the General Assembly's 2015 redistricting plan for electing the Wake County Board of Commissioners ("2015 Wake County Commissioners Plan"). Plaintiffs contended that the 2013 Wake County School Board Plan and the 2015 Wake County Commissioners Plan violate the one person one vote principle in the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, § 19 of the North Carolina Constitution. Plaintiffs conceded,

however, that the maximum population deviation in the 2013 Wake County School Board Plan and the 2015 Wake County Commissioners Plan was below 10% and conceded that such a deviation is a "minor deviation" under governing Supreme Court precedent. Specifically, in both redistricting plans, the maximum population deviation in the seven single-member districts was 7.11% and in the two super districts was 9.8%. As for the 2013 Wake County School Board Plan, plaintiffs contended that the plan resulted from the General Assembly's partisan desire (1) to disadvantage incumbents on the non-partisan Wake County Board of Education ("Wake County Board of Education" or "Wake County School Board") who are registered Democrats who support "progressive" education policies and (2) to favor suburban and rural voters over urban voters. As for the 2015 Wake County Commissioners Plan, plaintiffs contended that the plan resulted from the General Assembly's partisan desire (1) to favor suburban and rural voters over urban voters and (2) to favor voters who favor Republican candidates over voters who favor Democratic candidates on the Wake County Board of Commissioners. Plaintiffs also contended that the 2015 General Assembly racially gerrymandered District 4 in the 2015 Wake County Commissioners Plan and thereby violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

Defendant Wake County Board of Elections ("defendant" or "Wake County Board of Elections") is the local election board responsible for administering elections in Wake County, North Carolina, including elections for the Wake County Board of Education and the Wake County Board of Commissioners. The Wake County Board of Elections had nothing to do with the General Assembly's decision to enact the 2013 Wake County School Board Plan or the 2015 Wake County Commissioners Plan, but the United States Court of Appeals for the Fourth Circuit has held that the Wake County Board of Elections is the proper defendant. See Wright v. North Carolina, 787 F.3d 256, 261–63 (4th Cir. 2015). Moreover, although the Wake County Board of Elections does not take

a position on whether the General Assembly should have adopted the 2013 Wake County School Board Plan or the 2015 Wake County Commissioners Plan, the Wake County Board of Elections has defended the constitutionality of the redistricting plans as a legal and institutional matter.

On December 16–18, 2015, the court held a bench trial in this consolidated action. In their complaints and at the end of the trial, plaintiffs asked this court to declare the 2013 Wake County School Board Plan and the 2015 Wake County Commissioners Plan unconstitutional, to enjoin the Wake County Board of Elections from administering elections under either plan, to hold elections under a court-ordered remedial plan, and to give the General Assembly another opportunity to redistrict the Wake County School Board and Wake County Board of Commissioners consistent with the United States and North Carolina Constitutions.

On February 26, 2016, the court found that plaintiffs had not proven their case, entered judgment for the Wake County Board of Elections, and declined to enjoin the Wake County Board of Elections from administering elections under either the 2013 Wake County School Board Plan or the 2015 Wake County Commissioners Plan. See [D.E. 64, 65]. Plaintiffs appealed. See [D.E. 66].

On April 20, 2016, the Supreme Court of the United States decided Harris v. Arizona Independent Redistricting Commission, 136 S. Ct. 1301 (2016). In Harris, the Supreme Court clarified the standard governing one person one vote challenges where the maximum population deviation in a redistricting plan is less than 10%. See id. at 1307. "[I]n a case like this one, those attacking a state-approved plan must show that it is more probable than not that a deviation of less than 10% reflects the predominance of illegitimate reapportionment factors rather than the legitimate considerations to which we have referred in Reynolds [v. Sims, 377 U.S. 533 (1964)] and later cases." Id. (quotation omitted). In Harris, the Court also stated: "Given the inherent difficulty of

3

measuring and comparing factors that may legitimately account for small deviations from strict mathematical equality, we believe that attacks on deviations under 10% will succeed only rarely, in unusual cases." Id.

On July 1, 2016, the United States Court of Appeals for the Fourth Circuit, in a 2-1 decision, resolved the appeal in this case. As for plaintiffs' racial gerrymandering claim, the Fourth Circuit unanimously rejected plaintiffs' racial gerrymandering claim. See RWCA v. Wake Cty. Bd. of Elections, No. 16-1270, No. 16-1271, 2016 WL 3568147, at *13–15 (4th Cir. July 1, 2016). As for plaintiffs' one person one vote claim, the Fourth Circuit applied Harris and found that this case was the "rare[ ]" and "unusual" case referenced in Harris. See id. at *12. Thus, even though the maximum population deviation in each plan was below 10%, the Fourth Circuit found it more probable than not that the deviation of less than 10% reflects the predominance of an illegitimate reapportionment factor (i.e., improper partisanship) over legitimate considerations. Id. Accordingly, the Fourth Circuit held that each plan violated the one person one vote principle in the United States Constitution and the North Carolina Constitution. Id. at *12–13. The Fourth Circuit remanded "with instructions to enter immediately judgment for Plaintiffs, granting both declaratory relief and a permanent injunction, as to the one person, one vote claims." Id. at *15 (footnote omitted). The Fourth Circuit added that it saw "no reason why the November 2016 elections should proceed under the unconstitutional plans we strike down today." Id. at *15 n.13.

The Fourth Circuit's mandate has not yet issued, and, absent another order from the Fourth Circuit, will not issue any earlier than July 22, 2016. See Fed. R. App. P. 40(a)(1), 41(b). "The mandate is the document by which [the appellate court] relinquishes jurisdiction and authorizes the originating district court . . . to enforce the judgment of [the appellate court]." United States v. Campbell, 168 F.3d 263, 266 n.3 (6th Cir. 1999) (quotation omitted); see United States v. DeFries,

4

129 F.3d 1293, 1302 (D.C. Cir. 1997) (per curiam); see also Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam). Nevertheless, once the mandate issues, this court will issue the mandated declaratory relief and permanent injunction. When this court does so, the court must address the remedy. The people in Wake County deserve and will have elections for the Wake County School Board and the Wake County Board of Commissioners on November 8, 2016. Notably, the terms of office of three County Commissioners and nine School Board members will expire shortly after the November 2016 election.

Not later than July 18, 2016, the Wake County Board of Elections will notify the court of any applicable deadlines that must be met in order to hold an election on November 8, 2016, under a new plan or plans for the Wake County School Board and the Wake County Board of Commissioners. The deadlines include, but are not limited to: (1) any applicable dates for the beginning and ending of qualification period for candidates and filing period for candidates; (2) the date when early voting starts; (3) the date when military, overseas, and other absentee ballots must be mailed; and, (4) the date when ballots must be printed. The Wake County Board of Elections also will advise the court whether a primary election for the Wake County Board of Commissioners is feasible.

Not later than July 18, 2016, the court requests that the Speaker of the House and the President Pro Tempore of the Senate of the North Carolina General Assembly notify the court whether the General Assembly will devise a new redistricting plan or plans and when the General Assembly will provide that new plan or plans to the court. Cf. Lawyer v. Dep't of Justice, 521 U.S. 567, 575–76 (1997) (holding that a federal court should give a state a reasonable opportunity to meet constitutional requirements by adopting a substitute redistricting plan that corrects the constitutional deficiency in an invalidated plan); Growe v. Emison, 507 U.S. 25, 34–37 (1993) (same); Wise v. Lipscomb, 437 U.S. 535, 540 (1978) (same); Chapman v. Meier, 420 U.S. 1, 26–27 (1975) (same);

5

White v. Weiser, 412 U.S. 783, 794–97 (1973) (same); Ely v. Klahr, 403 U.S. 108, 114–15 & n.6 (1971) (same). In doing so, the court takes judicial notice that the General Assembly adjourned on July 1, 2016, and is not scheduled to reconvene until January 2017.

If the General Assembly is unable or unwilling to submit a new plan or plans for the Wake County School Board and Wake County Board of Commissioners, a mechanism exists under North Carolina law for the North Carolina Board of Elections to act. Specifically, North Carolina General Statute § 163-22.2 provides:

> In the event . . . any State election law or form of election of any county board of commissioners, local board of education, or city officer is held unconstitutional or invalid by a State or federal court . . . and such ruling adversely affects the conduct and holding of any pending primary or election, the State Board of Elections shall have authority to make reasonable interim rules and regulations with respect to the pending primary or election as it deems advisable so long as they do not conflict with any provisions of Chapter 163 of the General Statutes and such rules and regulations shall become null and void 60 days after the convening of the next regular session of the General Assembly. The State Board of Elections shall also be authorized, upon recommendation of the Attorney General, to enter into agreement with the courts in lieu of protracted litigation until such time as the General Assembly convenes.

Pursuant to section 163-22.2, it appears that the North Carolina Board of Elections could, for example, take the existing plans and equalize the population in the two super districts and equalize the population in the seven single-member districts. Such a remedy would appear to address the one person one vote violation, while otherwise preserving the legitimate legislative choices in the 2013 Wake County School Board Plan and 2015 Wake County Commissioners Plan. Cf. Harris, 136 S. Ct. at 1306 ("The Fourteenth Amendment's Equal Protection Clause requires States to make an honest and good faith effort to construct legislative districts as nearly of equal population as is practicable.") (alterations and quotations omitted)); Newsome v. N.C. State Bd. of Elections, 105 N.C. App. 499, 506–08, 415 S.E.2d 201, 204–06 (1992) (affirming the action of the North Carolina Board of Elections under North Carolina General Statute § 163-22.2 where its remedial plan

6

corrected the defect in the statute, but otherwise "carried out the clear intention of the General Assembly").

Not later than July 18, 2016, the court requests that the North Carolina Board of Elections advise the court of its willingness to act under North Carolina General Statute § 163-22.2 to ensure the timely election of the Wake County School Board and Wake County Board of Commissioners. If the North Carolina Board of Elections will act, the court also requests notice of when the North Carolina Board of Elections will provide a new plan or plans to the court or provide some other proposed remedy.

If neither the General Assembly nor the North Carolina Board of Elections plans to act and the mandate issues, this court will have to address the remedy. If the court's injunction bars the use in the November 2016 election of the plans that the Fourth Circuit invalidated, the effect of the injunction will be to cancel the votes cast in the March 2016 primary election for the Wake County Board of Commissioners and to void the primary election of March 15, 2016, to void the candidate filing for the Wake County Board of Commissioners, which closed on December 17, 2015, and to void the candidate filing for the Wake County School Board, which closed on July 1, 2016. The court will have to address the propriety of such a remedy and address whether footnote 13 in the Fourth Circuit's opinion mandates such a remedy. Cf. Purcell v. Gonzalez, 549 U.S. 1, 4–5 (2006) (per curiam); Upham v. Seamon, 456 U.S. 37, 44 (1982) (per curiam); Ely, 403 U.S. at 114–15; Reynolds, 377 U.S. at 585–86; S.W. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 919 (9th Cir. 2003) (en banc) (per curiam). The parties will provide the court their views on these issues not later than July 18, 2016.

Finally, if the General Assembly or the North Carolina Board of Elections does not act and this court concludes that the Fourth Circuit has mandated that the invalidated plans not be used in

7

the November 2016 election, the court will have to devise, consider, and adopt a court-ordered remedial plan or plans. McGhee v. Granville Cty., 860 F.2d 110, 115 (4th Cir. 1988) ("If the legislative body fails to respond or responds with a legally unacceptable remedy, the responsibility falls on the District Court to exercise its discretion in fashioning a near optimal plan.") (citations and quotations omitted)). If this court does so, the Supreme Court has stated that "modifications of a state plan are limited to those necessary to cure [the] constitutional . . . defect." Upham, 456 U.S. at 43; see Perry v. Perez, 132 S. Ct. 934, 941–44 (2012) (per curiam); Abrams v. Johnson, 521 U.S. 74, 98–101 (1997); Weiser, 412 U.S. at 795–97; Cook v. Luckett, 735 F.2d 912, 918–20 (5th Cir. 1984). Moreover, a court-drawn plan should employ "single-member over multimember districts, absent persuasive justification to the contrary." Wise, 437 U.S. at 540; see Connor v. Finch, 431 U.S. 407, 414–15 (1977); Mahan v. Howell, 410 U.S. 315, 333 (1973) (same); Connor v. Johnson, 402 U.S. 690, 692 (1971) (per curiam) (same). Furthermore, a court-drawn plan "must ordinarily achieve the goal of population equality with little more than de minimis variation." Chapman, 420 U.S. at 26–27 (footnote omitted); see Abrams, 521 U.S. at 98–100 (same); Connor, 431 U.S. at 414 (same).

The parties will provide the court their views on these issues and a schedule for devising, considering, and adopting any court-ordered remedial plan or plans not later than July 18, 2016. Additionally, the court recognizes that the Speaker of the House and the President Pro Tempore of the Senate of the North Carolina General Assembly and the North Carolina Board of Elections are not parties to this case. The court therefore DIRECTS the clerk of court to serve this order upon the office of the North Carolina Attorney General and DIRECTS the office of the North Carolina Attorney General to ensure proper service of this order on the Speaker of the House and the President

8

Case 5:15-cv-00156-D   Document 78   Filed 07/08/16   Page 8 of 9

Pro Tempore of the Senate of the North Carolina General Assembly and on the North Carolina Board of Elections.

SO ORDERED. This 8 day of July 2016.

                                                JAMES C. DEVER III
                                                Chief United States District Judge

9

Case 5:15-cv-00156-D   Document 78   Filed 07/08/16   Page 9 of 9