**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Consolidated Civil Action**

| | |
|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al. | |
| Plaintiffs, | |
| v. | No. 5:15-cv-156 |
| WAKE COUNTY BOARD OF ELECTIONS, | |
| Defendant. | |

| | |
|---|---|
| CALLA WRIGHT, et al., | |
| Plaintiffs, | |
| v. | No. 5:13-cv-607 |
| THE STATE OF NORTH CAROLINA, et al., | |
| Defendants. | |

**PLAINTIFFS' SUBMISSION ON APPROPRIATE REMEDIES**

Pursuant to this Court's Order issued July 8, 2016, ECF No. 78,[1] Plaintiffs in these consolidated cases, by and through their undersigned counsel, respectfully submit the following points and authorities.

## I.  INTRODUCTION

Contrary to the assertion in the Court's Order of July 8, 2016, ECF No. 78 at 3, Plaintiffs have never asked this Court to devise and order the use of a remedial redistricting plan for use by the Wake County Board of County Commissioners or the Wake County Board of Education, and are not now asking the Court to do so.  Instead, Plaintiffs contend that in the circumstances of this case, where fully constitutional and legally enforceable districting plans exist already for both bodies based on 2010 Census Data, this Court does not have the legal authority to impose its own plans.  The redistricting plans that were duly enacted and in effect in 2011, and that were used until the 2013 and 2015 legislation was passed changing the method of election, are the last legally enforceable election systems and now are the appropriate districts to be used for the upcoming elections.  Once the mandate of the Fourth Circuit Court of Appeals issues in this case, unless and until the North Carolina General Assembly enacts other redistricting plans or methods of election, the State Board of Elections and the Defendant here, the Wake County Board of Elections, are legally obligated to enforce the election system previously in place.  There is no need, and no legal justification, for this Court to do anything beyond implementing the mandate by issuing a permanent injunction enjoining the Defendant Wake County Board of Elections from holding elections under the statutes ruled unconstitutional in this case.

## II.  STATEMENT OF CASE

---

[1] Unless otherwise noted, all citations to documents filed in this consolidated action are to the lead case, *Raleigh Wake Citizens Assoc. et al., v. Wake Cty. Bd. of Elections, et al.,* No. 5:15-cv-156.

On August 22, 2013 Plaintiffs in *Wright v. North Carolina*, No. 13-cv-607, filed suit seeking to enjoin the use of a new election system for the Wake County Board of Education enacted by the North Carolina General Assembly over the objection of a majority of the Board on the grounds that the districts violated the one-person, one-vote requirement of the equal protection clauses of the Fourteenth Amendment to the U.S. Constitution and Article 1, § 19 of the North Carolina Constitution.  Following dismissal of the action on March 14, 2014, Plaintiffs appealed.  While that appeal was pending, the North Carolina General Assembly enacted legislation requiring the use of the same system for the Wake County Board of County Commissioners on April 2, 2015.  On April 19, 2015 the Raleigh Wake Citizens Association and another set of individual voters filed suit challenging that legislation on similar one-person, one-vote grounds and raised an additional claim that racial considerations predominated in the drawing of one of the districts.  *Raleigh Wake Citizens Ass'n. v. Wake Cnty. Bd. of Elections,* No. 15-156 (E.D.N.C.) ("RWCA").

On May 27, 2015 the Fourth Circuit issued its ruling reversing the lower court's dismissal of Plaintiffs' claims in the first case.  *Wright v. North Carolina,* 787 F.3d 256 (4th Cir. 2015).  The two cases were consolidated and a bench trial was held on December 16-18, 2015.  On February 26, 2016, the trial court ruled for Defendant on all claims and Plaintiffs appealed.  On expedited review, the Fourth Circuit reversed in part and affirmed in part with an opinion issued July 1, 2016.  On July 14, 2016 the Defendant petitioned the Fourth Circuit for rehearing *en banc*, Plaintiffs filed a motion asking the court to issue the mandate forthwith, and the Speaker of the House and the President Pro Tempore of the Senate of the North Carolina General Assembly filed a motion to intervene.  The motions and the petition are pending with the Fourth Circuit Court of Appeals as of the date of this pleading.

3

### III.    STATEMENT OF FACTS

In 2011 both the Wake County School Board and the Wake County Board of County Commissioners, pursuant to authorities granted to them under N. C. Gen. Stat. §§ 115C-37 and 153A-22, redrew their election districts and residency districts respectively, to account for population imbalances as indicated by the 2010 census data.  *RWCA v. Wake County Bd. of Elections,* Nos. 16-1270 and 16-1271, 2016 U.S. App. LEXIS 12136 *3 (July 1, 2016).   The Wake County School Board was a nine-member board elected in non-partisan elections in odd-numbered years with staggered terms.  *Id.*   The Board of County Commissioners was a seven-member board elected at-large with partisan elections in even-numbered years from residency districts and with staggered terms.  *See* 1981 N. C. Sess. Laws 983.

In 2011 elections were held in five of the nine single-member school board districts using the new districts adopted by that board.  *See* Pls.' Trial Exs. 58, 59.  In 2013, elections were held in the other four districts. *See* Pls.' Trial Ex. 56.  No school board district elections were held in 2015.  *See* 2013 N.C. Sess. Laws 110 § 1 ("No election for members of the Wake County Board of Education shall take place in 2015.")  While a filing period was conducted for elections in all nine districts for the school board in 2016 using the newly enacted seven-two district system that has now been declared unconstitutional, no school board primaries or elections have been held to date.  *See* Candidate List Grouped by Contest, Wake County Board of Elections, http://msweb03.co.wake.ne.us/bordelec/downloads/6candidate/6candidatelist/2016EDUandSW.pdf (last visited July 18, 2016).

In 2012, at-large elections were held in three county commission residency districts using the 2011 districts and in 2014, at-large elections were held in the other four county commission 2011 districts.  *See* Pls.' Trial Exs. 55, 57.  In March 2016 a contested primary was held in super-

district B established by the unconstitutional law. *See* March 15, 2016 Election Results, Wake County Board of Elections, http://wakegov.com/elections/data/Past%20Election%20Results/2016-03-15%20-%20Primary%20Election/20160315Summary.htm (last visited July 18, 2016). No at-large primary elections were held in March 2016 for residency districts 4, 5, and 6 under the prior district system because those primary races were uncontested. *See id.* The district 5 seat is also uncontested in the general election. *See* 2016 Candidate Detail List, Wake County Board of Elections, http://msweb03.co.wake.nc.us/bordelec/downloads/6candidate/6candidatelist/2016General.pdf (last visited July 18, 2016. There have been no final elections under the new system for county commission.

The statutes that the Court of Appeals has found violate the one person, one vote requirement do not contain severability clauses. *See* 2013 N.C. Sess. Laws 110 and 2015 Sess. Laws 4. The statutes and the systems of election they create cannot be implemented without defined district boundaries, the very element that has been ruled unconstitutional.

## IV.    ARGUMENT

Once the mandate of the Fourth Circuit Court of Appeals is issued in this case, this Court is obligated to implement the Fourth Circuit's judgment and enjoin the use of the unconstitutional election systems established by Session Law 2013-110 and Session Law 2015-4. In each case, because the remainder of the statute cannot be implemented without the districts at issue, the entire statute is unconstitutional. Typically in redistricting cases, the prior redistricting plan that was in effect is also unconstitutional because it no longer complies with one-person, one-vote using the most current census data. However, in this unusual case where a mid-decade

5

Case 5:15-cv-00156-D Document 81-3 Filed 07/18/16 Page 5 of 21
Case 5:15-cv-00156-D Document 82 Filed 07/18/16 Page 5 of 21

re-redistricting has occurred, the prior plan is a constitutional plan and can be used. The prior districts represent the judgment of the bodies involved regarding how their districts should be drawn. They are known to the voters and have previously been implemented by the Defendant Board of Elections. In these circumstances, the Court is obligated to allow the State Board of Elections to administratively return to the prior system of election and newly drawn districts for the school board and county commission are not required. The only remedy this Court has the authority to implement is a permanent injunction prohibiting the use of the unconstitutional election systems.

A. PLAINTIFFS ARE NOT ASKING THIS COURT TO ORDER INTERIM REMEDIAL DISTRICTS

In Plaintiffs' original complaint in *Wright,* the specific relief Plaintiffs sought was "a permanent injunction enjoining Defendant, its agents, officers and employees, from enforcing or giving any effect to the provisions of Session Law 2013-110 that relate to the method of election of members of the Wake County Board of Education." Complaint, ECF No. 1, at 22 ¶3 (Aug. 22, 2013). In addition, Plaintiffs asked the Court to declare that unless the North Carolina General Assembly acts, the Board of Education itself has the authority under state law to adopt districts that comply with the one-person, one-vote requirement. *Id.,* ¶4. The identical relief was sought with regard to the county commission in *RWCA. See* Amended Complaint, ECF No. 22, at 17 ¶¶4, 6, (June 5, 2014).[2]

More importantly and binding on this Court, is the direction from the Fourth Circuit when this issue arose in the context of whether the Wake County Board of Elections was a

---

[2] Indeed, Plaintiffs still contend that if new districts did need to be drawn for the county commission and school board, and the General Assembly did not act to do so, the proper entity under state law to draw such districts are the local governments themselves, *see* N.C. Gen. Stat. §§ 115C-37 and 153A-22, and they are the parties that should be given the initial opportunity to fashion an appropriate remedy. *See, e.g., McGee v. Granville Cty.,* 860 F.2d 110, 121 (4th Cir. 1988) (court erred in not deferring to the County's proposed remedial plan).

6

sufficient defendant to allow Plaintiffs full relief should they prevail on any of their claims.  *See Wright,* 787 F. 3d at 262-63.  The Fourth Circuit ruled that the Board of Elections is a sufficient party for a remedy and that no new districts need to be drawn in order for a valid election to occur if Plaintiffs succeed.  *Id.*  Specifically, the Court held:

> Plaintiffs counter that if the Proposed Defendants are not party to their suit, there will be no mechanism for forcing a constitutionally valid election, should they succeed in enjoining the Session Law. This assertion is, however, incorrect. **The district court could, for example, mandate that the Board of Elections conduct the next election according to the scheme in place prior to the Session Law's enactment until a new and valid redistricting plan is implemented.** State law also provides, for example, that the State Board of Elections can make reasonable interim rules with respect to pending elections. N.C. Gen. Stat. § 163-22.2 ("In the event . . . any State election law . . . is held unconstitutional or invalid by a State or federal court or is unenforceable . . ., the State Board of Elections shall have authority to make reasonable interim rules and regulations with respect to the pending primary or election."). Without question, then, a valid election could take place if Plaintiffs succeed on the merits and successfully enjoin the Session Law.

*Id.*  (footnote omitted) (emphasis added).  As the State Board of Elections made clear in its letter to this Court dated July 16, 2016, that Board has exercised its authority under N.C. Gen. Stat. § 163-22.2 in the past to implement procedural rule changes necessary to conduct elections and is not equipped to itself draw new districts.[3]  State Board of Elections Letter, ECF No. 81 (July 16, 2016).

In light of the directions in *Wright* on this question, and the role of the State Board of Elections as exercised in the past, it is clear that once the mandate in this case issues, so long as the General Assembly does not act, the prior constitutional and legally enforceable election systems should be implemented for the school board and county commission.  Plaintiffs are not

---

[3] In *Newsome v. N.C. State Bd. of Elections,* 105 N.C. App. 499, 506-08, 415 S.E.2d 201, 204-06 (1992), the North Carolina Court of Appeals upheld the actions of the State Board of Elections exercised under the authority of N.C. Gen. Stat. § 163-22.2.  In that instance, the State Board did not draw districts, but rather instructed the local board to reschedule an election that had been delayed because of the Section 5 preclearance process.  *See Newsome,* 105 N.C. App. at 503, 415 S.E.2d at 203.  That same administrative authority is all that is needed in this case to schedule elections in the prior, constitutionally-drawn districts.

asking this court "to hold elections under a court-ordered remedial plan." Order, ECF No. 78 at 3 (July 8, 2016). Instead, Plaintiffs seek an order enjoining the use of the method of election established by the unconstitutional statutes and to clarify for the Defendant Wake County Board of Elections that they should conduct the next elections in 2016 "according to the scheme in place prior to the Session Law's enactment." *Wright,* 787 F.3d at 262.

B. RETURING TO THE PRIOR METHOD OF ELECTION IS STRAIGHTFORWARD AND SIMPLE TO IMPLEMENT

For the Board of County Commissioners, the changes required at this point to return to the prior constitutional method of election are minimal. In order to return that Board to the structure and system in place before Session Law 2015-4 was enacted, this year's at-large elections for the three commission seats from residency districts should proceed, electing those members to four-year terms. The 2016 filing period has already closed for candidates for the at-large seats from existing residency districts for the Board of Commissioners. Those seats are using the prior, constitutional districts, *see* 2015 N.C. Sess. Laws 4 § 1.(b), and there is no need to reopen filing or do anything different to change that election process already underway. By virtue of the mandate issuing in this case, the primary that occurred in super-districts A and B in March 2015 is void because those are unconstitutional districts.

With regard to 2016 elections for the Wake County School Board, the State Board of Elections should direct the local board to take steps to return to the prior constitutionally permissible system, which included odd-year elections with staggered terms, using the single-member districts enacted in 2011. To accomplish this, the five school board seats elected in 2011 should be open for election in November 2016 for three-year terms to prevent those members from holding over any longer and to prevent the entire board from being up for election at the same time. *Cf.* N.C. Gen. Stat. § 115C-37(a) ("The terms of office of the members [of

county boards of education] shall be staggered so as nearly equal to one half as possible shall expire every two years.")  The four seats elected in 2013 can be open for election in the fall of 2017 according to the normal schedule that they would have had before Session Law 2013-110. This would return the Board to a 5-4 stagger of four-year terms each.  The November 2016 election would allow for an August filing period, and would require non-partisan election by plurality rather than a run-off.  This procedure provides the most efficient return to the prior systems with the least disruption possible for voters.  *Cf., Dillard v. Baldwin Cnty. Comm'n*, 222 F. Supp. 2d 1283, 1287 (M.D. Ala. 2002) (having ruled that a change in the method of election was not required by federal law, ordering that "the Baldwin County Commission shall return to the system of four members elected at-large used before the court's 1988 injunction").

C. <u>THIS COURT IS BOUND BY THE RULING OF THE FOURTH CIRCUIT COURT OF APPEALS</u>

Once the mandate issues, this Court must comply with the Fourth Circuit's ruling.  "Once a case has been decided on appeal and a mandate issued, the lower court may not 'vary it [the mandate] or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.'"  *Stamper v. Baskerville*, 724 F.2d 1106, 1107 (4th Cir. 1984) (*quoting In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255–56 (1895)); *see also Doe v. Chao*, 511 F.3d 461 (4th Cir. 2007); *Redic v. Gary H. Watts Realty Co.,* 862 F.2d 314 (4th Cir. 1988).  As noted in the July 8, 2016 Order, the Fourth Circuit remanded "with instruction to enter immediately judgment for Plaintiffs, granting both declaratory relief and a permanent injunction, as to the one person, one vote claims."  *RWCA,* 2016 U.S. App. LEXIS 12136, at *45 (footnote omitted).  This statement is further reinforced by the footnote to this

9

direction which states "[w]e see no reason why the November 2016 elections should proceed under the unconstitutional plans we strike down today." *Id.,* at *45 n.13.

Not only must the district court follow the express terms of the mandate, the court must also implement the spirit of the mandate. "When this court remands for further proceedings, a district court must, except in rare circumstances, implement both the letter and spirit of the mandate, taking into account our opinion and the circumstances it embraces." *United States v. Pileggi*, 703 F.3d 675, 679 (4th Cir. 2013) (internal alteration, quotation marks, and citation omitted). Thus, it is Plaintiffs view that this Court does not have the authority to "address the propriety of such a remedy and address whether footnote 13 in the Fourth Circuit's opinion mandates such a remedy." Order, ECF No. 78 at 7 (citations omitted). The Fourth Circuit has spoken in clear terms that the initial stages of the 2016 elections under unconstitutional plans are void, and elections in 2016 should not proceed under the plans struck down by the Fourth Circuit.

Such a result is only fair to the Plaintiffs who have sought to expedite the final resolution of this case on the merits and the intent of the Fourth Circuit to make a remedy possible in the 2016 election cycle is further reinforced by the fact that the court granted Plaintiffs-Appellants' motion for expedited review of the trial court's opinion. *See RWCA,* No. 16-1270, ECF No. 35 (4th Cir. Apr. 5, 2016) (granting motion to expedite).

Furthermore, even if Defendant files a petition for certiorari with the United States Supreme Court, that fact also does not justify any action by this Court to avoid the implementation of the mandate, and the use of the prior method of election, for the November 2016 elections. It is clear that a district court in the Fourth Circuit does not have the authority to, in effect, stay the Fourth Circuit's ruling pending Supreme Court review. In *United States v.*

*Lentz,* 352 F. Supp. 2d 718, 726-27 (E.D. Va. 2005), it was noted that, "a stay of this case pending filing of Lentz's certiorari petition would violate the 'mandate rule,' as it would contravene the spirit of the Fourth Circuit's mandate in this case." *Id*. at 727. The court in *Lentz* held that it had no jurisdiction to stay the Fourth Circuit's mandate to enable the defendant to file a petition for certiorari, reasoning that, because 28 U.S.C. § 2101(f) grants that authority to "a judge of the court rendering the judgment or decree or . . . a justice of the Supreme Court," that authority clearly doesn't belong to the district courts. *Id*. at 725. Here, to allow the 2016 elections to proceed using the unconstitutional system that violates Plaintiffs' right to an equal vote would effectively be a stay of the Fourth Circuit's ruling, which is beyond this Court's power to grant.

   D. <u>IN EACH CASE, THE ENTIRE STATUTE AND METHOD OF ELECTION IS UNCONSTITUTIONAL</u>

   State law determines the severability of unconstitutional portions of a state law in federal court. *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 627 (4th Cir. 2002); *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 788 (4th Cir. 1996); *see also Department of Treasury v. Fabe*, 508 U.S. 491, 509-10 (1993) (state law governs severability of a state statute). Under North Carolina law, when one portion of a statute is declared unconstitutional or is otherwise stricken, the surviving portion will be given effect only if it is severable. *See Flippin v. Jarrell*, 301 N.C. 108, 117-18, 270 S.E.2d 482, 488-89 (1980); *Constantian v. Anson County*, 244 N.C. 221, 227-28, 93 S.E.2d 163, 168 (1956).

   In *State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. 251, 259-60, 250 S.E.2d 603, 608 (1979), the North Carolina Supreme Court identified two factors to be considered in assessing severability: (1) whether the remaining portions of the statute are capable of being enforced on their own; and (2) whether there is legislative intent to enforce the remainder, "particularly . . .

whether that body would have enacted the valid provisions if the invalid ones were omitted."

Moreover, the North Carolina Supreme Court has emphasized the second factor, holding that

when a portion of a statute is stricken, the whole must fall absent a clear legislative intent to the

contrary: "when the statute, or ordinance, could be given effect had the invalid portion never

been included, it will be given such effect if it is apparent that the legislative body, had it known

of the invalidity of the one portion, would have enacted the remainder alone." *Jackson v.*

*Guilford Cnty. Bd. of Adjustment*, 275 N.C. 155, 168-69, 166 S.E.2d 78, 87 (1969); *see also*

*Pope v. Easley,* 354 N.C. 544, 556 S.E.2d 265 (2001) (applying *Jackson* to a state statute that

had a severability clause).

In determining severability, the intent of General Assembly may be indicated by the

inclusion of a severability clause. *Fulton Corp. v. Faulkner,* 345 N.C. 419, 421, 481 S.E.2d 8, 9

(1997). However, even where there is a severability clause, the court looks to the act as a whole

and will not use a severability clause to "vary and contradict" the express terms of a statute.

*Sheffield v. Consolidated Foods Corp.,* 302 N.C. 403, 421-22, 276 S.E.2d 422, 434-35 (1981).

Here, neither of the statutes at issue contains a severability clause. *See* 2013 N.C. Sess.

Laws 110, 2015 N.C. Sess. Laws. The districts that were declared unconstitutional are an

integral part of the election systems established by the statutes. It is not possible to implement

the new system without district boundaries. In these circumstances, there is no part of the statute

that is severable, and there is no indication whatsoever that the North Carolina General

Assembly intended that any portion of either statute be implemented without the districts they

drew. Thus, neither statute meets the *Jackson* test for severability under North Carolina law.

E. <u>THIS COURT SHOULD NOT DRAW AND THEN ORDER THE USE OF ENTIRELY
NEW DISTRICTS WHERE IT IS NOT NECESSARY TO DO SO</u>

Where there exists a constitutional redistricting plan for the election of members of the Wake County Board of Education and Board of County Commissioners, this court should recall the frequent exhortations of the United States Supreme Court that redistricting "be undertaken by a district court only as a last resort." *Lawyer v. Dep't. of Justice*, 521 U.S. 567, 586 (1997) (citing *White v. Weiser*, 412 U.S. 783 (1973))." Because constitutional districts already exist, the Court need not take that last resort of drawing its own plan.

The judiciary's reasons for assiduously avoiding unnecessary engagement in redistricting are multiple. Federal court redistricting represents "a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). It is well settled that 'reapportionment is primarily the duty of and responsibility of" the legislature or legislative body that traditionally conducts redistricting. *Chapman v. Meier* 420 US 1, 27 (1975). Thus, judicial redistricting by federal courts is an "unwelcome obligation," *Connor v. Finch*, 431 U.S. 407, 415 (1977), and should be avoided if not absolutely necessary.

F. <u>IF THE COURT NEVERTHELESS DOES DRAW REMEDIAL DISTRICTS, THE COURT'S DISCRETION IS LIMITED</u>

If, contrary to the mandate in this case and the clear instructions of the Fourth Circuit, the court does move forward to develop a new redistricting plan, this court operates under more stringent restrictions than would the General Assembly, the State Board of Elections or the county boards themselves. Most significantly, court-drawn plans must abide by a stricter standard of population equality than plans drawn by a legislative body. As the Court has explained on several occasions, "unless there are persuasive justifications, a court ordered reapportionment plan of a state legislature . . . must ordinarily achieve the goal of population equality with little more than de minimis variation." *Chapman*, 420 U.S. at 26-27; *see also Connor*, 431 U.S. at 414-15 ("[A] state legislature is the institution that is by far the best situated

to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality. The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name.").

Thus, a court-ordered plan "must be held to higher standards than a State's own plan. With a court plan, any deviation from approximate population equality must be supported by enunciation of historically significant state policy or unique features."). *Chapman*, 420 U.S. at 27; *see also Johnson v. Miller*, 922 F. Supp. 1556, 1561 (S.D. Ga. 1995) ("Since federal courts are held to stricter standards than legislatures in redistricting, we were particularly constrained to create a remedy with the lowest population deviation practicable.") (citation omitted); *Burton v. Sheheen*, 793 F. Supp. 1329, 1343 (D.S.C. 1992), *judgment vacated on other grounds by Statewide Reapportionment Advisory Comm. v. Theodore*, 508 U.S. 968 (1993) ("Given that compliance with the principles of one man, one vote is the preeminent concern of court-ordered plans, the very real possibility exists that certain state policies will be compromised in a court-ordered plan which could have been better served had judicial intervention not been necessary.").

Additionally, a court ordering a redistricting plan should not factor in political considerations at all, as opposed to the latitude afforded to legislative bodies to do so. "[T]he judicial remedial process in the reapportionment area -- as in any area -- should be a fastidiously neutral and objective one, free of all political considerations and guided only by the controlling constitutional principle of strict accuracy in representative apportionment." *White*, 412 U.S. at 799 (Marshall, J., concurring in part). Moreover, a court constructing its own plan should take care not to double-bunk or draw incumbents out of their districts. *See, e.g., Arizonans for Fair Representation v. Symington*, 828 F.Supp. 684, 688-89 (D. Ariz. 1992) (three-judge court) ("The

court [plan] also should avoid unnecessary or invidious outdistricting of incumbents. Unless outdistricting is required by the Constitution or the Voting Rights Act, the maintenance of incumbents provides the electorate with some continuity. The voting population within a particular district is able to maintain its relationship with its particular representative and avoids accusations of political gerrymandering.").

G. <u>PLAINTIFFS' PROPOSED SCHEDULE FOR IMPLEMENTATION OF A REMEDY</u>

In response to the Court's invitation to address timing issues, the Plaintiffs' position is that the transition back to the election systems in place for both the school board and county commission should be implemented immediately upon the issuance of the Fourth Circuit's mandate in this case. Indeed,

> [O]nce a State's…apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan.

*Reynolds v. Sims*, 377 U.S. 533, 585 (1964). As explained above, the steps needed to return to the prior constitutional system are minimal and should be taken immediately. There is no need to have a primary for the county commission or school board seats that should be elected this year. A filing period should be set for the five school board seats that should be elected in November 2016.

There is no justification for delay in implementing this return to the prior election system. Such a delay would be equivalent to granting a stay of the judgment. The right to vote is one of the most fundamental rights in our democracy and is thus afforded special protections. *See Reynolds*, 377 U.S. at 554-55, 563; *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). As such, any impediment or abridgment of the right to vote is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373

15

(1976).  Plaintiffs and other Wake County voters will suffer irreparable injury if they are forced to participate in elections using unconstitutional districts.  *See Larios v. Cox*, 305 F. Supp. 2d 1335, 1344 (N.D. Ga. 2004) ("If the court permits a stay, thereby allowing the 2004 elections also to proceed pursuant to unconstitutional plans, the plaintiffs and many other citizens in Georgia will have been denied their constitutional rights in two of the five elections to be conducted under the 2000 census figures. … Accordingly, we find that the plaintiffs will be injured if a stay is granted because they will be subject to one more election cycle under unconstitutional plans.").

Recently a three-judge panel in the Middle District of North Carolina denied a stay of a remedy for the General Assembly's unconstitutional racial gerrymandering of two congressional districts.  *Harris v. McCrory*, No. 1:13-cv-949, ECF No. 148 (M.D.N.C. Feb. 9, 2015) (Order Denying Emergency Motion to Stay).  The court in that case denied a stay and implemented an immediate remedy, even though voting had already begun in the congressional primaries.  That court recognized that the balance of equities and public interest tipped heavily in favor putting a remedial plan into place immediately. *Id.* at 4.

Indeed, courts have consistently acted to ensure that voters already constitutionally harmed by illegal redistricting plans do not further suffer irreparable harm.  *See, e.g., Vera v. Bush*, 933 F. Supp. 1341, 1352-53 (S.D. Tex. 1996) (ordering a remedial plan on August 6, 1996, for November 1996 elections); *Johnson v. Mortham*, 926 F. Supp. 1540, 1542 (N.D. Fla. 1996) (denying motion to stay a May 22, 1996, deadline for the legislature to enact a remedial plan for the November 1996 congressional election); *Busbee v. Smith*, 549 F. Supp. 494, 518-19 (D.D.C. 1982) (ordering a court-drawn remedial plan on August 24, 1982, for two congressional

districts), *aff'd* 459 U.S. 1166 (1983); *Keller v. Gilliam*, 454 F.2d 55, 57-58 (5th Cir. 1972) (approving the shortening of terms of office as a remedy for a voting rights violation).

Moreover, the fact that the primaries for the unconstitutional super-district seats on the county commission have already been conducted is no barrier to providing Plaintiffs with a remedy this year.  It is clear that "a district court has power to void and order new elections for violations of the Voting Rights Act of 1965, 42 U.S.C.S. § 1973, and the Constitution." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 357 F.3d 260 (2d Cir. 2004); *see also, Hadnott v. Amos,* 394 U.S. 358 (1969) (federal courts have the power to invalidate elections held under constitutionally infirm conditions); *Pope v. County of Albany*, 687 F.3d 565, 569-70 (2d Cir. 2012) (citing *Bell v. Southwell*, 376 F.2d 659, 665 (5th Cir. 1967) (holding that district court has power to void and order new elections for violations of Voting Rights Act and Constitution)); *Stewart v. Taylor*, 104 F.3d 965, 970 (7th Cir. 1997) (stating that, despite holding of challenged election, court could order new election if plaintiff's motion for preliminary injunction has merit); *Hamer v. Campbell*, 358 F.2d 215, 222 (5th Cir. 1966) ("[H]aving concluded that the … election should have been enjoined, we now must set it aside in order to grant appellants full relief in the same manner as if the said election had been enjoined." (internal quotation marks omitted)).

Reliance on *Purcell v. Gonzalez,* 549 U.S. 1 (2006)*, Upham v. Seamon,* 456 U.S. 37 (1982)*, Ely v. Klahr,* 403 U.S. 108, (1971)*, Reynolds v. Sims* 377 U.S. 533 (1964)*,* or *S.W. Voter Registration Educ. Project v. Shelley,* 344 F.3d 914 (9th Cir. 2003) for the proposition that it is acceptable for elections to proceed under an unconstitutional plan is misplaced.  As an initial matter, this case is different for two important reasons:  First, as noted above, in this case there is a clear and direct instruction from the Court of Appeals that this Court is bound to follow

requiring immediate issuance of a permanent injunction. *See, e.g., Doe v. Chao,* 511 F.3d 461, 465 (4th Cir. 2007) ("The mandate rule likewise restricts the district court's authority on remand from the court of appeals. First, 'any issue conclusively decided by this court on the first appeal is not remanded,' and second, 'any issue that could have been but was not raised on appeal is waived and thus not remanded.'" (citations omitted)). Second, constitutionally-drawn districts have been in place and used for both bodies since 2011. None of the cases listed above involved a re-redistricting of a local governing body. The federal judiciary's general preference for legislatively-enacted plans over court-drawn plans operates here to eliminate the need for further proceedings to implement a remedy and the prior districts can be used immediately.

Moreover, *Purcell,* dealing with a voter identification requirement, *id.,* 549 U.S. at 2, and *S.W. Voter,* dealing with the use of punch card machines, *id.,* 344 F.3d at 916, both involved whether preliminary relief should be granted prior to any final judgment on the merits. *Upham, Ely* and *Reynolds* all involved redistricting plans drawn before the widespread use of computer technology and GIS-software, which have made redistricting a very different matter than it is today. Indeed, the computer software that speeds the drawing of redistricting plans did not exist in the 1960's or 70's. Today, by state law, the General Assembly is actually required to enact a remedial statewide redistricting plan within two weeks. *See* N.C. Gen. Stat. § 120-2.4. Thus, some of the equitable factors that may have weighed into the Supreme Court's decision to delay implementation of new legislative redistricting plans in 1970 are not at play here with regard to districts for a local governing body.

In more recent redistricting cases across the country, immediate implementation of remedial redistricting plans has been ordered, despite the unavoidable burden that such implementation would have on jurisdictions. *See Vera v. Bush*, 933 F. Supp. 1341, 1342, 1344

(S.D. Tex. 1996) (Supreme Court invalided congressional redistricting plan on June 13, 1996, three-judge panel in Texas drew a remedial plan on August 6, 1996, for use in November 1996); *Buskey v. Oliver*, 574 F. Supp. 41, 41-42 (M.D. Ala. 1983) (June 10, 1983 order enjoining elections scheduled for October 11, 1983). This is because administrative burden on the government, which is part and parcel of election administration of any sort, does not outweigh irreparable harm to the fundamental right to vote of the citizens that elect that government.

Also instructive are the court's actions in *Johnson v. Halifax County*, 594 F. Supp. 161 (E.D.N.C. 1984), where the court entered a preliminary injunction in July 1984 in relation to elections scheduled to be held in November 1984. Candidate filing for the primary elections had already been held, *see Johnson v. Halifax County*, No. 83-48-civ-8, 1984 U.S. Dist. LEXIS 15267 (E.D.N.C. Jul. 3, 1984) (order declaring prior candidate filings void). Nevertheless, the court held that "the black citizens of Halifax County will suffer irreparable harm in, once again, they are unable to have an equal opportunity to elect county commissioners of their choice," *Johnson*, 594 F. Supp. at 171. The court further remarked that while a implementing a remedial plan would "place administrative and financial burdens" on defendants, those burdens were outweighed by the irreparable harm to plaintiffs. *Id.*

Finally, the public interest lies with using fairly drawn, constitutional districts that give equal weight to each voter's vote. When, as here, the Constitution is violated, "the public as a whole suffers irreparable injury." *Dillard v. Crenshaw County*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986). *See also, Clark v. Roemer,* 725 F. Supp. 285, 305-306 (M.D. La. 1988) ("The public interest is clearly in favor of the discontinuing of an election system which the court has found illegal and surely in a balance of equities, where the court has found encroachments on the exercise of the civil liberties … the state can have no legitimate interest in continuing with a

system that causes such encroachment.")

## V. CONCLUSION

Plaintiffs request that upon issuance of the mandate of the Fourth Circuit Court of Appeals in this matter, this Court immediately enjoin the use of the election methods set out in the two unconstitutional statutes and direct the Defendants to implement the prior election methods in the 2016 elections for the Wake County School Board and Board of County Commissioners.

Respectfully submitted this 18th day of July, 2016.

/s/ Anita S. Earls
Anita S. Earls
N.C. State Bar No. 15597
Allison J. Riggs
N.C. State Bar No. 40028
SOUTHERN COALITION
FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
919-323-3380
anita@southerncoalition.org
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing PLAINTIFFS SUBMISSION ON APPROPRIATE REMEDIES with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

Additionally, I have served an electronic copy by email to the following:

Charles F. Marshall
Matthew Tynan
Jessi Thaller-Moran
Brooks Pierce
150 Fayetteville St., Ste. 1600
Raleigh, NC  27601
cmarshall@brookspierce.com

Counsel for Wake County Board of Elections

This the 18th day of July, 2016.

/s/ Anita S. Earls
Anita S. Earls
N.C. State Bar No. 15597
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC 27707
Telephone: (919) 323-3380
Facsimile: (919) 323-3942
Email: Anita@southerncoalition.org
*Counsel for Plaintiffs*