No. _____

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

IN RE RALEIGH WAKE CITIZENS ASSOCIATION; JANNET B. BARNES; WILLIE J. BETHEL; ANN LONG CAMPBELL; BEVERLEY S. CLARK; WILLIAM B. CLIFFORD; AJAMU G. DILLAHUNT; ELAINE E. DILLAHUNT; BRIAN FITZSIMMONS; GREG FLYNN; DUSTIN MATTHEW INGALLS; AMY T. LEE; LUCINDA H. MACKETHAN; ERVIN PORTMAN; SUSAN PORTMAN; JANE ROGERS; BARBARA VANDENBERGH; JOHN G. VANDENBERGH; AMYGAYLE L. WOMBLE; PERRY WOODS; CALLA WRIGHT; and CONCERNED CITIZENS FOR AFRICAN-AMERICAN CHILDREN, d/b/a Coalition of Concerned Citizens for African-American Children,

*Petitioners*,

v.

WAKE COUNTY BOARD OF ELECTIONS,

*Respondents*.

---

On Appeal from the United States District Court
for the Eastern District of North Carolina

---

**EMERGENCY PETITION FOR WRIT OF MANDAMUS**

---

## I.     <u>RELIEF SOUGHT</u>

Pursuant to Rule 21 of the Federal Rules of Appellate Procedure and Local

Rule 21(a), Plaintiffs-Appellants respectfully move this Court to enter a writ of

1

mandamus to execute its mandate issued August 3, 2016 in *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, Nos. 16-1270 & -1271, Doc. No. 63 (4th Cir. July 1, 2016) (slip op., at 44) (hereinafter "*RWCA*"), or in the alternative, to remand the matter to another Judge of the United States District Court for the Eastern District of North Carolina to execute immediately the mandate of this court.

As more fully detailed below, this Court was clear in its written opinion issued July 1, 2016 that the trial court was to enter an *immediate* injunction on Plaintiffs' one-person, one-vote claims.  *RWCA*, No. 16-1270, Doc. No. 63 (4th Cir. July 1, 2016) (slip op., at 44).  Further, the Court was clear that it saw no reason why elections in 2016 should proceed under the election systems found to be unconstitutional by this Court.  *Id.* (slip op., at 44 n.13).  Finally, in its earlier opinion in these consolidated appeals this Court explained that, should the Plaintiffs prevail, additional parties were not required to implement a remedy and the trial court could "mandate that the Board of Elections conduct the next election according to the scheme in place prior to the Session Law's enactment until a new and valid redistricting plan is implemented."  *Wright v. North Carolina,* 787 F.3d 256, 262 (4th Cir. 2015).

Following this Court's denial of the Appellee's Petition for Rehearing En Banc, the mandate issued August 3, 2016, but the trial court has, as of this date,

2

failed to issue the injunction required on Plaintiffs' claims. Despite an in-person status conference and two rounds of briefing by Plaintiffs, the trial court has failed to enjoin the use of the unconstitutional election systems for 2016, putting in jeopardy the ability of Plaintiffs to have a remedy that vindicates their rights. Indeed, despite Defendant's representation that August 10 is the date by which a filing period must close so that ballots may be prepared in time for the November general election, the trial court's most recent order continues to seek further information about matters that Plaintiffs contend are beyond the court's jurisdiction in these circumstances.

Because time is of the essence, and the court below has failed to faithfully carry out the letter and spirit of this Court's mandate in this case, Plaintiffs have no other recourse but to seek a writ from this Court directing the trial court to enter an immediate order declaring the statutes establishing new systems of election for the Wake County Board of Education and the Wake County Board of County Commissioners to be unconstitutional and enjoining the use of those districts for any future elections. Further, the trial court should order the Wake County Board of Elections to return to the prior, constitutional systems of election for both bodies and:

1. Declare the primary held for County Commission super-districts A & B in March 2016 to be void as held under unconstitutional districts;

2. Direct the Wake County Board of Elections to immediately administer open a one-week filing period for the five seats on the Wake County Board of Education that were last elected in 2011 for election by plurality on November 8, 2016.

3. Direct the Wake County Board of Elections to seek the assistance of the North Carolina State Board of Elections to slightly modify administrative deadlines to allow the Wake County Board of Elections to comply with the court's order.

## II.   ISSUES PRESENTED

A. Has the trial court failed to implement this Court's mandate in *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, No. 16-1270 (4th Cir. July 1, 2016).

B. Are the districts found to be unconstitutional in *RWCA*, severable from the remaining portions of the statutes implementing new election methods for the Wake County Board of Education and Wake County Board of County Commissioners where there is no severability clause and the remaining provisions cannot be implemented without them?

4

C.  Does the trial court have the authority to impose a new district system proposed by individual legislators where there already exist duly enacted, constitutional districts and election systems for the Board of Education and Board of County Commissioners?

### III.    STATEMENT OF FACTS

On August 22, 2013 Plaintiffs in *Wright v. North Carolina* filed suit seeking to enjoin the use of a new election system for the Wake County Board of Education enacted by the North Carolina General Assembly over the objection of a majority of the Board on the grounds that the districts violated the one-person, one-vote requirement of the equal protection clauses of the Fourteenth Amendment to the U.S. Constitution and Article 1, § 19 of the North Carolina Constitution.  5:13-cv-607, ECF No. 1 (E.D.N.C. Aug. 22, 2013) (Complaint).  Following dismissal of the action on March 17, 2014, Plaintiffs appealed.  *Wright*, No. 5:13-cv-607, ECF Nos. 38 (Order), 40 (Notice of Appeal).  While that appeal was pending, the North Carolina General Assembly enacted legislation requiring the use of the same system for the Wake County Board of County Commissioners on April 2, 2015.  *See* 2015 N.C. Sess. Laws 4.  On April 9, 2015 the Raleigh Wake Citizens Association and another set of individual voters filed suit challenging that legislation on similar one-person, one-vote grounds and raised an additional claim that racial considerations predominated in the drawing of one of the districts.

5

*Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, No. 5:15-cv-156, ECF. No. 1 (E.D.N.C. Apr. 9, 2015) (Complaint) (hereinafter "*Raleigh Wake Citizens Ass'n*").

On May 27, 2015 the Fourth Circuit issued its ruling reversing the lower court's dismissal of Plaintiffs' claims in the first case. *Wright v. North Carolina*, 787 F.3d 256 (4th Cir. 2015). The two cases were consolidated and a bench trial was held on December 16-18, 2015. *Raleigh Wake Citizens Ass'n*, ECF No. 36 (Oct. 1, 2015 Order). On February 26, 2016, the trial court ruled for Defendant on all claims and Plaintiffs appealed. *Id.*, ECF No. 64 (Order); ECF No. 66 (Notice of Appeal). On expedited review, the Fourth Circuit reversed in part and affirmed in part with an opinion issued July 1, 2016. *RWCA*, No. 16-1270, Doc. No. 51 (Opinion).

On July 8, 2016, the District Court issued an Order requesting the parties' views on how the court should proceed on remand, including the parties' views on the issues of remedy and a schedule for devising, considering, and adopting any court-ordered remedial plan. *Raleigh Wake Citizens Ass'n*, ECF No. 78 at 8-9 (Order Requesting Remedy Responses) (filed herewith as Exhibit A); *see also id.*, ECF Nos. 82 (Pls.' Response), 83 (Def.'s Response) (filed herewith as Exhibits B-C). The Court also directed service of the Order on non-parties the North Carolina Board of Elections, Speaker of the House, and the President Pro Tempore of the

6

Senate, asking the Speaker and President Pro Tempore to advise the court, and asking the State Board of Elections to indicate its "willingness to act under North Carolina General Statute § 163-22.2 to ensure the timely election of the Wake County School Board and Wake County Board of Commissioners." *Id.*; *see also id.*, ECF No. 81 (SBE Response) (filed herewith as Exhibit D).

On July 14, 2016, Defendant petitioned the Fourth Circuit for rehearing en banc, Plaintiffs filed a motion asking the court to issue the mandate forthwith, and the Speaker of the House and the President Pro Tempore of the Senate of the North Carolina General Assembly filed a motion to intervene. *RWCA*, Doc. Nos. 53 (Pet. for Reh'g), 56-1 (Mot. to Issue Mandate Forthwith), 55-1 (Mot. to Intervene). This Court denied the petition for rehearing en banc on July 26, 2016 and on August 3, 2016 denied the motion to intervene. *RWCA*, Doc. Nos. 62 (denying Pet. for Reh'g), 64 (denying Mot. to Intervene). The mandate issued per normal procedure on August 3, 2016. *RWCA*, Doc. No. 63.

In the meantime, the District Court had issued an Order on July 27, 2016, setting a status conference concerning the applicable remedy for Tuesday, August 2, 2016. *Raleigh Wake Citizens Ass'n*, ECF No. 86 at 1 (Order Setting Hr'g) (filed herewith as Exhibit E). In that Order, the court requested that the counsel for the Speaker of the House and President Pro Tempore of the Senate be present and address the court concerning when they would be able to submit illustrative maps

7

to the court.  *Id.*  The court also requested that counsel for the North Carolina State Board of Elections, also not parties in the case, indicate when they would be able to submit a proposed remedial plan.  *Id*. at 2.

At the August 2, 2016 status conference, counsel for Plaintiffs argued that the Opinion in this case was clear concerning the need to issue an immediate injunction upon issuance of this Court's forthcoming mandate, preventing any future use of the unconstitutional election districts.  *See* Tr. of 8/2/16 Hr'g at 22:19-24:7 (filed herewith as Exhibit F).  Further, counsel for Plaintiffs argued that where fully constitutional districts already exist for both bodies and the legislature has not acted to adopt alternative plans, the prior, constitutional district system should be reinstituted because the trial court does not have the authority to adopt its own set of districts.  *See id.* at 19:2-14.  The Court granted Speaker Moore and President Pro Tem Berger leave to submit "illustrative maps" for the Wake County School Board and County Commission.  *Id.* at 41:7-23.  Defendant Wake County Board of Elections stated that while there "may be a little bit of give" in the 30-day period required to prepare ballots and that the State Board of Elections has the authority to modify these deadlines, August 10 was the date by which, under current law without any modifications, the Wake County Board of Elections would need to have final ballot information including candidate names and whether there are potential write-in candidates.  *Id.* at 7:10-9:4.

8

Plaintiffs argued in court and in their briefing that the districts are not severable from the remainder of the statutes in each instance, and also outlined a process for returning to the prior methods of election for the Wake County School Board and Board of County Commissioners. *See id.* at 25:15-26:15, 27:17-28:11, 45:18-23; *Raleigh Wake Citizens Ass'n*, ECF Nos. 82 (Pls.' Response to July 8 Order) (filed herewith as Exhibit B), 87 (Pls.' Response to July 27 Order) (filed herewith as Exhibit G), 96 (Pls.' Response to August 4 Order) (filed herewith as Exhibits H).

Following the status conference, on August 3, Speaker Moore and President Pro Tem Berger filed with the trial court maps, statistics, and electronic files purporting to document an alternative set of seven single-member districts and two super districts in Wake County. *Raleigh Wake Citizens Ass'n*, ECF No. 91 (Notice). On August 4, 2016 the trial court issued an Order "declaring that the population deviations in the redistricting plans in Session Law 2013-110 for the Wake County School Board and Session Law 2015-4 for the Wake County Board of Commissioners violate the equal protection clauses of the Fourteenth Amendment to the United States Constitution and Article 1 § 19 of the North Carolina Constitution." *Raleigh Wake Citizens Ass'n*, ECF No. 93 (Order) (filed herewith as Exhibit I). The Order does not enjoin the use of the election systems established by those laws. Instead, the trial court invited yet more submissions

9

from the parties, and from the non-parties Speaker Moore and President Pro Tem Berger and the State Board of Elections on the remedy, "including the nature and scope of injunctive relief." *Id.* at 2. On August 5, Plaintiffs filed a motion to strike the filing of an illustrative set of districts by non-parties to the case that were not enacted by the North Carolina General Assembly, and also filed a second, supplemental memorandum of law concerning the trial court appropriate jurisdiction in these circumstances. *Raleigh Wake Citizens Ass'n*, ECF Nos. 94 (Mot. to Strike), 95 (Mem. in Support). No other parties or non-parties filed further material in response to the Court's August 4 Order.

On Sunday, August 7, 2016, the trial court issued another Order inviting the Defendant Wake County Board of Elections, but not Plaintiffs, to file a response with the court ranking four possible scenarios for the November 2016 elections in terms of their feasibility. *Raleigh Wake Citizens Ass'n*, ECF No. 97 (Aug. 7, 2015 Order) (filed herewith as Exhibit J). One of the four scenarios on which the court requested information would "use the redistricting plan that the Fourth Circuit declared unconstitutional." *Id.* at 2. The trial court also invited the Defendant Wake County Board of Elections to inform the court "if it is infeasible or impossible to have orderly elections on November 8, 2016 under any of the four options." *Id.* Thus, to date, the District Court has failed to follow the mandate of this Court.

## IV.    REASONS WHY THE WRIT SHOULD ISSUE

The party seeking a writ of mandamus must demonstrate each and every one of the following requirements: (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances. *Earley v. Braxton (In re Braxton)*, 258 F.3d 250, 261 (4th Cir. 2001).

Here, the Petitioners are entitled to the immediate relief established by this Court's order and mandate in *RWCA*. "Once a case has been decided on appeal and a mandate issued, the lower court may not 'vary it [the mandate] or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.'" *Stamper v. Baskerville*, 724 F.2d 1106, 1107 (4th Cir. 1984) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)); *see also, Doe v. Chao*, 511 F.3d 461 (4th Cir. 2007); *Redic v. Gary H. Watts Realty Co.*, 862 F.2d 314 (4th Cir. 1988).

Not only must the district court follow the express terms of the mandate, the court must also implement the spirit of the mandate. "When this court remands for

11

further proceedings, a district court must, except in rare circumstances, implement both the letter and spirit of the mandate, taking into account our opinion and the circumstances it embraces." *United States v. Pileggi*, 703 F.3d 675, 679 (4th Cir. 2013) (internal alteration, quotation marks, and citation omitted).

A. THE TRIAL COURT HAS FAILED TO IMPLEMENT THIS COURT'S MANDATE

To date, the only relief that the trial court has ordered, despite being on notice of this Court's opinion since July 1, 2016, and on notice of the denial of rehearing en banc since July 26th, is an order declaring the deviations in the districts to be unconstitutional.  Ex. I at 2.  Enjoining merely the deviations in the unconstitutional plans is not the relief ordered by the Court of Appeals, and has not been the relief routinely afforded to prevailing plaintiffs in one person, one vote cases.  *See, e.g., Larios v. Cox*, 300 F. Supp. 2d 1320, 1356 (N.D. Ga.), summarily aff'd, 124 S. Ct. 2806 (2004) (enjoining further use of the challenged districts, not just their population deviations, in future elections).

Plaintiffs are entitled to complete relief on their one person, one vote claims, including relief from the clearly "pretextual" fruits of the unconstitutional tree. *RWCA*, No. 16-1270 (slip. op., at 34).  As the Fourth Circuit has recently ruled: "courts are tasked with shaping '[a] remedial decree . . . to place persons' who have been harmed by an unconstitutional provision 'in the position they would have occupied in the absence of [discrimination].'" *N.C. State Conf. of the NAACP*

12

*v. North Carolina*, No. 16-1468, 2016 U.S. App. LEXIS 13797, *73 (July 29, 2016) (quoting *United States v. Virginia*, 518 U.S. 515, 547 (1996)).  Here, the discrimination by the General Assembly was on the basis of partisan affiliation, but the principle remains the same.  Just as in other civil rights actions involving claims of discrimination, "the proper remedy for a legal provision enacted with discriminatory intent is invalidation."  *Id.*   In this case it means Plaintiffs are entitled to a declaration that the two statutes challenged in this case are unconstitutional under the equal protection clauses of the North Carolina and United States Constitutions.

As noted in the July 8, 2016 Order, the Fourth Circuit remanded "with instruction to enter immediately judgment for Plaintiffs, granting both declaratory relief and a permanent injunction, as to the one person, one vote claims."  *RWCA*, 2016 U.S. App. LEXIS 12136, at *45 (footnote omitted).  This instruction is further reinforced by the accompanying footnote which states "[w]e see no reason why the November 2016 elections should proceed under the unconstitutional plans we strike down today."  *Id.*, at*45 n.13.

The District Court is also bound by the instructions from the Fourth Circuit when this issue arose in the context of whether the Wake County Board of Elections was a sufficient defendant to allow Plaintiffs full relief should they prevail on any of their claims.  *See Wright*, 787 F. 3d at 262-63.  The ruling of the

13

Fourth Circuit did not call for inquiry into the opinions of non-parties for the implementation of a remedy. The Fourth Circuit ruled that the Board of Elections is a sufficient party for a remedy and that no new districts need to be drawn in order for a valid election to occur if Plaintiffs succeed. *Id*. Specifically, the Court held:

> Plaintiffs counter that if the Proposed Defendants are not party to their suit, there will be no mechanism for forcing a constitutionally valid election, should they succeed in enjoining the Session Law. This assertion is, however, incorrect. The district court could, for example, mandate that the Board of Elections conduct the next election according to the scheme in place prior to the Session Law's enactment until a new and valid redistricting plan is implemented.

> *Id*. Accordingly, Plaintiffs seek a writ of mandamus to require the trial court

to implement this Court's mandate and enjoin the use of the method of election established by the unconstitutional statutes and to clarify for the Defendant Wake County Board of Elections that they should conduct the next elections in 2016 "according to the scheme in place prior to the Session Law's enactment." *Wright*, 787 F.3d at 262.

Once the mandate of the Fourth Circuit Court of Appeals was issued in this case on August 2, 2016, the District Court was obligated to implement the Fourth Circuit's judgment and enjoin the use of the unconstitutional election systems established by Session Law 2013-110 and Session Law 2015-4.

B. <u>THE UNCONSTITUTIONAL DISTRICTS ARE NOT SEVERABLE FROM THE REST OF THE STATUTE</u>

14

With regard to both of the statutes found unconstitutional, because the remainder of the statute cannot be implemented without the districts at issue, the entire statute is unconstitutional.    State law determines the severability of unconstitutional portions of a state law in federal court. *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 627 (4th Cir. 2002); *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 788 (4th Cir. 1996); *see also Department of Treasury v. Fabe*, 508 U.S. 491, 509-10 (1993) (state law governs severability of a state statute).  Under North Carolina law, when one portion of a statute is declared unconstitutional or is otherwise stricken, the surviving portion will be given effect only if it is severable. *See Flippin v. Jarrell*, 301 N.C. 108, 117-18, 270 S.E.2d 482, 488-89 (1980); *Constantian v. Anson County*, 244 N.C. 221, 227-28, 93 S.E.2d 163, 168 (1956).

In *State ex rel. Andrews v. Chateau X, Inc*., 296 N.C. 251, 259-60, 250 S.E.2d 603, 608 (1979), the North Carolina Supreme Court identified two factors to be considered in assessing severability: (1) whether the remaining portions of the statute are capable of being enforced on their own; and (2) whether there is legislative intent to enforce the remainder, "particularly . . . whether that body would have enacted the valid provisions if the invalid ones were omitted." Moreover, the North Carolina Supreme Court has emphasized the second factor, holding that when a portion of a statute is stricken, the whole must fall absent a

clear legislative intent to the contrary: "when the statute, or ordinance, could be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone." Jackson v. Guilford Cnty. Bd. of Adjustment, 275 N.C. 155, 168-69, 166 S.E.2d 78, 87 (1969); see also Pope v. Easley, 354 N.C. 544, 556 S.E.2d 265 (2001) (applying *Jackson* to a state statute that had a severability clause).

In determining severability, the intent of General Assembly may be indicated by the inclusion of a severability clause. *Fulton Corp. v. Faulkner*, 345 N.C. 419, 421, 481 S.E.2d 8, 9 (1997). However, even where there is a severability clause, the court looks to the act as a whole and will not use a severability clause to "vary and contradict" the express terms of a statute. *Sheffield v. Consolidated Foods Corp.*, 302 N.C. 403, 421-22, 276 S.E.2d 422, 434-35 (1981).

Here, neither of the statutes at issue contains a severability clause. See 2013 N.C. Sess. Laws 110; 2015 N.C. Sess. Laws 4. The districts that were declared unconstitutional are an integral part of the election systems established by the statutes. It is not possible to implement the new system without district boundaries. In these circumstances, there is no part of the statute that is severable, and there is no indication whatsoever that the North Carolina General Assembly

16

intended that any portion of either statute be implemented without the districts they drew.  Thus, neither statute meets the Jackson test for severability under North Carolina law.

Contrary to this straightforward application of state law, the trial court's approach to the relief in this case assumes severability and therefore does not comply with this Court's mandate.  In affording Plaintiffs declaratory relief only as the numerical deviations resulting from the unconstitutional redistricting plans, the trial court is deciding the question of whether the challenged session laws are severable without addressing it.  At the very least, the trial court must consider North Carolina law on severability, examine the statutes at issue, and review whether the legislature would have enacted the statutes without the unconstitutional districts.

C. <u>THE TRIAL COURT CANNOT IMPOSE ITS OWN DISTRICTS</u>

Any new plan not duly enacted by the North Carolina General Assembly cannot be imposed as a remedial plan. Where there already exist fully constitutional and previously implemented districts for the Wake County School Board and Board of County Commissioners, the Court has no power or authority to order any remedial districts and to do so could be reversible error. *See Cleveland Cnty. Assoc. for Gov't by the People v. Cleveland Cnty. Bd. of Comm'rs*, 142 F.3d 468 (D.C. Cir. 1998) (vacating decree entered where existing method of election

was not contrary to federal law); *see also, McGhee v. Granville Cnty,* 860 F.2d 110, 120 (4th Cir. 1988) (court cannot impose its own plan instead of the county's remedial plan unless the county's plan is itself unconstitutional).

Where there already is a constitutional redistricting plan for the election of members of the Wake County Board of Education and Board of County Commissioners, it is important to recall the frequent exhortations of the United States Supreme Court that redistricting "be undertaken by a district court only as a last resort." *Lawyer v. Dep't of Justice*, 521 U.S. 567, 586 (1997) (citing *White v. Weiser*, 412 U.S. 783 (1973))." Because constitutional districts already exist, the trial court need not, and indeed, should not take that last resort of drawing its own plan. For a recent example of a court ordering such a reversion to prior constitutional plans in the one person, one vote context, the Court need look no farther than the Middle District of North Carolina, where plaintiffs challenging a local redistricting plan enacted by the same legislature obtained a preliminary injunction prohibiting the challenged session law's implementation and ordering that the prior plans be used for upcoming elections. *See City of Greensboro v. Guilford Cnty. Bd. of Elections*, 120 F. Supp. 3d 479 (M.D. N.C. 2015).

The judiciary's reasons for assiduously avoiding unnecessary engagement in redistricting are multiple. Federal court redistricting represents "a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995).

18

It is well settled that 'reapportionment is primarily the duty of and responsibility of" the legislature or legislative body that traditionally conducts redistricting. *Chapman v. Meier* 420 US 1, 27 (1975).   Thus, judicial redistricting by federal courts is an "unwelcome obligation," *Connor v. Finch*, 431 U.S. 407, 415 (1977), and should be avoided if not absolutely necessary.   For the trial court to arbitrarily choose one state legislator's plan over another's, that is, for example, to choose Senator Berger and Representative Moore's plan over Representative Gill's plan, represents the court deciding what districts and what election method should be used rather than the entities under state law authorized to make that choice.

It is widely acknowledged that redistricting is a political matter that is properly left to the political branches and that redistricting by the courts is to be avoided. *See Hall v. Louisiana*, 108 F. Supp. 3d 419, 423 (M.D. La. 2015) ("To be sure, the U.S. Supreme Court has made clear that redistricting is primarily within the province of the state legislature."); *See also, Abrams v. Johnson*, 521 U.S. 74, 101 (1997) ("[t]he task of redistricting is best left to state legislatures, elected by the people and as capable as the courts, if not more so, in balancing the myriad factors and traditions in legitimate districting policies."); *White v. Weiser*, 412 U.S. 783, 794 (1973) ("From the beginning, we have recognized that 'reapportionment is primarily a matter for legislative consideration and determination.").   It would be highly improper for the trial court to select a redistricting plan and method of

election to replace the system already in place that has been used by Wake County voters since 2011.

The prior districts are part of a plan that is entirely constitutional and should be implemented by the District Court. Typically in redistricting cases, the prior redistricting plan is also unconstitutional because it no longer complies with one-person, one-vote using the most current census data. However, in this unusual case where a mid-decade re-redistricting has occurred, the prior plan is a constitutional plan and can be used. The prior districts represent the judgment of the bodies involved regarding how their districts should be drawn. They are known to the voters and have previously been implemented by the Defendant Board of Elections. In these circumstances, the District Court was obligated to allow the State Board of Elections to administratively return to the prior system of election and newly drawn districts for the school board and county commission were not required. The only remedy the District Court had the authority to implement was a permanent injunction prohibiting the use of the unconstitutional election systems and a writ of prohibition is necessary to regulate the District Court to its proper authority.

D.  <u>TIME IS OF THE ESSENCE AND PETITIONERS HAVE NO OTHER MEANS OF OBTAINING RELIEF</u>

Because elections for both the Board of Education and Board of Commissioners are imminent and the court's mandate has yet to be followed, it is

20

critical that this writ issue. The trial court's four orders to date since this Court's finding that the statutes at issue are unconstitutional make clear that the trial court is not carrying out the spirit or the letter of the law of this case. All of the arguments and authorities presented in this Petition have been brought to the attention of the trial court, to no avail. This is not a situation where Petitioners can await a final judgment from the trial court implementing the mandate and proceed with an appeal at that time to obtain the necessary relief.

Returning to the prior method of election for both governing bodies in Wake County is straightforward and feasible if done immediately. For the Board of County Commissioners, the changes required at this point to return to the prior constitutional method of election are minimal. In order to return that Board to the structure and system in place before Session Law 2015-4 was enacted, this year's at-large elections for the three commission seats from residency districts should proceed, electing those members to four-year terms. The filing period has already closed for candidates for the at-large seats from existing residency districts for the Board of Commissioners. Those seats are using the prior, constitutional districts, see 2015 N.C. Sess. Laws 4 § 1.(b), and there is no need to reopen filing or do anything different to change that election process already underway. By virtue of the mandate issuing in this case, the primary that occurred in super-districts A and B in March 2015 is void because those are unconstitutional districts.

21

For the Wake County School Board, the State Board of Elections should direct the local board to take steps to return to the prior constitutionally permissible system, which included odd-year elections with staggered terms, using the single-member districts enacted in 2011. To accomplish this, the five school board seats elected in 2011 should be open for election in November 2016 for three-year terms to prevent those members from holding over any longer and to prevent the entire board from being up for election at the same time. Cf. N.C. Gen. Stat. § 115C-37(a) ("The terms of office of the members [of county boards of education] shall be staggered so as nearly equal to one half as possible shall expire every two years."). The four seats elected in 2013 can be open for election in the fall of 2017 according to the normal schedule that they would have had before Session Law 2013-110. This would return the Board to a 5-4 stagger of four-year terms each. The November 2016 election would allow for an August filing period, and would require non-partisan election by plurality rather than a run-off. This procedure provides the most efficient return to the prior systems with the least disruption possible for voters.

The right to vote is one of the most fundamental rights in our democracy and is thus afforded special protections. *See Reynolds*, 377 U.S. at 554-55, 563; *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). As such, any impediment or

22

abridgment of the right to vote is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). There are already constitutional plans available from 2011 for use and proceeding under the proposed plan will cause Plaintiffs and other Wake County voters to suffer irreparable injury if they are forced to participate in elections using unconstitutional districts. *See Larios v. Cox*, 305 F. Supp. 2d 1335, 1344 (N.D. Ga. 2004) ("If the court permits a stay, thereby allowing the 2004 elections also to proceed pursuant to unconstitutional plans, the plaintiffs and many other citizens in Georgia will have been denied their constitutional rights in two of the five elections to be conducted under the 2000 census figures. ... Accordingly, we find that the plaintiffs will be injured if a stay is granted because they will be subject to one more election cycle under unconstitutional plans.").

Granting the writ is will secure Plaintiffs' rights and serve the public interest. It will minimize voter confusion and disruption to the election process by ensuring that this litigation is concluded very close to the fast approaching existing deadline of August 10 for ballot preparation. This is the last deadline that proceeds the planned mailing of military, overseas and absentee ballots by the Wake County Board of Elections on September 9. The Writ should issue with all possible haste so that the election may proceed with a lawful remedy that adheres to the decisions already made by the Fourth Circuit.

## <u>CONCLUSION</u>

For these reasons Petitioners respectfully move this Court to enter a writ of mandamus as specified above.

Respectfully submitted this 8th day of August, 2016.

/s/ Anita S. Earls____
Anita S. Earls
N.C. State Bar No. 15597
anita@southerncoalition.org
Allison J. Riggs
N.C. State Bar No. 40028
allison@southerncoalition.org
SOUTHERN COALITION
FOR SOCIAL JUSTICE
1415 W. Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942

*Counsel for Plaintiffs-Appellants*

24

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on <u>August 8, 2016</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

    Charles F. Marshall, III
    Matthew B. Tynan
    Jessica Thaller-Moran
    Brooks Pierce McLendon Humphrey & Leonard, LLP
    PO Box 1800
    150 Fayetteville St.
    1600 Wells Fargo Capitol Center
    Raleigh, NC 27601
    919-839-0300
    cmarshall@brookspierce.com

    Counsel for Defendant-Appellee


<u>/s/ Anita S. Earls            </u>          <u>August 8, 2016</u>
Anita S. Earls                      (date)