IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action

| | |
|---|---|
| RALEIGH WAKE CITIZENS, ASSOCIATION, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>WAKE COUNTY BOARD OF ELECTIONS )<br>)<br>Defendant. ) | No. 5:15-CV-156-D |
| CALLA WRIGHT, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STATE OF NORTH CAROLINA, )<br>)<br>Defendant. ) | No. 5:13-CV-607-D |

BRIEF IN SUPPORT OF EXPEDITED MOTIONS
BY CAROLINE SULLIVAN TO INTERVENE AND
FOR RELIEF UNDER THE COURT'S 9 AUGUST 2016 ORDER

Pursuant to Fed. R. Civ. P. 24 and under the terms of the Court's 9 August 2016 Order retaining jurisdiction, and Local Civil Rule 7.2, Proposed Intervenor-Movant, Caroline Sullivan ("Sullivan"), by and through counsel, hereby submits this memorandum of law in support of her Motion to Intervene and for Expedited Relief.

## STATEMENT OF CASE

This consolidated action involves two lawsuits brought to enjoin new election systems enacted by the North Carolina General Assembly for the Wake County Board of Education and the Wake County Board of County Commissioners. The two cases were consolidated and a bench trial was held on 16-18 December 2015, after which the trial court ruled for Defendant on all claims. Following appeal by Plaintiffs, the Fourth Circuit reversed in part and affirmed in part with an opinion issued on 1 July 2016. On 9 August 2016, this Court issued an Order to effectuate the mandate of the Fourth Circuit and setting forth a remedial election plan for the 2016 election for the Wake County Board of Education and the Wake County Board of County Commissioners.

## STATEMENT OF FACTS

Until approximately 9 August 2016, the combination of Section 1(b) and Section 1(c) of N.C. Session Law 2015-4 provided the election plan for the 2016 Wake County Board of Commissioners election.[1] Section 1(b) provided for the election for three (3) seats: one each from residency Districts 4, 5, and 6, as defined by the previous law. Section 1(c) provided for the election of an additional two (2) seats: one each from super districts A and B, as defined by N.C. Session Law 2013-110. Thus, according to N.C. Session Law 2015-4, a total of five (5) Wake County Commission seats would be up for election in 2016. In or about December 2015, the candidate filing period for the 2016 Wake County Board of Commissioners election

---

[1] The facts set forth herein, to the extent not based on documents generated by or filed in this Court, is based largely on the verified statements contained in the Affidavit of Caroline Sullivan, filed contemporaneously herewith.

occurred. A qualified individual seeking election in 2016 to the Wake County Board of Commissioners could file for any of the five (5) seats in which districts she resided. By law, no candidate is permitted to file in more than one district.

Pursuant to the 2016 election plan for the County Commission set forth in Session Law 2015-4, Sullivan was eligible to file to run either for the District 4 seat or the super district A seat. Sullivan previously had been elected in 2012 to the District 4 County Commission seat and was seeking to continue her service on the Board. Because of the structure of N.C. Session Law 2015-4, which provided only a two-year term for the District 4 seat and eradicated it thereafter, she chose to file as a candidate in super-district A, which would carry a four-year term in a district that would survive in subsequent elections. The Wake County Board of Elections accepted her application to be a 2016 candidate for election to the County Commission, and she has in all respects complied with all requirements to be a candidate.

Since this Court 9 August 2016 Order, however, Sullivan has been denied an opportunity to stand for re-election to the Board of Commissioners. On 9 August 2016, the Court ordered the Wake County Board of Elections to "use the 2011 redistricting plan that was used in the 2014 Wake County Board of Commissioners elections." *See* 8/9/16 Order [DE 119][2] at 36. The Court specified that the "Commission candidates will run in residency Districts 4, 5, and 6 and be elected countywide." *Id.* The Court also ordered that the 2016 School Board election be

---

[2] All citations to docket entries included herein refer to the docket in *Raleigh Wake Citizens Association, et al., v. Wake County Board of Elections*, No. 5:15-CV-156-D (E.D.N.C.).

conducted pursuant to the 2011 redistricting plan. *Id.* The Court did not specifically include any direction regarding candidate filing for either race. *Id.*

To implement the Court-ordered election plan, the Wake County Board of Elections, with the consent of the State Board of Elections, opened candidate filing for the School Board election for five (5) business days, closing on 17 August 2016. It did not open filing for the County Commission race. The sample ballot generated by the Board of Elections for the November 2016 general election does not include Sullivan as a candidate for election to the Wake County Board of Commissioners. The local and state Boards of Elections have rejected her requests to be allowed to run under the newly-ordered plan for the 2016 Board of Commissioners election.

## ARGUMENT

The Court has ordered the Wake County Board of Elections to conduct the 2016 County Commission election using the 2011 redistricting plan that was used in the 2014 elections. *See* 8/9/16 Order [D.E. 119] at 14, 36. To implement this election plan, the existing parties to the lawsuit, particularly Plaintiffs, have advocated that no new candidate filing period is required. But such a view of the 2016 election plan set forth in N.C. Session 2015-4 as severable and divided into distinct, isolated tracts is not constitutionally sustainable when considering an entire election process. Closer examination, particularly from the vantage point of a candidate in Sullivan's position, reveals that the declaration of the invalidity and the unconstitutionality of any constituent part of the plan infects all parts of the electoral process that were based on the infirm plan: beginning with its initial

4

implementation at the time of candidate filing. This Court immediately recognized this very problem after the Fourth Circuit issued its ruling on 1 July 2016: "If the court's injunction bars the use in the November 2016 election of the plans that the Fourth Circuit invalidated, the effect of the injunction will be to cancel the votes case in the March 2016 primary election for the Wake County Board of Commissioners . . . [and] to void the candidate filing for the Wake County Board of Commissioners, which closed on December 17, 2015." 7/8/16 Order [D.E. 78] at 7; *see also* 8/9/16 Order [D.E. 119] at 16 (recognizing that enjoining use of unconstitutional redistricting plan in Session Law 2015-4 "cancel[s] the results of the March 2016 primary election for the Board of Commissioners and cancel[s] the filing periods (which have expired) for those people who filed to run for the Board of Commissioners").

This recognition must be inculcated into the implementation of the Court's 9 August 2016 Order declaring a new, remedial election system for the 2016 election of Wake County Commission. Specifically, to avoid constitutional infirmities in the remedy itself, qualified and willing candidates, including Sullivan, must be permitted an opportunity to be on the ballot with an understanding of, and pursuant to, the valid and constitutional election districts now declared to be in effect for the upcoming election.

## I. THE COURT SHOULD EXPEDITE THE CONSIDERATION OF THE PENDING MOTIONS.

This Court's Orders since 1 July 2016 evince its full comprehension of the need to implement quickly appropriate remedial relief in connection with the 2016

5

election of the Wake County Board of Commissioners. These Motions concern the implementation of that relief.

Specifically, Sullivan asserts that, without action by this Court to allow Sullivan the opportunity to appear on the 2016 ballot as a candidate for election to the Wake County Board of Commissioners, the election will be procured by violation of constitutional principles. For there to be any possible redress before the election, and in time for valid and appropriate absentee ballots to be mailed in sufficient time for a November election, Sullivan respectfully requests that this Court order a briefing or hearing schedule that will allow for the Court's consideration of Sullivan's Motions within the week.

## II. THE COURT SHOULD ALLOW SULLIVAN TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING EMERGENCY RELIEF UNDER THE COURT'S 9 AUGUST 2016 ORDER.

Pursuant to Fed. R. Civ. P 24(a)(2), the Court must allow intervention as a matter of right "on timely motion" by anyone who "claims an interest relating to . . . the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Here, Sullivan seeks to intervene for the limited purpose of seeking emergency relief related to the Court's 9 August 2016 Order, which the local and state Boards of Elections are implementing in a way that cancels Sullivan's candidacy for Wake County Board of Commissioners. In that regard, Sullivan satisfies the requirements of Rule 24(a)(2) because she clearly has an interest in the action and is "so situated that disposing of the action may as a practical matter

6

impair" her interest.  Additionally, no existing party adequately represents her interest in maintaining her candidacy.  Indeed, one of the plaintiffs in this action seeks election to the County Commission seat that Sullivan currently holds and which she would have filed to retain had the Court's remedial plan been in effect at the time candidate filing was open.

Further, Sullivan's motion to intervene is timely under the circumstances.  Post-judgment motions to intervene can be timely when the intervenor acts promptly after the entry of judgment.  *See, e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977) (allowing intervention to pursue appeal); *see also Hill v. Western Elec. Co.*, 672 F.2d 381, 387 (4th Cir. 1982) (allowing intervention post-remand, post-judgment).  "To the extent any more stringent standard for intervention following judgment is warranted, however, it must be based upon heightened prejudice to the parties and more substantial interference with the orderly process of the court in that context . . . and 'if neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied.'"  *Hill*, 672 F.2d at 387 (citations omitted).  That the proposed intervention may require the court to revisit any of its previous rulings does not constitute prejudice or counsel against allowing intervention.  *Id.* at 389.  Rather, a court should evaluate the threshold question of intervention first.  *See id.* ("Orderly consideration of that possibility [of reconsideration of a previous ruling] should, we believe, follow a threshold consideration of the formal qualifications of the proposed intervenors).

7

In this case, Sullivan moved to intervene as soon as it became clear that her interests were not protected by any existing party. Sullivan had no reason to intervene before it became clear that the remedy in this case would result in the cancellation of her candidacy and that she would not be provided the opportunity to run for re-election under the Court's 2016 remedial election plan. She is filing this motion within the same business day as the local Board of Elections' written denial her request to continue her candidacy. Second, as a sitting County Commissioner, Sullivan had a reason to avoid involvement in a lawsuit in which the sole defendant was an agency over which the County Commission has oversight responsibilities.

Moreover, Sullivan normally would be entitled to pursue relief in North Carolina state courts regarding actions by the State Board of Elections, such as the decisions not to open candidate filing and effectively cancelling Sullivan's candidacy. In this case, however, this Court expressly retained jurisdiction to "implement, enforce, and amend th[e] judgment in order to ensure timely and orderly elections and to provide other appropriate relief as needed." As a result, Sullivan cannot seek relief from state court and intervention in this action is her only opportunity to seek review of the decisions of the Boards of Election. Finally, the prejudice to the existing parties in allowing Sullivan to intervene in the implementation of the remedy in this case is minimal, if any, when considered in light of Sullivan's ordinary rights to bring a new state court action regarding the effective cancellation of her candidacy and the denial of her right as a qualified candidate to an election process that allows her to stand for election.

This Court should, therefore, grant Sullivan's motion to intervene as a matter of right in this action for the limited purpose of seeking emergency relief in connection with the implementation of the Court-ordered remedial election plan for the 2016 Wake County Board of Commissioners election. Alternatively, the Court should allow Sullivan to permissively intervene pursuant to Rule 24(b)(1), as she has a "claim or defense that shares with the main action a common question of law or fact": the appropriate implementation of the Court-ordered election plan for the 2016 Wake County Board of Commissioners election.

### III. THE COURT SHOULD GRANT EMERGENCY RELIEF REGARDING THE IMPLEMENTATION OF THE COURT'S 2016 ELECTION PLAN.

#### A. The Fourth Circuit Mandate Requires the Cancellation of All Actions Taken Under the Session Law 2015-4 Election Plan.

The Board of Elections evidently bases its removal of Sullivan from the ballot for the 2016 of Wake County Commission general election on its conclusion that this Court ordered the District 4, 5, and 6 elections to continue as if the Session Law 2015-4 had not been found constitutionally infirm. In its Order, however, the Court made no such declaration. Rather, this Court followed the Fourth Circuit mandate to enjoin any use of the Session Law 2015-4 election plan in any election, including the 2016 election. Because candidate filing for the 2016 County Commission race was premised on Session Law 2015-4, that process of the election is constitutionally infirm and cannot be imported into the remedial election plan ordered by this Court without contravening the mandate of the Fourth Circuit.

9

As this Court has recognized, the Fourth Circuit dramatically narrowed the Court's discretion to select an appropriate remedy following the declaration of the unconstitutionality of the 2016 election plan. This Court was instructed "to enter immediately judgment for Plaintiffs granting both declaratory relief and a permanent injunction, as to the one person, one vote claims." *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, No. 16-1270, 16-1271, 2016 WL 3568147, at *15 (4th Cir. July 1, 2016). The Fourth Circuit further specified that it saw "no reason why the November 2016 elections should proceed under the unconstitutional plan we strike down today." *Id.* at *15 n.13. Following that directive, this Court "enjoined the use of the unconstitutional redistricting plan in Session Law 2013-110 Session Law 2015-4 in any elections, including the November 2016 elections." 8/9/16 Order [D.E. 119] at 17.

As part of that injunction, all actions previously accomplished under the Session Law 2015-4 plan, including candidate filings and primaries, are rendered void. *See* Am. Compl. [DE 22] at 17 (praying for an order enjoining the Board of Elections "from enforcing or giving any effect to the provisions of Session Law 2015-4 that relate to the method of election of members of the Wake County Board of County Commissioners"). As the United States Supreme Court has recognized, elements of the election process, such as filing periods and primaries, cannot be viewed in isolation, but instead are integral parts of the election for which they form a part. *See NAACP v. Hampton Cnty. Election Comm'n*, 470 U.S. 166 (1985) ("[A]

10

filing period cannot be considered in isolation from the election of which it forms a part.").

In light of the injunction, all candidates who filed for election while the Session Law 2015-4 plan was in effect must be deemed disqualified subject to a new filing period. If the Court's remedial plan does not cleanse the election process from the effect of the invalid plan, these preliminary election processes, which are afforded the same constitutional protections as the general election itself, will be tainted with no remedy forthcoming. *Cf. Clingman v. Beaver,* 544 U.S. 581, 610 (2005) ("When the State makes the primary an integral part of the procedure of choice, every eligible citizen's right to vote should receive the same protection as in the general election." (citation omitted)). Indeed, this Court already recognized that the effect of enjoining use of the 2015 election plan would be to invalidate the candidate filings and primaries that had occurred pursuant to it. *See* 7/8/16 Order [D.E. 78] at 7 ("If the court's injunction bars the use in the November 2016 election of the plans that the Fourth Circuit invalidated, the effect of the injunction will be to cancel the votes cast in the March 2016 primary election for the Wake County Board of Commissioners . . . [and] to void the candidate filing for the Wake County Board of Commissioners, which closed on December 17, 2015); 8/9/16 Order [D.E. 119], at 16 ("[T]he court recognizes the drastic nature of this injunctive relief in cancelling the results of the March 2016 primary election for the Board of Commissioners and cancelling the filing periods (which have expired) for those people who filed to run for the Board of Commissioners . . . . The court also

recognizes that this injunctive relief negates the work the Wake County Board of Elections completed to date concerning the March primary and the November elections and expectations of the candidates and the voters concerning those elections.").

That this Court did not specifically order the Board of Elections to adopt the candidate filings made under the enjoined redistricting plan not only is clear from the record, it also is evidenced by the Board of Elections' own actions. Following this Court's 9 August 2016 Order, the State Board of Elections established a special filing period for all single-member district contests for the Wake County Board of Education, which the State Board of Elections found necessary under this Court' remedial plan. That special filing period occurred between August 11 and August 17, with no objection from any candidate or party to this action.

In sum, this Court has followed the Fourth Circuit mandate requiring the entry of an injunction cancelling all results accomplished under the Session Law 2015-4 restricting plan deemed unconstitutional. The implementation of that Order by the Board of Elections, however, does not fully give effect to the mandate because it relies on and imports into the ordered remedy the ballot election processes that occurred under Session Law 2015-4. If a valid November 2016 election is to occur, the Board of Elections must implement the Court's Order and the Fourth Circuit's mandate in a way that does not import fundamental election processes undertaken pursuant to an invalid law.

B.   <u>The Board's Implementation of this Court's Order Impermissibly Restricts Ballot Access.</u>

By denying Sullivan an opportunity to stand for election to the Wake County Board of Commissioners when she is otherwise qualified, interested and eligible to serve, the Board has erected an impermissible restriction to ballot access in its implementation of this Court's 2016 remedial election plan.

"Ballot access restrictions implicate important voting, associational, and expressive rights protected by the First and Fourteenth Amendments" of the United States Constitution. *Delaney v. Bartlett*, 370 F. Supp. 2d 373, 377 (M.D.N.C. 2004); *see McLaughlin v. N.C. Bd. of Election*, 65 F.3d 1215, 1221 (4th Cir. 1995). When such restrictions are substantial, they "burden two distinct and fundamental rights, the right of individual to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Greaves v. State Bd. of Elections of N.C.*, 508 F. Supp. 78, 80 (E.D.N.C. 1980) (citation omitted).

In addition, unlike the United States Constitution, this State's Constitution "specifically governs suffrage and eligibility to office." *See Libertarian Party of N.C. v. State of North Carolina*, 200 N.C. App. 323, 338, 688 S.E.2d 700, 711 (N.C. Ct. App. 2009) (Calabria, J., dissenting). Specifically, Article VI, Section 6 of the State Constitution provides that "[e]very qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office." The state constitution contains only three categories of persons disqualified from office (*i.e.*, persons who deny the being of God, who are

13

ineligible to vote, or who have been convicted of certain crimes), none of which applies here. *See* N.C. Const. art VI, § 8. "In all other circumstances, the right of a qualified voter who is 21 years of age to run for election by the people is absolute." *Libertarian Party of N.C.*, 200 N.C. App. at 339, 688 S.E.2d at 711.

It is perhaps axiomatic that any democratic election must have a filing period or other mechanism to allow qualified citizens to run for public office. The Board of Elections' implementation of this Court's 9 August 2016 Order contains no such mechanism, and thereby it effectively has stripped Sullivan of her fundamental right to run for office and the electorate of its right to vote for its candidate of choice. Sullivan presently serves on the Wake County Board of Commissioners representing District 4, as those districts were drawn under the 2011 redistricting plan. She continues to reside in District 4, filed for re-election in the 2016 election under the Session Law 2015-4 plan, paid all required fees relating to her candidacy, and otherwise satisfies all requirements for eligibility for office. However, Sullivan does not presently appear on the sample ballot generated by the Wake County Board of Elections as an eligible candidate for the District 4 County Commission race. Following the entry of this Court's 9 August 2016 Order, when Sullivan sought to register for or otherwise confirm her candidacy for the 2016 the Board of Elections election, she was turned away.

Put simply, Sullivan has an absolute right to run for office which has been stripped by the manner in which this Court's 9 August 2016 Order has been implemented by the Board of Elections. Accordingly, this Court should direct the

14

Board of Elections to either open candidate filing for the 2016 County Commission election pursuant to the new plan or otherwise allow Sullivan an opportunity to appear on the ballot for that election.

C. If No New Filing Period or Other Relief Is Fashioned, This Court's Remedial Plan Effectively and Impermissibly Selects the Candidates for Election.

To the extent that this Court's 9 August 2016 Order implied that the County Commission election should proceed as scheduled in Districts 4, 5, and 6 with *only* those candidates that filed and qualified as candidates under the Session Law 2015-4 Plan, it must be revised based on principles of law and equity.

"The remedial powers of an equity court must be adequate to the task, but they are not unlimited." *Whitcomb v. Chavis*, 403 U.S. 124, 161 (1971). In determining the appropriate remedial plan in a redistricting case, the court still must respect the fundamental constitutional rights of those to be affected by its order. *See White v. Weiser*, 412 U.S. 783, 795 (1973) (the typical deference afforded to the legislature in determining a remedial plan is subject to the requirement that the State's policy not detract from constitutional requirements); *Hines v. Ahoskie*, 998 F.2d 1266, 1272 (4th Cir. 1993) (a court fashioning a remedial election plan must consider whether the proposed remedial plan violates constitutional or statutory provisions).

Here, as discussed above, restrictions on ballot access implicate the fundamental constitutional rights of both qualified candidates and the electorate at large. For that reason, election laws "which place severe burdens upon constitutional rights are subject to strict scrutiny: the regulation must be narrowly

15

drawn to advance a state interest of compelling importance." *McLaughlin*, 65 F.3d at 1220-21. Against that constitutional framework, this Court, sitting in equity, must ensure that its chosen remedy is no more restrictive than necessary on Sullivan's constitutional rights to ensure the 2016 County Commission election goes forwarded as scheduled in November 2016.

An order limiting the eligible candidates for the 2016 election under the Court's remedial plan to those who filed to run in Districts 4, 5, and 6 under the 2015 plan now declared unconstitutional is far more restrictive on Sullivan's rights than necessary to achieve a timely election. Even if a new filing period is not feasible given the amount of time remaining, there is no compelling reason to limit the pool of eligible candidates only to those who filed to run in Districts 4, 5, and 6 under the Session Law 2015-4 election plan. Sullivan resides in District 4, is eligible to run for District 4, and could have filed for District 4 at the time she filed for reelection in December 2015. She now has been deemed ineligible for reelection by the Board of Elections merely because she chose to file in the super district that does not exist under this Court's remedial plan, a result that could not have been predicted by Sullivan in December 2015 at the time she declared her candidacy. If the Board of Elections' interpretation of this Court's remedial plan is correct, then in effect, this Court has decided which of the qualified candidates for the Wake County Commission election residing in Districts 4 should be on the ballot, taking that decision away from the electorate.

Accordingly, to the extent this Court's 9 August 2016 Order implied that the County Commission election should proceed as scheduled in Districts 4, 5, and 6 with only those candidates that filed and qualified as candidates under the Session Law 2015-4 Plan, it should be amended to prevent an unjust result. The Court may either (1) direct the Board of Elections to open a new filing period, (2) use its equitable power to declare all candidates who filed previously to be "disqualified" pursuant to N.C. Gen. Stat. § 163-112 such that the candidates may be chosen by executive committee of the party, or (c) use its equitable power to allow Sullivan and any other candidates who previously and validly filed to run in the Wake County Commission race to continue their candidacy in the district in which they reside, with such election to be conducted by plurality vote, if necessary.

## CONCLUSION

For the reasons stated herein, Sullivan respectfully requests that the Court grant her motion to intervene pursuant to Rule 24 of the N.C. Rules of Civil Procedure, and also grant her motion for relief from the Court's 9 August 2016 Order.

[Signature Page Follows.]

This the 22nd day of August, 2016.

/s/ Shannon R. Joseph
Shannon R. Joseph
N.C. State Bar No. 22144
Jeffrey L. Roether
N.C. State Bar No. 48229
MORNINGSTAR LAW GROUP
1330 St. Mary's Street, Suite 460
Raleigh, NC 27605
Telephone: (919) 829-7394
Facsimile: (919) 829-7396
SJoseph@morningstarlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **MOTION BY CAROLINE SULLIVAN FOR EXPEDITED RELIEF UNDER THE COURT'S 9 AUGUST 2016 ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record herein.

This the 22nd day of August, 2016.

/s/ Shannon R. Joseph
**MORNINGSTAR LAW GROUP**
1330 St. Mary's Street, Suite 460
Raleigh, NC 27605
Telephone: (919) 829-7394
Facsimile: (919) 829-7396