IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al. | ) ) ) | |
| *Plaintiffs,* | ) ) | No. 5:15-cv-156 |
| *v.* | ) ) | |
| WAKE COUNTY BOARD OF ELECTIONS, | ) ) | |
| *Defendant.* | ) ) | |
| | | |
| CALLA WRIGHT, et al. | ) ) | |
| *Plaintiffs,* | ) ) | |
| *v.* | ) ) | No. 5:13-cv-607 |
| STATE OF NORTH CAROLINA, et al. | ) ) | |
| *Defendant.* | ) ) ) | |

**DEFENDANT'S RESPONSE TO PROPOSED INTERVENOR'S MOTION
FOR RELIEF UNDER THE COURT'S AUGUST 9, 2016 ORDER**

Defendant Wake County Board of Elections ("WBOE") respectfully submits this response in opposition to the motion by Caroline Sullivan ("Intervenor")[1].

**INTRODUCTION**

The overriding goal of all parties to the remedial proceedings in this case has been timely and orderly administration of elections on November 8, 2016. This Court promptly and proactively instituted remand proceedings that culminated in its August 9, 2016 order that was

---

[1] "Intervenor" is actually a proposed intervenor at the time of the filing of this opposition. In the interest of expediting any decision on her underlying motion for relief, Defendant is submitting this opposition in the event that this Court allows the motion to intervene.

consistent with the Fourth Circuit's mandate in this case and assured the most feasible plan for timely and orderly elections on November 8, 2016.

Intervenor requests that this Court reopen the filing period for election to the Wake County Board of Commissioners in residency districts 4, 5, and 6 under the 2011 plan ("Residency Districts"), disqualify the current candidates, or allow Intervenor and any other previously-filed candidate to be added to the ballot in a plurality election. [D.E. 111 at 17]. Defendant does not construe this Court's August 9, 2016 order to require any such relief because Residency Districts 4, 5 and 6 were never challenged or invalidated, and therefore were not part of the "unconstitutional redistricting plan" enjoined by this Court. [D.E. 104 at 16, 17, 36].

Most important, reopening the filing period for those Residency Districts would make it impossible for the WBOE to hold timely and orderly elections on November 8, 2016 under the current deadlines because it would require Defendant to hold a primary election in any district for which more than one candidate from a particular political party filed to run for election.

Although Intervenor is understandably frustrated at her inability to run in District A—a choice she made in December 2015 when that district was under a constitutional challenge—Intervenor had other opportunities to address this issue. Intervenor could have filed for election in District 4 in December 2015, or she could have immediately sought to intervene in the remedy phase of this Court to raise concerns about the impact of invalidating the primary election for District A. Intervenor did not make a formal legal demand on Defendant and the SBOE until August 12, 2016, a day after the filing period had closed.

For the reasons described below, Defendant respectfully requests that this Court enter an order denying Intervenor's motion for relief in all respects. Further, to the extent necessary, Defendant respectfully requests that this Court clarify or amend its August 9, 2016 order to confirm

that (i) this Court did not cancel or otherwise enjoin any part of the election for Residency Districts 4, 5 and 6 that commenced with filing in December 2015, and (ii) Defendant is not required to reopen a filing period for election to Residency Districts 4, 5, and 6 or take any other action relating to such election.

## RELEVANT FACTS

In light of this Court's comprehensive recitation of the facts throughout is various orders, Defendant provides the following brief background regarding the distinction between (i) Residency Districts 4, 5 and 6 under the 2011 plan, and (ii) the nine new electoral districts under the "7-2" redistricting plan in Session Law 2015-4 for election to the Wake County Board of Commissioners:

Session Law 2015-4 included provisions establishing a new "7-2" redistricting plan that contained nine new electoral districts for the Board of County Commissioners from which candidates were elected by voters within each district ("2015 Electoral Districts"). The new "7-2" plan, which included all new district boundaries, replaced a previous 2011 districting plan in which County Commissioners were elected countywide from seven residency districts. *See* S.L. 2015-4 §§ 1.(c), 1.(d). Importantly, however, the Session Law did not immediately enact all nine of the 2015 Electoral Districts for use in the 2016 election. Rather, the General Assembly required an election only for Districts A and B in 2016. *Id.* The General Assembly expressly authorized (or "grandfathered") the continued existence and use of Residency Districts 4, 5 and 6 under the 2011 plan through 2018, including for the 2016 election. *See* S.L. 2015-4, § 1.(b).

Plaintiffs' lawsuit only challenged the constitutionality of the population deviations in the 2015 Electoral Districts, including Districts A and B. Notably, Plaintiffs did not challenge the constitutionality of Residency Districts 4, 5 and 6 under the 2011 plan. Plaintiffs' lawsuit,

3

therefore, presented no legal issues that would obstruct Defendant's ability to proceed with a lawful election for Residency Districts 4, 5 and 6 under the 2011 plan as authorized by Session Law 2015-4.

On December 1, 2015, Defendant opened a filing period for Districts A and B under the 2015 Electoral Districts and for Residency Districts 4, 5, and 6 under the 2011 plan. S.L. 2015-258, § 2.(b) The filing period closed on December 21, 2015. *Id*. Intervenor had the option to file for election in either District A under the 2015 Electoral Districts or in Residency District 4 under the 2011 plan. At the time of the filing period opened, only District A was subject to a constitutional challenge.

On March 15, 2016, a primary was held for election to District B. There was no primary election held for Residency District 4, 5, or 6 under the 2011 plan or for District A under the 2015 Electoral Districts because no more than one candidate from each political party filed to run in those districts.

On July 1, 2016, the Fourth Circuit issued its decision striking down the population deviations in the 2015 Electoral Districts (which includes District A) as unconstitutional. *See Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 2016 U.S. App. LEXIS 12136 (4th Cir. July 1, 2016). The Fourth Circuit's decision did not strike down—and had no impact on—the district lines for Residency Districts 4, 5, and 6, the 2011 plan, or the lawful election in progress for Residency Districts 4, 5 and 6 under the 2011 plan.

During the remand proceedings, this Court reiterated that the Fourth Circuit's decision had invalidated the population deviations in the 2015 plan—which, by definition, included only the population deviations in the 2015 Electoral Districts that had been challenged. [D.E. 93 at 2; D.E. 104 at 20, 36]. Further, this Court emphasized the need to develop a feasible plan for timely and

4

orderly elections on November 8, 2016.[2] To that end, Defendant made submissions to this Court regarding the feasibility of various districts and the pendency of pressing deadlines. Defendant reiterated both in its written and oral submissions that holding a primary was "not feasible." [D.E. 83 at 5].[3] This Court remarked during the August 2, 2016 hearing that, in light of the pending deadlines, a primary "didn't seem possible."[4]

In its August 9, 2016 Order, this Court recited Defendant's representation that it was prepared to proceed with the at large election for Residency Districts 4, 5 and 6 under the 2011 plan. [D.E. 104 at 13]. This Court also recited Defendant's representation that if modifications were made to Districts A and B to cure the constitutional defect found by the Fourth Circuit, it would not be feasible to hold a primary election for those revised districts before November 8, 2016. [D.E. 104 at 13].

This Court also rejected Plaintiffs' argument that the Fourth Circuit's decision rendered everything in Session Law 2015-4 unconstitutional. This Court held that "it does not construe the Fourth Circuit's opinion to hold that all of Session Law 2013-110 and 2015-4" to be unconstitutional. [D.E. 104 at 26]. In fashioning the appropriate remedy, this Court noted that it should "avoid overriding permissible state legislative decisionmaking in the statute containing the

---

[2] *See*, *e.g.*, D.E. 78 at 5 (requesting applicable deadlines and stating that "the people deserve and will have elections for the Wake County School Board and the Wake County Board of Commissioners on November 8, 2016"); D.E. 109 at 2 ("Beginning August 10, 2016, countless sequential deadlines must be met in order to have orderly elections in Wake County"); D.E. 97 at 2 (stating "the court's focus is on having timely and orderly elections" and requesting additional information relating to the feasibility of various remedial options).

[3] These submissions includes references to avoiding a new primary for District A and District B because those were the only two districts struck down by the Fourth Circuit that were to be used in a partisan election in 2016. Defendant did not specifically refer to a possible new primary in Residency Districts 4, 5 and 6 because those districts were not challenged or invalidated, and a lawful election was underway.

[4] Transcript of Proceedings, August 2, 2016, at 58.

5
Case 5:15-cv-00156-D   Document 113   Filed 08/24/16   Page 5 of 14

unconstitutional plan." [D.E. 104 at 24-25]. This Court adopted the 2011 redistricting plan for use in the Board of County Commissioners election and the Board of Education elections in 2016 [D.E. 104 at 34-37]—the very same lawful districts authorized by Session Law 2015-4 and under which a lawful election was proceeding.

To discharge its duty to administer timely and orderly elections, Defendant immediately requested authority from the State Board of Elections to reopen the filing period for the nine Board of Education districts under the 2011 plan because the districts enacted by the General Assembly in Session Law 2013-110 had been enjoined by this Court. Defendant did not separately reopen a filing period for the existing lawful election for Residency Districts 4, 5, and 6 that was proceeding under the 2011 districts as authorized by Session Law 2015-4 and as adopted by this Court's August 9, 2016 order. Defendant did not read this Court's August 9, 2016 order enjoining the "unconstitutional redistricting plan" to include Residency Districts 4, 5, and 6 under the 2011 plan because those districts were never challenged or invalidated.

## ARGUMENT

**I. Defendant is not required to reopen a filing period for Residency Districts 4, 5, and 6 because those Districts were not challenged, were not invalidated, and this Court did not cancel or enjoin the current election in progress.**

Intervenor's argument, at its core, is that Residency Districts 4, 5 and 6 were part of the "unconstitutional redistricting plan" enjoined by this Court, and as a result, the filing period that commenced in December 2015 was cancelled and a new filing period needs to be opened. This argument fails because it is based on the flawed premise that all of Session Law 2015-4, including the use of Residency Districts 4, 5, and 6, was struck down as unconstitutional by the Fourth Circuit.

Residency Districts 4, 5, and 6 were never part of the "unconstitutional redistricting plan" enjoined by this Court. Those districts were not challenged by the plaintiffs and were not invalidated by the Fourth Circuit. This Court did not declare all of Session Law 2015-4 to be invalid and did not enjoin all of its provisions. Because a lawful election for Residency Districts 4, 5 and 6 was underway, and because no modifications were requested or required for the election to continue, cancelling and resetting the election process for those districts would be unnecessary, redundant, and would thwart Defendant's ability to hold timely and orderly elections on November 8, 2016.

### A. Plaintiffs never challenged Residency Districts 4, 5 and 6 under the 2011 plan.

The only redistricting "plan" challenged by the Plaintiffs was the "7-2" redistricting plan establishing the 2015 Electoral Districts. Plaintiffs never challenged the continued existence or use of Residency Districts 4, 5, and 6 under the 2011 plan, which involves an entirely different and previous set of district maps. Residency Districts 4, 5, and 6 were specifically grandfathered for use in the 2016 elections in a separate provision of Session Law 2015-4. Defendant, therefore, was authorized to proceed with a lawful election for those grandfathered districts under the 2011 plan, and the progress of that election was wholly unaffected by the constitutional fate of the "7-2" plan.

### B. Neither the Fourth Circuit nor this Court invalidated the population deviations in Residency Districts 4, 5, and 6.

The Fourth Circuit only invalidated the population districts in the 2015 Electoral Districts established in the "7-2" plan.[5] The Fourth Circuit did not, and could not, invalidate or otherwise

---

[5] *See, e.g.*, DE # 93 ("[T]he court declares that the population deviations in the redistricting plans in Session Law 2013-110 for the Wake County School Board and Session Law 2015-4 for the Wake County Board of Commissioners violate the equal protection clauses of the Fourteenth

prevent the use of Residency Districts 4, 5, and 6 under the 2011 plan because the population deviations in those districts were never challenged. Further, Residency Districts 4, 5 and 6 are part of an entirely different redistricting plan (i.e., map) than the 2015 Electoral Districts. The continued use of Residency Districts 4, 5 and 6 under the 2011 plan, therefore, was not in any way prohibited by the invalidity of the 2015 Electoral Districts.

Contrary to Intervenor's suggestion [D.E. 111 at 9], the continued use of Residency Districts 4, 5 and 6 was not invalidated simply because such use was separately authorized within Session Law 2015-4. This Court confirmed in its August 9, 2016 order that it did not construe the Fourth Circuit's decision to invalidate every provision in Session Law 2015-4, and it rejected Plaintiffs' arguments to the contrary. [D.E. 104 at 18-26]

Because the continued use of Residency Districts 4, 5, and 6 was neither challenged nor invalidated, Plaintiffs and Defendant agreed that the current election for those districts that commenced in December 2015 could proceed without further modification. [*See* D.E. 82 at 8 ("[T]here is no need to reopen filing or do anything different to change that election process already underway."); D.E. 83 at 4]. From an election administration standpoint, Defendant further submitted to this Court that any remedial plan requiring any primary election was "not feasible" in light of the current election deadlines and the burden imposed upon the WBOE staff and resources. [D.E. 83 at 5, D.E. 103 at 3]. At a hearing on August 2, 2016, this Court appeared to recognize this challenge, remarking that "it didn't seem possible" to hold a primary in light of the election schedule presented to the District Court for review. [Transcript of Proceedings, August

---

Amendment to the United States Constitution and Article I, § 19 of the North Carolina Constitution."); *see also* DE # 104 at 2, 16, 20.

2, 2016, at 58]. Neither the parties nor this Court discussed any need to modify—much less cancel or otherwise enjoin—the election in progress for Residency Districts 4, 5, and 6.

### C. The continuation of the election in progress for Residency Districts 4, 5, and 6 was not specifically enjoined by this Court.

This Court specifically enjoined the use of the "unconstitutional redistricting plan" in Session Law 2015-4. [D.E. 104 at 16, 17] Defendant contends that, by definition, the "unconstitutional redistricting plan" includes only the 2015 Electoral Districts in the "7-2" redistricting plan because (i) the only districts struck down as unconstitutional were the 2015 Election Districts in the 7-2 redistricting plan, and (ii) the remainder of Session Law 2015-4, which includes the grandfathered use of Residency Districts 4, 5, and 6, was part of a previous and entirely different redistricting plan that was never challenged or invalidated.

After specifically enjoining the "unconstitutional redistricting plan," this Court recognized that the "drastic nature of this injunctive relief in … cancelling the filing periods (which have expired) for those people who filed to run for the Board of Commissioners and School Board." [D.E. 104 at 16]. Because the injunction only applied to the "unconstitutional redistricting plan"—and because Residency Districts 4, 5 and 6 are <u>not</u> included in that redistricting plan—Defendant does not find any basis for Intervenor's contention that this Court's order cancelled or otherwise enjoined any part of the lawful election in progress for Residency Districts 4, 5, and 6.

To read this Court's order as cancelling the election for Residency Districts 4, 5, and 6 would also conflict with other provisions of this Court's order and the remand proceedings as a whole. In crafting a remedy, this Court specifically sought to "avoid overriding permissible state legislative decisionmaking in the statute containing the unconstitutional plan." [D.E. 104 at 24-25] The provisions in Session Law 2015-4 grandfathering the use of Residency Districts 4, 5, and 6 reflect such permissible state legislative decisionmaking, and those provisions were never

9

invalidated. [*See* D.E. 104 at 26]. In short, there was no reason or basis to cancel or enjoin an otherwise lawful election under the 2011 districts because those districts were unaffected by the unconstitutional population deviations in the 2015 Electoral Districts.

Further, as part of its overall remedial plan, this Court adopted the same 2011 plan for Residency Districts 4, 5 and 6 under which a lawful election was already proceeding under Session Law 2015-4. And by adopting a two-year term for election to Residency Districts 4, 5 and 6—the same term authorized for those districts by Session Law 2015-4—this Court noted that such a term would "comport[] with the expectations of those candidates who filed to run in 2016 in Districts 4, 5, and 6." [D.E. 104 at 35]. Defendant reads this language as confirming that those candidates were still on the ballot and that election was still proceeding.

## II. The Requested Relief Would Prevent the WBOE From Holding Timely and Orderly Elections.

This Court repeatedly referenced and acknowledged the tight time constraints that Defendant would face to prepare for timely elections.[6] Defendant submitted to the Court detailed election-related deadlines and represented to the Court that it was not feasible to hold a primary election before November 8, 2016.

Intervenor's request would also render it practically impossible to hold timely and orderly elections on November 8, 2016 because it would require a primary if any of the districts had more than one candidate file for election from the same political party. *See* N.C. Gen. Stat. § 163-1(b) (requiring a primary for nomination of candidates from political parties); § 163-114 (allowing

---

[6] *See, e.g.*, D.E. 104 at 30 ("Wake County voters deserve to have a timely and orderly election for the School Board and Board of Commissioners."); *id.* at 34–35 ("[I]n light of the sequential deadlines that must be met, [the 2011 plans] are the only viable plans that the court has."); DE # 109 at 2 ("Beginning August 10, 2016, countless sequential deadlines must be met in order to have orderly elections in Wake County."); DE # 97 at 2 ("Given the exigent circumstances concerning the remedy in this case … this court needs this information as soon as possible").

candidates to be nominated without a primary when only one person seeks the nomination of a political party for a particular office).  A primary is an election in and of itself that would, in addition to diverting substantial resources to hold an additional countywide election, make it impossible to meet the current deadlines to mail absentee ballots.  *See* Decl. of Gary Sims [D.E. 83-1] at 5 ("[I]t is important that any primary election take place no later than seven days prior to the current August 10, 2016 deadline.").

In light of this fundamental obstacle to holding timely elections, Defendant could not reopen a filing period for Residency Districts 4, 5, and 6 without also contravening this Court's stated goal to assure timely and orderly elections and placing Defendant in an impractical position of having to hold a primary election before finalizing the names of the candidates on the ballot for the general election.

Having carefully reviewed this Court's orders on remand, and having taken into account the election-related deadlines, Defendant does not read this Court's August 9, 2016 order to cancel and "reset" a lawful election process for Residency Districts 4, 5, and 6 that was already in progress.  In the event, however, that Defendant was incorrect in its reading of this Court's August 9, 2016 order, Defendant respectfully requests that this Court modify or amend its order to state that the December periods for Residency Districts 4, 5 and 6 are not canceled or otherwise enjoined and that the election to those districts can proceed as planned in progress without reopening any filing period.

### III. Intervenor Has Not Suffered a Cognizable Injury and Her Request is Not Timely

Intervenor's request appears to be premised on her contention that she has a constitutional right to appear as a candidate in Residency District 4 in the November 2016 election.  While

recognizing the legitimate disappointment Intervenor may feel, the Supreme Court of North Carolina has made clear that no such right exists:

> The right of plaintiff to stand for election to an office is a political privilege and not inalienable, and . . . the fact that his aspiration has been thwarted by a nondiscriminatory change of the law gives him no cause of action.

*Penny v. Salmon*, 217 N.C. 276, 279, 7 S.E.2d 559, 561 (1940); *see State ex rel. Martin v. Preston*, 325 N.C. 438, 454-55, 385 S.E.2d 473, 482 (1989) (same). Intervenor's separate contention that she meets the constitutional qualifications to for run office does not prevent the General Assembly or this Court from modifications that may impact the privilege to stand for election. Intervenor "may have been disappointed but [is] not legally aggrieved." *Penny*, 217 N.C. at 279, 7 S.E. 2d at 561.

Second, despite her contention to the contrary [D.E. 110-1 at 3], Intervenor had an opportunity to participate in a "full and proper elections process" for election to District 4 when filing opened in December 2015. Instead, Intervenor chose to run in District A, which was subject to a pending constitutional challenge.

Intervenor also could have intervened to seek relief as soon as the Fourth Circuit issued its decision—and, at the very least, upon this Court's entry of its July 8, 2016 order [D.E. 78] seeking submissions regarding remand. Intervenor's decision to wait until the filing period closed to seek relief under this Court's August 9, 2016 order has only amplified the burdens and costs that Defendant would incur if Intervenor obtained any of the relief she seeks.

## CONCLUSION

Defendant is and remains sympathetic to difficulty and uncertainty that the Fourth Circuit's decision had on voters, candidate, and elections officials, including Intervenor. Nevertheless, for the reasons stated above, Defendant respectfully requests that this Court deny any and all of the

relief sought by Intervenor. To the extent necessary, Defendant respectfully requests this Court to clarify or modify its order to state that (i) this Court did not cancel or otherwise enjoin any part of the election for Residency Districts 4, 5, and 6 that commenced with filing in December 2015, and (ii) Defendant is not required to reopen a filing period for election to Residency Districts 4, 5, and 6.

Respectfully submitted the 24th day of August, 2016.

/s/ Charles F. Marshall
Charles F. Marshall
Matthew B. Tynan
Jessica Thaller-Moran
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
(919) 839-0300
cmarshall@brookspierce.com
mtynan@brookspierce.com
jthaller-moran@brookspierce.com
*Counsel for Wake County Board of Elections*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 24, 2016, the foregoing document was served on all parties or their counsel of records through the CM/ECF system, which will send notification of such filing to all counsel of record if they are registered users or, if counsel for movant is not a registered user, by serving a true and correct copy at the addresses listed below:

        Shannon Joseph
        Morningstar Law Group
        1330 St. Mary's Street
        Suite 460
        Raleigh, NC 27605
        919-590-0360
        Fax: 919-882-8890
        sjoseph@morningstarlawgroup.com
        *Counsel for Intervenor*

        Respectfully Submitted,

        /s/ Charles F. Marshall
        Charles F. Marshall