IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action

| | |
|---|---|
| RALEIGH WAKE CITIZENS ASSOCIATION, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>WAKE COUNTY BOARD OF ELECTIONS,<br><br>        Defendant. | No. 5:15-cv-156 |
| CALLA WRIGHT, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>THE STATE OF NORTH CAROLINA, et al.,<br><br>        Defendants. | No. 5:13-cv-607 |

DECLARATION OF J. GERALD HEBERT IN SUPPORT OF PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

Pursuant to 28 U.S.C. § 1746, I, J. Gerald Hebert, hereby declare:

1. I am over the age of 18 and am competent to testify.

2. I received a B.A. degree from Stonehill College in 1970. I attended Suffolk University School of Law from 1970 to 1973 where I received a J.D. degree. I am a member of the Virginia, D.C. and Pennsylvania (inactive) bars. I am also a member of the bar of the

United States Supreme Court, the United States Courts of Appeals for the Second, Fourth, Fifth, Eighth, Tenth, Eleventh and D.C. Circuits, the United States District Court of the Eastern District of Virginia, and the United States District Court for the District of Columbia.

3. Following my graduation from law school, from 1973 until 1994, I served as a trial attorney in the Civil Rights Division of the United States Department of Justice in Washington, D.C. For the last fifteen years of my service at the Department of Justice (from 1979 to 1994), I was assigned to the Voting Section of the Civil Rights Division where I worked exclusively on cases involving federally protected voting rights. While employed in the Voting Section from 1979 to 1994, I served in a number of supervisory capacities, including Senior Litigation Counsel, Deputy Chief, and Acting Chief of the Voting Section.

4. While at the Department of Justice, I served as the lead trial attorney for the United States in numerous voting rights cases, a number of which ultimately became landmark cases in the field of voting rights. Cases that I handled at the Department of Justice that were the subject of United States Supreme Court decisions included *City of Mobile v. Bolden*, *Rogers v. Lodge*, *Johnson v. DeGrandy*, *Presley v. Etowah County*, *City of Port Arthur, Texas v. U.S.*, and *Shaw v. Reno*, among others. A complete listing of cases I handled at the United States Department of Justice is attached to this Declaration as Attachment A. Since leaving the Department of Justice in May 1994, I have been a solo practitioner with an office in Alexandria, Virginia, where I specialize in voting and election law cases, including cases involving the Voting Rights Act and campaign finance law. A listing of the cases I have handled in my solo practice is also set forth in Attachment A hereto.

2

5. In addition, since 2013, I have been involved in several other cases arising under the Voting Rights Act. For example, I serve as co-counsel to the lead plaintiffs who have challenged (successfully, thus far) the Texas photo ID law under the Voting Rights Act and the U.S. Constitution (*Veasey v. Abbott*). In addition, I represented parties or *amici curiae* in briefs filed in the U.S. Supreme Court in *Shelby County v. Holder* (2013); *Harris v. Arizona Independent Redistricting Commission* (2015); *Evenwel v. Abbott* (2015); and *Shapiro v. McManus* (2015). I also serve(d) as legal counsel in: Perez v. Abbott (pending Texas redistricting case); *Baca v. Berry*, Tenth Circuit Court of Appeals (2015); *League of Women Voters v. Florida*, Florida Supreme Court and trial court (Florida redistricting case); *Harding v. Dallas County, Texas*, U.S. District Court for the Northern District of Texas (2016). I also represented parties or *amici curiae* in a number of major campaign finance cases over the last ten years, including *Citizens United v. FEC*; *McCutcheon v. FEC*, U.S. Supreme Court; *Wagner v. FEC*, D.C. Circuit; *Delaware Strong Families v. Biden*, Third Circuit Court of Appeals; *Van Hollen v. FEC*, D.C. District Court and D.C. Circuit; and *Public Citizen v. FEC*, D.C. District Court and D.C. Circuit, among many others.

6. In addition, from 1994 to approximately 1996, I served part-time as a staff attorney in the Voting Rights Project of the national office of the Lawyers' Committee for Civil Rights Under Law in Washington, D.C. In that position, I served as co-counsel for defendant-intervenors in racial gerrymandering cases brought under the *Shaw v. Reno* doctrine.

7. In addition to my solo practice, from July 2004 to 2016, I have served as Executive Director and Director of Litigation at the Campaign Legal Center, a non-partisan, non-

3

profit organization in Washington, DC. I am currently Director of the Voting Rights and Redistricting projects at the Campaign Legal Center.

8. From January 1995 to 2006 and from 2013 to the present, I have served as an Adjunct Professor of Law at Georgetown University Law Center in Washington, DC, where I teach Election Law, which includes voting rights, campaign finance regulation, and election law. From 2015 to the present, I also have served as an Adjunct Professor of Law a New York Law School in New York City, where I teach a course on voting rights (including redistricting law). In 1997, I co-taught a course on the Voting Rights Act at the University of Virginia Law School with Professor Pam Karlan. In 1995, I also served as an Adjunct Professor of Law at American University's Washington College of Law, where I taught a course on the Voting Rights Act and the political process.

9. I have written a number of publications, books and articles on the Voting Rights Act or redistricting. For example, I co-authored a book on redistricting entitled "The Realists' Guide to Redistricting," which was published by the American Bar Association in 2000 and republished in 2010 (2nd edition). I also published an article on redistricting reform for the Yale Law and Policy Journal, articles on bailouts under the Voting Rights Act, and other law journal articles. Several of these articles have been co-authored with other counsel or academic scholars who have served as expert witnesses in voting rights cases. The following is a partial list of my publications: Rutgers Law Journal (co-authored); Redistricting in the Post-2000 Era, George Mason University Law Review; Redistricting in the Post 2010 Cycle: Lessons Learned?, ABA Human Rights Publication (August 2012); General Theory of Vote Dilution, La Raza Law Journal, Boalt Hall School of Law, University of California at Berkeley (Vol. 6, No. 1) (1993) (co-authored); Future of

4

Voting Rights Litigation: Elections at the Legislative Level, La Raza Law Journal, Boalt Hall School of Law (Vol. 6, No. 1) (1993); Keeping the Courts Honest: the Role of Historians as Expert Witnesses in Southern Voting Rights Cases, Southern University Law Review (Vol. 16, No. 1) (Spring 1989) (co-authored); Civil Rights Law: High Court Decision on voting Rights Act Helps to Remove Minority Barriers, National Law Journal (November 1986); and Discriminatory Electoral Systems and the Political Cohesion Doctrine, National Law Journal (Vol. 10, No. 4) (1987) (co-authored).

10. I have also written several articles about voting rights for publications that are geared to state and local governments, including publications by the Texas Municipal League and the Nation's Cities Weekly.

11. I have given lectures or participated as a panelist and made presentations at or sponsored by: Yale Law School, Harvard Law School, Columbia Law School, William and Mary Law School, Washington and Lee University Law School, George Washington University Law School, Georgetown University Law Center, University of Richmond Law School, and Rutgers Law School, among others. I also have lectured before bar associations and other groups on voting rights, reapportionment, and civil rights, including the National Conference of State Legislatures, the Houston (TX) Bar Association, the Association of Southern State Legislatures, the Virginia Association of Local Government Attorneys, and reapportionment authorities in the States of Louisiana, Maryland, New Mexico and Virginia, among others.

12. As a practitioner in this field, I am very familiar with the degree of complexity of redistricting and voting rights litigation and the type of knowledge and experience that is required to successfully represent clients in these difficult cases. This is a highly

specialized field of law and requires a sophisticated understanding of statutory and constitutional principles, as well as the ability to work with complex statistical data and political information.

13. As a practitioner in the field of election law and voting rights litigation, I am familiar with the leading law firms and non-profits that practice in this area. Only a relative handful of non-profit organizations in the United States have specialized knowledge, experience, and expertise in this area of law. While SCSJ was founded only 9 year ago, the organization has a stellar reputation in the voting rights arena. I understand that the national office of the NAACP frequently asks SCSJ to represent state conferences of the NAACP in redistricting and voting rights litigation. Among other voting rights non-profits, SCSJ is extremely well regarded and its attorneys play a leading role in litigation in this field.

14. I follow redistricting cases and voting rights cases very closely. SCSJ has extensive experience litigating cases from around the country related to the redistricting process, racial gerrymandering and the Voting Rights Act. Examples of such cases that I am aware of include the following: *Dickson v. Rucho/NC NAACP v. NC*, Case Nos. 11-CVS-16896 and 11-CVS-16940 (Wake County NC Superior Court); *Covington v. North Carolina*, Case No. 1:15-cv-00399 (M.D.N.C.); *Perez v. Perry*, Case No. 5:11-cv-00360 (W.D. Tx.); *Texas v. United States*, Case No. 5:11-cv-001303 (D.D.C.); *Moore v. Haslam*, Case No. M2013-00811-COA-R3-CV (Tenn. Court of Appeals); League of *Women Voters v. Detzner/Romo v. Detzner*, Case Nos. 2012-CA-412 and 2012-CA-490 (Florida Supreme Court), and *Personhuballah v. Alcorn*, Case No. 3:13-cv-00678 (E.D. Va.).

15. I am familiar with the nature of the claims in this case, and more generally with claims brought under the one-person, one-vote (equal population) guarantee of the Fourteenth Amendment. It is my opinion that the claims brought by Plaintiffs here (and ably prosecuted by SCSJ attorneys on their behalf) are groundbreaking claims that required high levels of expertise to prosecute successfully. Prior to the United States Supreme Court decision in *Harris v. Ariz. Redistricting Commission* in 2016, the applicable analysis for one-person, one-vote challenges to redistricting plans with deviations less than 10% was difficult to explain and varied from circuit to circuit. In *Harris*, the Supreme Court confirmed Plaintiffs' theory of this case. It is my opinion that only a firm with enormously talented, experienced voting rights litigators could have won this case.

16. I am also familiar with the way that non-profits such as the Southern Coalition for Social Justice generally litigate cases such as these. In many cases, non-profit organizations such as SCSJ must partner with larger firms, who work *pro bono* with the expectation that they will collect fees if successful, in order to try cases of this magnitude. By working independently, SCSJ certainly kept its costs down and prosecuted the case in a fiscally conservative manner.

17. I am familiar with attorneys' fees in the field of political law, which in large measure is dominated by firms and non-profits based in Washington, D.C. In Washington D.C., hourly rates for experienced, well-regarded political law litigation partners have broad range depending on nature of work, years of experience, nature of experience and other factors. These rates generally range from as low as $650 an hour to as high as $1150 an hour, with exceptions existing below and above those rates. The same is true for the

billing range for associates—those rates usually range from as low as $350 an hour to $650 an hour, again with exceptions both below and above those amounts.

18. I have known Anita Earls for more than a decade and I am familiar with her practice. I understand Ms. Earls graduated from Yale Law School in 1988. I understand that Ms. Earls is the Executive Director of the Southern Coalition for Social Justice (SCSJ) in Durham, NC. Prior to found SCSJ in 2007, I understand that Ms. Earls worked in private practice in Charlotte, NC, for the United States Department of Justice, and for the Lawyers' Committee for Civil Rights, and in each practice, had a focus on voting rights litigation. In all, I understand that Ms. Earls has nearly 30 years of litigation experience, representing clients in dozens of proceedings in both state and federal courts. Ms. Earls has represented plaintiffs in several high profile redistricting and voting rights cases, including in Florida, Texas, Tennessee and North Carolina. I understand that she has argued voting rights cases in the 1st, 4th, and 11th Circuits, including winning an *en banc* argument in the 1st Circuit Court of Appeals. I know that she has written numerous briefs for the United States Supreme Court in redistricting and voting rights cases. Additionally, I understand that she has been an Adjunct Professor at the University of North Carolina School of Law and the University of Maryland School of Law; an Adjunct Professor in the African and African-American Studies Department of Duke University, and was a Visiting Research Fellow at the Social Science Research Institute, Center for Race, Ethnicity and Gender in the Social Sciences from 2009 to 2012, conducting research on census and redistricting issues. Finally, I understand that she has published on voting rights issues in law reviews, popular journals and edited volumes,

8

and has been a presenter at many continuing legal education programs, conferences and forums.

19. In my opinion, Ms. Earls hourly rate of $550 is reasonable. While I appreciate that the appropriate hourly rate in North Carolina is lower than that in D.C., her hourly rate is still well below the market rate for a voting rights litigator with her skills, expertise, experience, and reputation.

20. I have known Allison Riggs for approximately 6 years and am familiar with her practice. I understand that Ms. Riggs graduated from the University of Florida School of Law in 2009, and that she began work with the Southern Coalition for Social Justice immediately upon graduation. I understand that her practice over the last seven years has been almost entirely devoted to redistricting and voting rights litigation. I understand that she has been lead counsel representing the Texas NAACP, the Virginia NAACP and the Florida NAACP in redistricting cases. I understand that in the last seven years, Ms. Riggs has litigated (or represented *amici* in ) 25 voting rights cases, and has authored several United States Supreme Court briefs on voting rights issues. I understand that Ms. Riggs has published on voting rights issues in a law journal, and has been a presenter at many voting rights programs, conferences and forums.

21. In my opinion, Ms. Riggs hourly rate of $400 is reasonable. Again, appreciating that the appropriate hourly rate in North Carolina is lower than that in D.C., it is still my opinion her hourly rate is still well below the market rate for a voting rights litigator with her skills, experience, and reputation.

22. I understand that SCSJ staff attorneys George Eppsteiner, Clare Barnett and Emily Seawell also assisted in this litigation at various points between 2013 and 2016. I

understand that Mr. Eppsteiner graduated from the University of Florida School of Law in 2010. After graduation, I understand that he worked as a civil litigator at Macfarlane, Ferguson & McMullen in Tampa, FL, and at Cranfill, Sumner & Hartzog in Raleigh, NC. I understand that he joined SCSJ in August 2014 as a voting rights attorney, and that his practice since then has been focused on election and voting rights law. I understand that he left SCSJ in July 2016, to join the Voting Section of the United States Department of Justice. I understand that Clare Barnett graduated from Duke University Law School in 2011. From 2011 until December 2013, she worked as a voting rights staff attorney at SCSJ. Finally, I understand that Emily Seawell graduated from the Elon University School of Law in May 2015. I understand that she worked with SCSJ's voting rights practice as a full-time extern in the spring of 2015, was hired as a voting rights fellow after her graduation, and was hired as a voting rights staff attorney at SCSJ following her bar passage in March of 2016.

23. I understand that Mr. Eppsteiner's hourly rate is $300 and that Ms. Seawell's hourly rate in the spring of 2015 through the fall of 2015, and then following her licensure in 2016, was $200 and $250, respectively. These hourly rates are entirely reasonable and appropriate for associates with their experience in political law litigation.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

EXECUTED at Washington, D.C., this the 22nd day of November, 2016.

*J. Gerald Hebert*
J. Gerald Hebert

10

Case 5:15-cv-00156-D   Document 119-4   Filed 11/23/16   Page 10 of 10