**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action**

RALEIGH WAKE CITIZENS
ASSOCIATION, et al.,

                    Plaintiffs,

v.

WAKE COUNTY BOARD
OF ELECTIONS,

                    Defendant.

No. 5:15-cv-156

---

CALLA WRIGHT, et al.,

                    Plaintiffs,

v.

THE STATE OF NORTH CAROLINA,
et al.,

                    Defendants.

No. 5:13-cv-607

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEY FEES, EXPERT FEES, AND LITIGATION EXPENSES

All Plaintiffs, who are prevailing parties in this consolidated action, respectfully move the Court for an award of their reasonable attorney fees, expert fees, and non-taxable costs. Plaintiffs seek $681,373.95 in attorney fees, $32,813.42 in expert fees, and $14,960.24 in non-taxable litigation expenses.

As prevailing parties in this voting rights action, Plaintiffs are entitled to an award of their reasonable attorney fees, expert fees, and litigation expenses under the Civil Rights

Attorney's Fees Awards Act, 42 U.S.C. § 1988, and the Voting Rights Act, 52 U.S.C. § 10310(e). Plaintiffs, who are individual registered voters and voter engagement organizations in Wake County, brought an Equal Protection challenge to the 2013 and 2015 redistricting plans for the Wake County Board of Education and Board of Commissioners, respectively, and asked this Court to declare the enacted districts unconstitutional and permanently enjoin their use in future elections. On July 1, 2016, the U.S. Court of Appeals for the Fourth Circuit granted Plaintiffs' requested relief when it found the enacted districts violated the Equal Protection Clause on one person, one vote grounds and ordered this Court to permanently enjoin their use in future elections. As prevailing parties, Plaintiffs are thus entitled to recover their reasonable attorney fees, expert fees, and litigation expenses.

As documented in the appendices to this Memorandum, Plaintiffs' counsel devoted a reasonable number of hours to prevailing in this litigation, a complex voting rights matter that presented novel questions of law. Given their experience in redistricting litigation, the contingent nature of success, and the time constraints involved in the case, Plaintiffs' counsel have charged reasonable rates that are consistent with the prevailing market rates for attorneys of comparable skill, experience, and reputation, and have exercised appropriate billing judgment as documented in the attached billing records. Plaintiffs additionally engaged experts whose reports and testimony on electoral data and demographics in the challenged districts were necessary to proving Plaintiffs' one person, one vote claim, and whose fees were reasonable given the novelty of the claim, the time constraints involved, and the experts' level of expertise. Plaintiffs also incurred additional litigation expenses for which they are entitled to recover. These reasonable fees and expenses, after exercise of appropriate billing judgment, total

$681,373.95 in attorney fees, $32,813.42 in expert fees, and $14,960.24 in non-taxable litigation expenses which Plaintiffs now seek to recover from the Defendants by Order of this Court.[1]

## STATEMENT OF THE CASE

On August 22, 2013, Plaintiffs in *Wright v. North Carolina* filed their one person, one vote challenge to Session Law 2013-110, the North Carolina General Assembly's redistricting plan for the Wake County Board of Education. *Wright*, ECF No. 1. On April 9, 2015, Plaintiffs in *Raleigh Wake Citizens Association v. Wake County Board of Elections* ("RWCA") filed their one person, one vote and racial gerrymandering challenge to Session Law 2015-4, the General Assembly's identical redistricting plan for the Wake County Board of Commissioners. *RWCA*, ECF No. 1. Both groups of Plaintiffs are represented by the same counsel. *Compare Wright*, ECF No. 1 at 22-23 *with RWCA*, ECF No. 1 at 18.

Before *RWCA* Plaintiffs filed their complaint, the district court granted *Wright* Defendants' motion to dismiss that action for failure to state a claim, and denied *Wright* Plaintiffs' motion to amend their complaint to name legislative leaders Thom Tillis and Philip Berger as defendants. *Wright*, ECF No. 38. On May 27, 2015, the U.S. Court of Appeals for the Fourth Circuit reversed as to the *Wright* Defendants' Rule 12(b)(6) motion and remanded the case. *Wright v. North Carolina*, 787 F.3d 256, 259 (4th Cir. 2015). However, the Fourth Circuit affirmed the denial of *Wright* Plaintiffs' motion to amend to add the legislative leaders as defendants, "summarily reject[ing]" Plaintiffs' arguments raising, among other concerns, potential implications for recovery of attorneys' fees. *Id.* at 262 n.3. Following the Fourth Circuit's ruling concerning the proper defendants in this type of case, *RWCA* Plaintiffs amended

---

[1] As previously represented to the Court, and reflected in Plaintiffs' time records filed herein, *see* Declaration of Anita S. Earls, Ex. 1 to Mot. for Att'y Fees, Expert Fees & Litigation Expenses at Ex. F, the parties did meet to negotiate a resolution of Plaintiffs' request for attorneys' fees and expenses but were unable to reach an agreement.

their complaint to voluntarily dismiss legislators who had been named as defendants. *RWCA*, ECF Nos. 21-22. Thus, the Wake County Board of Elections remained as the sole defendant in each case.

On remand, the two actions were consolidated for an expedited discovery period and trial. *RWCA*, ECF No. 36. Plaintiffs principally conducted discovery through making public records requests, and received limited additional discovery through serving subpoenas for production of documents from members of the General Assembly involved in passage of the challenged session laws.[2] Plaintiffs and Defendant took no depositions, worked together to file extensive stipulations of fact, and used joint exhibits where possible and exhibits applicable to both the commission and school board plans where possible. During their nine hours of trial time, Plaintiffs called lay and expert witnesses who could testify to both the school board and commission plans, and who could provide evidence for both of Plaintiffs' claims.

After a three-day trial in December 2015, this Court found for Defendant and dismissed all Plaintiffs' claims. *RWCA*, ECF No. 64. On appeal, the Fourth Circuit affirmed the district court's judgment as to *RWCA* Plaintiffs' racial gerrymandering claim, but reversed as to all Plaintiffs' one person, one vote claims. *Raleigh Wake Citizens Ass'n v. Wake County Bd. of Elections*, 827 F.3d 333, 338 (4th Cir. July 1, 2016). This Court then ordered that the challenged districts be enjoined from use in future elections, effective following the November 2016 general election, which was then well under way. *RWCA*, ECF No. 104. At the time of the Court's order, candidate filing had already closed for both the school board and commission, a primary election had been held for the commission months earlier, and the deadline for all names to be finalized on ballots in time for the November election was the next day. *See id.*

_____

[2] Plaintiffs and the legislative respondents ultimately negotiated an agreement on Plaintiffs' requested subpoena responses before trial in this action, and thus did not receive the full responses they had requested. *See RWCA*, ECF No. 54.

4

# ARGUMENT

In this consolidated action brought pursuant to 42 U.S.C. § 1983 to enforce the Fourteenth Amendment right to vote, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e); 42 U.S.C. § 1988; *see RWCA*, No. 5:15-cv-156, ECF No. 1 at 2, 18 (E.D.N.C. 2015) (Complaint); *Wright*, No. 5:13-cv-607, ECF No. 1 at 2, 22 (E.D.N.C. 2013) (Complaint). Awards of such fees and non-taxable costs are a particularly critical component of the remedy to which prevailing plaintiffs are entitled in cases such as this one, where private citizens are forced to litigate to enforce their basic constitutional rights. *See City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986) ("If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.").

Afforded the relief they sought on appeal, Plaintiffs are now entitled to recover their reasonable attorney fees, expert fees, and non-taxable litigation expenses.

## I.    Plaintiffs are prevailing parties in this action.

Plaintiffs are prevailing parties in this § 1983 claim because the declaratory and injunctive relief they have won on the merits of their one person, one vote claims "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits" Plaintiffs. *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (internal citations and quotation marks omitted) (specifying that issuance of "an injunction or declaratory

5

judgment" satisfies the standard for entitlement to a fees and costs award under 42 U.S.C. § 1988); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that plaintiffs need not win on each and every claim in their lawsuit to be considered "prevailing," so long as they have "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit").

In their Complaints, Plaintiffs requested a declaratory judgment that the challenged session laws violate the Equal Protection clauses of the state and federal constitutions. *Wright*, ECF No. 1 at 21-22; *RWCA*, ECF No. 22 at 17-18. To remedy these violations, Plaintiffs requested that the Court enjoin the district boundaries in the enacted redistricting plans from use in future elections, and order the Defendant Wake County Board of Elections to administer the November 2016 general election under the district boundaries and election system in place prior to enactment of the unconstitutional session laws.[3] *Id.*; *see also RWCA* ECF No. 82 at 2, 5-13; ECF No. 87 at 4-5.

Plaintiffs received the relief they requested when, on July 1, 2016, the Court of Appeals found that "Plaintiffs have successfully made their case," and ordered this Court to enjoin future use of the unconstitutional redistricting plans and enter judgment accordingly. *Raleigh Wake Citizens Ass'n*, 827 F.3d at 345; ECF No. 104 at 4 ("[T]his court declares the redistricting plan in Session Law 2013-110 and Session Law 2015-4 unconstitutional and permanently enjoins the Wake County Board of Elections from using the redistricting plan in Session Law 2013-110 or Session Law 2015-4 in any elections, including the November 2016 elections."). On August 9,

---

[3] Although RWCA Plaintiffs did not prevail on their racial gerrymandering claim, the relief they were granted on their one person, one vote claim was the effective equivalent of the relief they had requested in their racial gerrymandering claim—that the Court declare challenged District 4 unconstitutional as part of the larger statutory scheme and enjoin its use in future elections. *See RWCA*, ECF No. 22 at 17-18 (seeking a declaration that District 4 was unconstitutional and enjoining its use in future elections); ECF No. 104 at 4 (declaring the entire redistricting plan unconstitutional and enjoining use of all districts therein in future elections).

2016, this Court ordered a return to the district boundaries and election system in place prior to the enactment of the unconstitutional session laws, effective in time for the November 2016 general election. *RWCA*, ECF No. 104 at 4. Before the Fourth Circuit's July 1 ruling and this Court's August 9 order, Defendant Wake County Board of Elections intended to administer future elections, beginning with the November 2016 general election, under the enacted plans. *See* Trial Tr. 12/15/15 13:2-18 (Def.'s opening statement). Following the Court of Appeals' ruling and this Court's August 9 Order, Defendant is permanently enjoined from administering any future elections under the enacted plans, and instead must administer the November 2016 general election under the plans in place before enactment of Session Law 2013-110 and Session Law 2015-4. *See Raleigh Wake Citizens Ass'n*, 827 F.3d at 345; *RWCA*, ECF No. 104 at 4.

As prevailing parties, Plaintiffs are entitled to recover from Defendant. The Fourth Circuit has considered and "summarily reject[ed]" Plaintiffs' arguments that state officials responsible for enactment of the challenged session laws were necessary parties to these consolidated lawsuits for reasons including potential recovery of fees. *Wright*, 787 F.3d at 262 n.3. To the contrary, the Fourth Circuit found that "the county Board of Elections, in conjunction with the State Board of Elections, has the specific duty to enforce the challenged redistricting plan" and therefore was the only necessary defendant. *Id.* Plaintiffs recognize, as has this Court, that Defendant had no role in enacting the challenged session laws and is merely charged with administering laws enacted by the North Carolina General Assembly. *RWCA*, ECF No. 104 at 2-3. However, having been adjudged by the Fourth Circuit to be the only proper defendant to this lawsuit, Defendant is now the sole entity responsible for the attorney's fees, expert fees, and non-taxable costs incurred by Plaintiffs as prevailing parties. Plaintiffs' ability to recover these fees is critical in the interest of justice and in the interest of encouraging counsel

to assist civil rights plaintiffs in vindicating their rights in court. *See Riverside*, 477 U.S. at 577 (where "immunity doctrines and special defenses[] available only to public officials[] preclude *or severely limit the damage remedy*[,] . . . awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected." (quoting H.R. Rep. No. 94-1558, at 9 (1976)) (emphasis in original)).

Defendant is responsible for the administration of elections in Wake County, and Plaintiffs' victory on the merits of their one person, one vote claims has materially altered Defendant's behavior in a way that directly benefits Plaintiffs and achieves the benefit they sought in bringing suit. Thus, Plaintiffs have prevailed in this consolidated action.

## II.     Plaintiffs are entitled to an award of their reasonable attorney fees.

Where, as here, a statute provides for recovery of attorney fees, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cr. 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), *superseded in part by statute on other grounds*, 42 U.S.C. § 1997e); *see Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009) ("[A] prevailing civil rights plaintiff is ordinarily entitled to receive an attorney's fee award as a matter of course."). In the Fourth Circuit, "[c]ourts have universally recognized that [the] special circumstances exception is very narrowly limited" and appropriate only "on rare occasions." *Lefemine*, 758 F.3d at 555 (citing *Doe v. Bd. of Educ. of Baltimore Cnty.*, 165 F.3d 260, 264 (4th Cir. 1998)). In civil rights and constitutional cases where "public official immunities . . . severely limit money damages even in the face of success," awarding attorney fees "is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected." *Id.* (citing *City of*

*Riverside*, 477 U.S. at 577) (alteration in original). Such an award is appropriate at prevailing market rates in cases where non-monetary relief is sought and where representation is provided pro bono. *See Pulliam v. Allen*, 466 U.S. 522, 527 (noting that "the legislative history of [Section] 1988 clearly indicates that Congress intended to provide for attorney's fees in cases where relief properly is granted against officials who are immune from damages awards"); *Mammano v. Pittston County*, 792 F.2d 1242, 1245 (4th Cir. 1986) (explaining that the fact that an organization "is a public interest firm as opposed to a private law firm" does not "jeopardize its entitlement to fees").

In calculating the amount of a reasonable fee award, courts begin with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," a figure commonly referred to as "the lodestar." *City of Riverside*, 477 U.S. at 567 (citing *Hensley*, 461 U.S. at 433). Although "there is a 'strong presumption' that the lodestar figure is reasonable," *Jackson v. Estelle's Place*, 391 Fed. App'x 239, 245 (4th Cir. 2010) (quoting *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010)), the lodestar figure may be adjusted upward or downward based on considerations not already taken into account in determining the reasonable number of hours expended or reasonable hourly rate, *see Hensley*, 461 U.S. at 434.

As detailed below, in this case which went to the 4th Circuit Court of Appeals twice, and which was tried to the Court with Plaintiffs being the only party to present affirmative evidence, Plaintiffs' counsel have reasonably expended 436.46 hours combined hours on the *Wright* litigation alone, 62.68 hours on the *RWCA* litigation alone, and 1382.34 hours on the consolidated cases at reasonable hourly rates of $400 to $550 for senior attorneys, $250 to $300 for junior attorneys, $225 for policy analysts, $200 for unlicensed law graduates and $150 for law students (interns and externs). After making a 10% reduction in hours in the *RWCA* and

consolidated cases for the unsuccessful racial gerrymandering claims, the resulting lodestar figure of $681,373.95 is presumed reasonable, and no adjustments to the lodestar are necessary here.

### A. Plaintiffs' counsel have expended a reasonable number of hours on the litigation and exercised appropriate billing judgment.

Attorneys for prevailing plaintiffs in civil rights cases should be compensated "for all time reasonably expended on a case." *Riverside v. Rivera*, 477 U.S. 561, 578 (1986); *see also Stuart v. Walker-McGill*, 2016 U.S. Dist. LEXIS 7976, *22-*23 (M.D.N.C. Jan. 25, 2016) ("While a close and careful review of reasonableness of time spent on a case is appropriate, it is improper to engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained."). Cases that present "complex and interrelated issues of fact and law" or involve novel claims may reasonably require higher expenditures of time than other cases. *See id.* at 571; *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986) (citing *Blum v. Stenson*, 464 U.S. 886, 1549 (1984)) ("[A]s a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours."). Attorneys must "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 578 n.9 (quoting *Hensley*, 461 U.S. at 434).

Compiled from contemporaneously created time records, Exhibit F to the Declaration of Anita S. Earls details the daily tasks performed by Plaintiffs' counsel, the time expended on each task, and the associated fees.[4] *See* Earls Decl., Ex. 1 to Mot. for Att'y Fees, Expert Fees & Litigation Expenses (hereinafter "Earls Decl."). Plaintiffs seek compensation for 1,186.48

---

[4] As prevailing parties, Plaintiffs are also entitled to recover fees for time spent pursuing a fee claim and ongoing appeals. *See Daly*, 790 F.2d at 1080. Plaintiffs seek leave to file a supplemental petition for attorney fees and any additional litigation expenses upon conclusion of all proceedings in this consolidated action.

combined hours totaling $681,373.95.  *See* Earls Decl. Ex. F.  This time was spent on necessary litigation tasks and is reasonable in light of the complexity of these consolidated voting rights cases and the fact that they presented a novel claim in the Fourth Circuit.  Plaintiffs' counsel have exercised appropriate billing judgment and limited the hours for which they seek compensation.

1.    *Complexity of cases / novel claim*

"Voting suits are unusually onerous to prepare."  *South Carolina v. Katzenbach*, 383 U.S. 301, 314 (1966).  Voting rights lawsuits are widely recognized as among the most complex, fact intensive, time-consuming, and expensive federal cases to bring and to litigate.  As the Supreme Court explained in 1966, such suits "sometimes requir[e] as many as 6,000 man-hours."  *Id.; see also* Richard H. Pildes, *The Future of Voting Rights Policy: From Anti-Discrimination to the Right To Vote*, 49 How. L.J. 741, 747 (2006). This level of complexity frequently requires thousands of hours of attorney time, the extensive use of expert testimony, and considerable judicial resources.

Since 1993, the Federal Judicial Center has compiled statistics on the amount of time and effort required by 63 types of cases in the federal courts. *See* Fed. Judicial Ctr., *2003-2004 District Court Case Weighting Study: Final Report to the Subcommittee on Judicial Statistics of the Committee on Judicial Resources of the Judicial Conference of the United States* 9 (2005). The Federal Judicial Center study identifies voting rights cases as the sixth most time consuming, just ahead of civil antitrust cases.  *Id*. at 60 fig. 4.  According to the study, voting rights cases require nearly four times the judicial resources of the median district court case.  *Id*. Voting rights cases are no less resource intensive for the parties and their counsel.  To illustrate

the point, in *Major v. Treen*, 700 F. Supp. 1422, 1428 (E.D. La. 1988), plaintiffs' attorneys worked on a contingent-fee basis, and devoted over 2,500 hours to representing disadvantaged black residents of New Orleans in a successful challenge to Louisiana's congressional redistricting. *See id*. at 1428, 1435. Further examples are legion. *See, e.g.*, *Bone Shirt v. Hazeltine*, 524 F.3d 863, 864 (8th Cir. 2008); *Graves v. Barnes*, 700 F.2d 220, 224 (5th Cir. 1983); *Cottier v. City of Martin*, No. CIV 02-5021, 2008 WL 2696917 (D.S.D. March 25, 2008) at *5-*6 (awarding plaintiffs attorneys' fees for 2,446.61 hours of work).

Although redistricting cases in general require an immense amount of time and expertise, these consolidated actions in particular required an above-average outlay of hours because they presented a novel legal claim in the Fourth Circuit. *See* Earls Decl. ¶¶ 49-50; Hebert Decl. ¶ 12, 15; Speas Decl. ¶ 8; Crowell Decl. ¶ 5. Under what conditions a redistricting plan with an overall population deviation of less than ten percent violates the one person, one vote principle was, at the time the *Wright* plaintiffs filed their complaint, an open question of law in the Fourth Circuit, and no court in the Fourth Circuit had previously found such a violation.

Plaintiffs' case required amassing a large volume of documentary evidence and witness testimony on decades of electoral history of the Wake County Board of Education and the Wake County Board of Commissioners, decades of demographic and political history on Wake County and its voters, and lengthy transcripts and committee meeting minutes documenting the unusual legislative process for enacting the challenged redistricting plans. *See* Earls Decl. ¶ 49; Hebert Decl. ¶ 12. This evidence included complex reports and testimony from two expert witnesses, and extensive consideration and analysis of redistricting data, documents, and case law. *See* Earls Decl. ¶¶ 49, 53, 54; Hebert Decl. ¶ 12. On appeal, Plaintiffs also had to contend with the U.S. Supreme Court's decision less than a month earlier in *Harris v. Arizona Independent*

*Redistricting Commission*, 136 S. Ct. 1301 (2016), in which the Supreme Court articulated the appropriate standard for determining whether a redistricting plan with an overall population deviation of less than ten percent violated the one person, one vote principle. Given Plaintiffs' success on the merits of their one person, one vote claims against this backdrop, and the fact that Plaintiffs won the permanent injunction they sought in each case, the number of hours invested in the litigation is reasonable.

### 2. *Necessary litigation tasks*

The attached Speas, Hebert, and Crowell declarations support the conclusion that the number of hours Plaintiffs' counsel invested in the litigation is reasonable. The Earls declaration certifies that the hours expended by Plaintiffs' counsel and support staff, as set out in Exhibit F, were actually expended as described. *See* Earls Decl. ¶¶ 31, 35, 39, 43, 46, 47; Ex. F. The Earls declaration attests that all attorneys and support staff participating in the case maintained detailed, contemporaneous, and accurate records of time devoted to this matter throughout the entire course of representation. Earls Decl. ¶¶ 12, 30, 34, 38, 42.

The declarations further attest that all billing attorneys efficiently discharged their duties in litigating this case. Earls Decl. ¶ 48; Speas Decl. ¶¶ 5-6; Hebert Decl. ¶ 13, 16; Crowell Decl. ¶ 6. All hours submitted were devoted to necessary litigation tasks, including extensive briefing, preparing and responding to discovery documents, interviewing and preparing witnesses, working with experts, coordinating with counsel and the Court, and preparation for and attendance at hearings and trial. Plaintiffs' counsel utilized law clerks in place of attorneys for in-office tasks and in-court support where possible to keep attorney expenses down. Plaintiffs also took steps to keep attorney expenses down during trial, including by working with

Defendant to file extensive stipulations of fact, which helped keep the record manageable and maximize resources. Plaintiffs also selected lay and expert witnesses who were able to testify to more than one of the challenged redistricting plans and more than one claim in the consolidated action, which helped minimize the amount of time required for witness preparation and examination.

### 3. *Appropriate billing judgment*

Plaintiffs have exercised appropriate billing judgment and limited hours where counsel's time arguably could have been more efficiently spent. Plaintiffs additionally are not seeking to recover for time spent on their petition for writ of mandamus. Further, to account for *RWCA* Plaintiffs' limited success on the merits of their claim challenging District 4 in the enacted plan for the Wake County Board of Commissioners as a racial gerrymander, Plaintiffs have applied a ten percent reduction to the hours for which they seek compensation beginning with the time the *RWCA* complaint was drafted.

*Wright* and *RWCA* are closely related cases, challenging identical redistricting plans for the Wake County Board of Education and Wake County Board of Commissioners, respectively. Because *Wright* was filed two years earlier than *RWCA* and did not include a racial gerrymandering claim, and because the *Wright* plaintiffs were completely successful on the merits of their lawsuit, no reduction in the hours for which *Wright* plaintiffs seek compensation is appropriate for the two years before the *RWCA* was drafted and filed. Once the *RWCA* complaint was filed, there was extensive overlap in the hours expended on the two cases because all Plaintiffs are represented by the same counsel. Similarly, there was extensive overlap in the hours expended on the one person, one vote and racial gerrymandering claims because the

factual record supporting each claim is the same, the redistricting data for each claim is the same, and multiple witnesses testified to both claims, including the two expert witnesses. For that reason, Plaintiffs cannot effectively separate the time expended on each claim, and a percentage reduction in hours for which Plaintiffs seek recovery of fees is appropriate to account for *RWCA* Plaintiffs' limited success on their racial gerrymandering claim. A ten percent reduction is appropriate because ten percent is a reasonable estimate of the time Plaintiffs' counsel devoted to the racial gerrymandering claim, which applied to only one of the eighteen total districts challenged in the two consolidated lawsuits. Further, *RWCA* Plaintiffs' limited success on the merits of their racial gerrymandering claim did not limit the practical relief they received. Because they prevailed on their one person, one vote claims, all Plaintiffs received the declaratory and injunctive relief they sought in their complaints—the challenged districts, including District 4, were declared unconstitutional and permanently enjoined from use in future elections.

Taking into account the reduction for *RWCA* Plaintiffs' limited success and for time spent on the petition for writ of mandamus, Plaintiffs have written off a total of $54,032.30 in fees after exercising billing judgment to reduce excessive time or redundant work.

**B.     The hourly rates for Plaintiffs' counsel and support staff are reasonable.**

An award of reasonable attorney's fees is appropriate to compensate the work of both Plaintiffs' attorneys and their support staff. *See Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) (paralegal and law clerk time is "to be included in attorney's fees").

*1.     Plaintiffs' counsel*

"'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum*, 464 U.S. at 895. Accordingly, Plaintiffs' counsel are entitled to charge an hourly rate "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895 n.11. Such a rate may take into account an attorney's experience in a specialized area of law, the undesirability of the claim and contingent nature of success, and the time constraints involved in the case. *Daly*, 790 F.2d at 1078 (quoting *Blum*, 464 U.S. at 1549) ("Where an experienced attorney spends fewer hours on a complex case due to special expertise, that 'special skill and experience should be reflected in the reasonableness of the hourly rates.").

Anita Earls served as lead counsel for the Southern Coalition for Social Justice, which represented Plaintiffs. Earls Decl. ¶ 31. A recognized national expert in voting rights and election law, Ms. Earls founded the Southern Coalition for Social Justice in 2009. Previously, she had served for approximately four years as Director of Advocacy at the UNC Center for Civil Rights, three years as Director of the Voting Rights Project at the Lawyers' Committee for Civil Rights Under Law, and three years as Deputy Assistant Attorney General in the Civil Rights Division of the U.S. Department of Justice. For ten years she litigated voting rights and other civil rights cases in private practice. Ms. Earls' typical hourly rate reasonably reflects her specialized knowledge and experience in redistricting matters throughout the country. Speas Decl. ¶¶ 5, 7; Hebert Decl. ¶¶ 13-14, 18-19; Crowell Decl. ¶¶ 5-7. Her hourly rate is also in line with the prevailing market rate in the Eastern District for similar services by lawyers of comparable skill, experience, and reputation. Speas Decl. ¶ 7; Crowell Decl. ¶¶ 6-7.

Allison Riggs, senior attorney for voting rights at the Southern Coalition for Social Justice, likewise has significant election law experience in redistricting and voting rights litigation. Earls Decl. ¶¶ 13-19. She has extensive experience litigating civil rights actions in federal and state courts across the country, including one person, one vote and racial gerrymandering challenges in several Southern states, and her typical hourly rate reasonably reflects her specialized knowledge and experience in redistricting matters. Earls Decl. ¶ 13-19, 36; Speas Decl. ¶¶ 6-7; Hebert Decl. ¶¶ 13-14, 20-21; Crowell Decl. ¶¶ 5-7. Her hourly rate is also in line with the prevailing market rate in the Eastern District for similar services by lawyers of comparable skill, experience, and reputation. Speas Decl. ¶ 7; Crowell Decl. ¶¶ 6-7.

Counsel were assisted by two staff attorneys who also have specialized expertise in redistricting and voting rights litigation, and whose typical hourly rates are reasonable in this case because they are in line with the prevailing market rate of individuals with their skills and levels of experience. Earls Decl. ¶¶ 40, 44; Hebert Decl. ¶¶ 22-23; Crowell Decl. ¶¶ 6-7; *see Mammano v. Pittston County*, 792 F.2d 1242, 1245 (4th Cir. 1986) ("Serving as counsel of record at trial is not a prerequisite to the recovery of fees. The issue, simply, is whether services were performed which contributed to claimant's success in the lawsuit."); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718-19 (5th Cir. 1974) ("If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar.").

Collectively, Plaintiffs' counsel have litigated and provided litigation support in redistricting and voting rights cases in federal trial and appellate courts in North Carolina and across the southeastern United States, including in Florida, Louisiana, Tennessee, Texas, and Virginia. Plaintiffs' counsel collectively have decades of expertise in voting rights litigation under the Equal Protection Clause and Voting Rights Act, a highly specialized area of law, and

their hourly rates reasonably reflect this expertise. Earls Decl. ¶¶ 3-28; Speas Decl. ¶¶ 5-6; Hebert Decl. ¶¶ 13-23; Crowell Decl. ¶¶ 5-7.

The one person, one vote claims presented in this consolidated action required particular skill and investment of resources. As the Fourth Circuit and this Court noted, Plaintiffs' one person, one vote claims were novel in the Fourth Circuit, where no court had previously found a redistricting plan with a deviation of less than 10 percent in violation of one person, one vote. *See Raleigh Wake Citizens Ass'n*, 827 F.3d at 351 ("We recognize that, generally, 'attacks on deviations under 10% will succeed only rarely, in unusual cases.'"); *RWCA*, ECF No. 104 at 34 ("Consistent with this first principle concerning redistricting plans with maximum population deviations under 10%, the Supreme Court and lower courts consistently have upheld such plans finding that such minor deviations do not violate the Equal Protection Clause."). Plaintiffs' counsel's ability to recover fees on this novel claim was entirely contingent on their success, a particularly risky scenario given that Plaintiffs' counsel are employees of a nonprofit organization and provided their services on a pro bono basis. *See Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982) ("The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."). Further, Plaintiffs were operating under strict time constraints, with an expedited discovery and trial schedule, a mere nine hours of trial time to prove all three claims in both cases, and elections for both the Wake County School Board and Commission looming in 2016, necessitating an expedited appellate and remedial schedule.

Given Plaintiffs' counsel's experience and expertise in voting rights litigation, the novelty of the claims presented, the contingent nature of success, and the time constraints involved in this consolidated action, Plaintiffs' counsel's hourly rates are reasonable.

### 2. Support staff

Plaintiffs are also entitled to a reasonable hourly rate for the work of their law clerks and policy analysts. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney."). Plaintiffs may recover fees at prevailing market rates for paralegal and other support work that falls within "a gray area of tasks that might appropriately be performed either by an attorney or a paralegal," such as conducting research and investigations, locating and interviewing witnesses, checking legal citations, compiling data, preparing exhibits and witness notebooks, and drafting court documents and correspondence. *Id.* at 288 n.10; *Roberson v. Brassell*, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998). Compensating prevailing plaintiffs for use of law clerks and other support staff reduces "the spiraling cost of civil rights litigation, [and] furthers the policies underlying civil rights statutes." *Jenkins*, 491 U.S. at 288.

As detailed in Exhibit F to the Earls declaration, Emily Seawell, Jeremy Collins, and Jaclyn Maffetore spent 193.87, 15, and 45.5 hours on this action, respectively, as law clerks for the Southern Coalition for Social Justice before taking the North Carolina bar exam, and Christopher Heaney spent 2.91 hours on this action as a law clerk after passing the North Carolina bar exam. The law clerks' hours were devoted to tasks such as client and witness management, legal research, drafting legal documents, and providing pretrial, trial, and appellate

support. Joseph Crupi worked briefly on the case as a law student intern. Plaintiffs also employed, at different time, two policy analysts who specialize in geographic information systems, Dr. Frederick McBride and Christopher Ketchie. Dr. McBride spent 108.2 hours on this consolidated action, and Mr. Ketchie spent 90.25 hours on this action. Those hours were devoted to tasks such as researching demographics and maps, constructing shapefiles and preparing block assignment files for the challenged redistricting plans, geocoding incumbent residences, analyzing precinct splits, analyzing election returns, preparing work product for Defendant's requests for production of documents, and assisting expert witnesses in understanding the case and preparing their analyses.

The time expended by Plaintiffs' law clerks and policy analysts had a legitimate purpose and is compensable under the attorneys' fee statutes. Further, the time expended by the law clerks involved tasks that would otherwise have been performed by the attorneys. The hourly rates sought for Plaintiffs' law clerks and policy analysts are their usual rates and are reasonable in the market. Earls Decl. ¶¶ 46-47.

### C.    No adjustment to the lodestar figure is appropriate.

Where "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. As discussed in Part I above, *Wright* Plaintiffs and *RWCA* Plaintiffs were successful on their one person, one vote claims, and for that reason *RWCA* Plaintiffs also effectively received the relief they sought on their unsuccessful racial gerrymandering claim, namely that the districts at issue have been enjoined from being used in elections for either body. All Plaintiffs achieved excellent results on

their novel one person, one vote claims, therefore the lodestar should not be reduced because *RWCA* Plaintiffs failed to also prevail on their racial gerrymandering claim.

Further, an adjustment to the lodestar figure is not a practical means of accounting for *RWCA* Plaintiffs' limited success on one claim in this consolidated action. As discussed in Part II(A)(3) above, *RWCA* Plaintiffs have appropriately taken their limited success on their racial gerrymandering claim into account in calculating the lodestar figure by factoring it into the number of hours for which they seek to recover fees. Because *RWCA* Plaintiffs' limited success on that claim has been factored into the lodestar, no further adjustment to the lodestar figure is appropriate to account for *RWCA* Plaintiffs' limited success. Indeed, such a reduction would be unfair to *Wright* Plaintiffs, who were wholly successful on their single claim and should not have their recovery reduced as a result of *RWCA* Plaintiffs' limited success. As discussed above, neatly delineating the time expended on each of the overlapping claims is not possible because all Plaintiffs are represented by all counsel, many witnesses testified to both claims, and the factual record are redistricting data for each claim are the same. Because of this overlap, Plaintiffs cannot effectively delineate the time expended on each claim after *RWCA* Plaintiffs filed their complaint, and a percentage reduction in hours for which *RWCA* Plaintiffs seek recovery of fees is the most effective and appropriate means of accounting for *RWCA* Plaintiffs' limited success on their racial gerrymandering claim.

Similarly, all Plaintiffs have factored the expertise of their counsel and support staff, the novelty of the claim, the contingent nature of success, and the time constraints involved in the case into Plaintiffs' counsel's hourly rates. Thus, those factors are reflected in the lodestar, and no further adjustment to the lodestar is necessary to account for them.

### III.    Plaintiffs are entitled to an award of their reasonable expert fees.

Under the Voting Rights Act, the court may award Plaintiffs their reasonable expert fees. 52 U.S.C. § 10310(e).  Plaintiffs' expert Anthony Fairfax expended in excess of 11 hours at an hourly rate of $185, plus two full days of trial time billed at the rate of $1,700 per day, and Plaintiffs' expert Dr. Jowei Chen expended 40 hours at an hourly rate of $500, plus two full days of trial time billed at the rate of $2,000 per day and expenses.

In amending the Voting Rights Act in 2006 to explicitly provide for recovery of expert fees in voting discrimination cases, Congress intended "to ensure that those minority voters who have been victimized by continued acts of discrimination are made whole," recognizing that "evidence from one or more expert witnesses is critical to trying [these cases]."  H.R. Rep. No. 109-478, at 64-65 (2006).  To obtain expert fees in their voting discrimination claim under the Fourteenth Amendment, Plaintiffs need only produce contemporaneous time records and show that the "amount sought is reasonable in relation to the services provided," following a model analogous to that used for calculating attorney's fees.  *Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, 2015 U.S. Dist. LEXIS 180310, at *46-*47 (E.D. Va. Mar. 10, 2015) (granting expert fee award of $49,448.79 in racial gerrymandering case); *see Favors v. Cuomo*, 39 F. Supp. 3d 276, 310-11 (E.D.N.Y. 2014) (reducing expert fee where timekeeping records were imprecise, and refusing to grant fees for two experts where records did not indicate the nature of their contributions).

Plaintiffs' two expert witnesses expended a reasonable number of hours on the litigation given the complexity and novelty of the claims involved.  As detailed in his billing records in Exhibit C to the Riggs Declaration, and as further explained in the Riggs Declaration, Plaintiffs' demographic expert Mr. Fairfax only charged for less than 11 hours for communicating with

Plaintiffs' counsel, researching the challenged redistricting plans and demographics in Wake County, conducting a statistical analysis of those plans and demographics, performing quality control on his results, drafting and editing an expert report, and charged only two days for preparing and delivering testimony in support of his findings. As further detailed in contemporaneous timekeeping records in Exhibit B to the Riggs Declaration, Plaintiffs' statistical expert Dr. Chen spent 40 hours likewise communicating with Plaintiffs' counsel, creating and running a series of statistical computer models to analyze the challenged redistricting plans, performing quality control on his results, and drafting and editing an expert report. Dr. Chen spent three days of his time preparing and delivering testimony in support of his findings at trial. Mr. Fairfax and Dr. Chen's expenditures of time were necessary to the litigation and not redundant, as each expert focused on a different aspect of proving Plaintiffs' case, and the Fourth Circuit relied on both of their expert opinions in granting relief for Plaintiffs. *Raleigh Wake Citizens Ass'n*, 827 F.3d at 344-45 (Chen), 346 & n.2 (Fairfax), 347 (Chen), 350 (Chen).

Mr. Fairfax and Dr. Chen charged reasonable rates for their services, which were performed in support of a novel legal claim and under tight time constraints with an expedited discovery and trial period as elections approached. Both were qualified as experts with experience providing expert services in voting rights litigation. Trial Tr. 12/15/15 124:5-126:25 (Fairfax); Trial Tr. 12/16/15 41:5-44:11 (Chen). Mr. Fairfax owns and runs a demographic analysis firm that provides Census-based analyses and services to clients across the southeastern United States, and Dr. Chen is a professor at the University of Michigan who specializes in computer modeling and statistical analysis and who has provided expert services in a number of other redistricting matters. *Id.* Their hourly rates, detailed in the Riggs Declaration, are

reasonable in light of their expertise in redistricting matters, the prevailing market rates for experts of their caliber in voting rights cases, and the novelty of the claims and time constraints under which they were asked to perform.

The number of hours expended and hourly rates charged by both experts reasonably reflect the complexity, novelty, and time constraints involved in these consolidated cases. Plaintiffs seek to recover a total $32,813.42 in reasonable expert fees for the necessary services of their two experts.

## IV. **Plaintiffs are entitled to an award of their reasonable litigation expenses.**

Because Plaintiffs have prevailed and their counsel's hourly rate is not intended to cover expenses, Plaintiffs are "entitled to compensation for reasonable litigation expenses under § 1988." *Daly*, 790 F.2d at 1084 & n.18. Customary expenses compensable under § 1988 include copying, secretarial costs, telephone, postage, travel expenses including meals and parking, and other necessary trial and litigation expenses not accounted for in the regular hourly rate. *See Trimper v. City of Norfolk*, 58 F.3d 68, 75 (4th Cir. 1995). Plaintiffs have properly documented their compensable litigation expenses with bills and, where appropriate, receipts. *See id.* at 77; Riggs Decl.

Plaintiffs seek compensation of their reasonable litigation expenses in the amount of $14,960.24 (total non-taxable costs of $47,773.66 minus $32,813.42 in expert costs). As detailed in the Riggs Declaration and exhibits attached thereto, these expenses were incurred for customarily permissible purposes such as making copies of binders requested to be provided for the Court's use before trial, printing two large maps of the challenged districts prominently used to aid the Court and witnesses at trial, stenographic preparation of legislative transcripts from

audio files provided in response to Plaintiffs' public records requests, and the trial team's meals and parking expenses incurred during trial.

These expenses were reasonably incurred in the course of providing effective representation to Plaintiffs, and Plaintiffs' counsel made appropriate efforts throughout the litigation to reduce unnecessary expenses, such as by taking no depositions of witnesses during the expedited discovery period, carpooling during trial to reduce parking expenses and using street parking when available, using exhibits applicable to more than one redistricting plan where possible to keep printing costs down, and making effective use of courtroom technology to display all but two exhibits used with witnesses and during opening and closing arguments. Moreover, Plaintiffs are not seeking to recover any of their overhead expenses that frequently are permissible and clearly are related to the litigation, such as photocopying costs, electronic legal research services, or office supplies such as exhibit binders and the like.

The litigation expenses Plaintiffs have incurred are reasonable, necessary, and adequately documented, and Plaintiffs' counsel made efforts to reduce unnecessary expenses. The Court should grant Plaintiffs' request for compensation for their litigation expenses.


## CONCLUSION

The Court should grant the Motion for Attorney Fees, Expert Fees, and Litigation Expenses.


Respectfully submitted this 23rd day of November, 2016.

/s/ Anita S. Earls
Anita S. Earls
N.C. State Bar No. 15597

Allison J. Riggs
N.C. State Bar No. 40028
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
allison@southerncoalition.org

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has on this day electronically filed the foregoing **Memorandum of Law in Support of Motion for Attorney Fees, Expert Fees, and Litigation Expenses** in the above-titled action with the Clerk of the Court using the CM/ECF system, which on the same date sent notification of the filing to the following:

Charles F. Marshall
Matthew B. Tynan
Jessica Thaller-Moran
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
1600 Wells Fargo Capitol Center
150 Fayetteville St.
Raleigh, NC 27601
cmarshall@brookspierce.com

*Counsel for Defendant*

This the 23rd day of November, 2016.

*/s/ Anita S. Earls*
Anita S. Earls

*Counsel for Plaintiffs*